IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHARON FLOWERS, Individually and On Behalf of All Others Similarly Situated, | § § § § § | |
| *Plaintiff,* | § § § | C.A. NO. 4:11-cv-01235 |
| **v.** | § § § § | JURY TRIAL DEMANDED |
| MGTI, LLC a/k/a MO'S STEAKHOUSE, NARF HOU, LLC a/k/a MO'S A PLACE FOR STEAKS, and JOHN A. VASSALLO, | § § § § § | |
| *Defendants.* | § | |

## APPENDIX TO PLAINTIFF'S
## MOTION FOR CLASS CERTIFICATION & EXPEDITED DISCOVERY

Plaintiff Sharon Flowers submits this appendix containing copies of cases and the relevant parts of authorities that are cited in her Motion For Class Certification & Expedited Discovery which are not found in the United States Code, United States Code of Federal Regulations, United States Supreme Court Reporter, Federal Reporters, Federal Rules Decisions, Federal Supplement, Southwestern Reporter Second or Third, or Vernon's Revised Statutes and Codes.

# TABLE OF CONTENTS

**Cases**

*Alba v. Madden Bolt Corp.,*
   No. 4:02-cv-01503 (S.D. Tex. Jun. 5, 2002) .................................................... A

*Allen v. McWane, Inc.,*
   2006 U.S. Dist. LEXIS 81543 (E.D. Tex. Nov. 7, 2006) ................................. B

*Baum v. Shoney's Inc.,*
   1998 U.S. Dist. LEXIS 21484 (M.D. Fla. Dec. 3, 1998) .............................. C

*Chisolm v. Gravitas Rest. Ltd.,*
   2008 U.S. Dist. LEXIS 28254 (S.D. Tex. Mar. 25, 2008) ............................ D

*Coreas v. C & S Ranch,*
   No. 5:97-cv-00030 (S.D. Tex. May 16, 1997) ................................................. E

*Gardner v. Assocs. Commercial Corp.,*
   2000 U.S. Dist. LEXIS 22804 (S.D. Tex. Dec. 19, 2000) ............................. F

*Harrison v. Enterprise Rent-A-Car Co.,*
   1998 U.S. Dist. LEXIS 13131 (M.D. Fla. Jul. 1, 1998) ................................ G

*Herrera v. Unified Mgmt. Corp.,*
   2000 U.S. Dist. LEXIS 12406 (N.D. Ill. Aug. 17, 2000) ................................. H

*Krueger v. New York Tel. Co.,*
   1993 WL 276058 (S.D.N.Y. Jul. 21, 1993) ...................................................... I

*Marchan v. Taqmex, Inc.,*
   No. 4:02-cv-04167 (S.D. Tex. Dec. 16, 2002) ................................................. J

*Mertz v. Treetop Enter., Inc.,*
   1999 U.S. Dist LEXIS 18386 (N.D. Ala. Mar. 2, 1999) ............................... K

*Roussell v. Brinker Int'l, Inc.,*
   2011 U.S. App. LEXIS 19027 (5th Cir. Tex. Sept. 14, 2011)........................... L

*Schwartz v. MCI Telecomm. Corp.,*
   No. 4:98-cv-01574 (S.D. Tex. Feb. 17, 1999) ................................................. M

2

*Zhao v. Benihana, Inc.*,
  2001 U.S. Dist. LEXIS 10678 (S.D.N.Y. May 7, 2001) .............................. N

Respectfully submitted,

**MOORE & ASSOCIATES**

By: /s/ Melissa Moore

Melissa Ann Moore
Federal Id. No. 25122
State Bar No. 24013189
Rochelle Owens
Federal Id. No. 590507
State Bar No. 24048704
Lyric Center
440 Louisiana Street, Suite 675
Houston, Texas 77002
Telephone: (713) 222-6775
Facsimile: (713) 222-6739

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was forwarded to all counsel of record on the 17th day of January in the year 2012 via the Court's CM/ECF system.

/s/ Melissa A. Moore

Melissa Ann Moore

United States Courts
Southern District of Texas
ENTERED

**JUN 0 5 2002**

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GILBERTO ALBA, on Behalf of Himself and Others Similarly Situated, | § § § | CIVIL ACTION NO: H-02-1503 |
| *Plaintiffs* | § | |
| | § | |
| v. | § | COLLECTIVE ACTION |
| | § | |
| MADDEN BOLT CORPORATION, | § | |
| *Defendant* | § | JURY TRIAL DEMANDED |

### ORDER APPROVING NOTICE AND PROTECTIVE ORDER

The Court has considered Plaintiff's Emergency Motion for Notice to Potential Class Members and for Associated Protective Order (the "Motion") and any response filed by Defendant. The Court is of the opinion that the Motion is well-taken and should be granted. The Court therefore ordered Defendant to produce the full name, last known address and telephone number, and dates and location(s) of employment for all current and former hourly employees employed during the period January 1, 1999 to present. Madden is to produce a computer-readable data file containing this information to Plaintiff's counsel within five (5) days of this order.

Further, the notice attached hereto as Exhibit A shall be issued within ten (10) days by Plaintiff's attorney to those persons identified by Defendant. Such notice shall be mailed by first class U.S. Mail, with a copy to Defendant's counsel, all at Plaintiff's attorneys' cost. The shall include a Notice of Consent and a return-addressed stamped envelope. The potential plaintiffs shall be provided until _September 10_ , 2002 to file their Notice of Consent "opting-in" to this litigation as plaintiffs.

-1-



EXHIBIT

A

Exhibits

Further, Defendant is hereby prohibited from communicating, directly or indirectly, with any current or former hourly employees about any matters which touch or concern the settlement of any outstanding wage claims, the Department of Labor investigation, or other matters related to this suit during the opt-in period.  This order shall not restrict Defendant from discussing with any current or former employee matters that arise in the normal course of business.

Dated _____June 5_____, 2002.

_____
JUDGE PRESIDING

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GILBERTO ALBA, on Behalf of Himself and Others Similarly Situated, | § § § | CIVIL ACTION NO: H-02-1503 |
| *Plaintiffs* | § | |
| v. | § § | COLLECTIVE ACTION |
| MADDEN BOLT CORPORATION, | § § | |
| *Defendant* | § | JURY TRIAL DEMANDED |

## NOTICE OF RIGHTS

To:     All current and former employees of Madden Bolt Corporation at any time between May 13, 1999 and the present.

RE:     Fair Labor Standards Act ("FLSA") lawsuit against of Madden Bolt Corporation (Madden Bolt).

This case was filed by Gilberto Alba, a former employer of Madden Bolt who alleges that he and other employees (Plaintiffs) were denied overtime compensation time for each hour worked in excess of forty while working Madden Bolt.   Plaintiffs claim they are entitled to additional compensation for every hour of overtime they have worked during the time April 24, 1999 to the present.  For those unpaid hours worked in excess of forty in a particular workweek, plaintiffs seek this additional compensation at one and one-half their hourly rates.

If you are among the persons to whom this notice is addressed and you wish to have your right to overtime pay litigated in this case, you should file your consent to be made a party plaintiff with the Clerk of the Court. **You are eligible to participate in this case even if you signed an Agreement stating that you waived or released your claim for unpaid wages.** It is entirely your own decision whether or not to do so and, if you do elect to become a party plaintiff, whether you prefer to be represented by the present plaintiffs' attorney[1] or by an attorney of your choosing.  If you file a consent through a separate attorney, your Notice of Consent should be under the caption of the case as listed above, should contain your name, address, telephone number, date of birth, date of signing and signature, and should state:  "I hereby consent to be a party plaintiff in this case."

---

[1]     Plaintiffs' attorney is:
Richard J. Burch
Bruckner Burch , PLLC
5847 San Felipe, Suite 3900
Houston, Texas 77057
(713) 877-8788



If you wish plaintiffs' attorney, Richard J. Burch, to represent you, you should contact him directly at (713) 877-8788. You will have the opportunity to discuss with him in detail the nature of this case, including the terms by which he may represent you.

As already stated, you are not required to join in this case by filing your consent or to take any action unless you want to. However, your determination whether or not to take action should be made promptly. Unless a Notice of Consent is actually filed with the Court on or before _____, you will not be permitted to join this case. A Notice of Consent is enclosed with a self-addressed stamped envelope.

If you do not file a consent form and join in this case, you will not receive any back wages for overtime or other relief from the case if the plaintiffs prevail here. Any such relief would be obtained by you only if you proceeded by bringing an independent action within the time provided by law. **You must file a consent to join this action if you wish to recover unpaid overtime wages from this case.**

If, however, you decide to join this case by filing your consent, you will be bound by the judgment of the Court on all issues of the case, whether it is favorable or unfavorable to you.

This notice is for the sole purpose of determining the identity of those persons who wish to be involved in this case. Although the Court has authorized the sending of this notice, there is no assurance at this time that the Court will grant any relief in this case.

**The FLSA prohibits anyone from discriminating or retaliating against you if you choose to take part in this case. This means you cannot be fired, demoted or have your pay cut because you participate in this case.**

Gilberto Alba, Plaintiff


By: _____
          Attorney-in-Charge for Plaintiffs

This notice has been authorized by the Honorable Kenneth Hoyt, the Judge to whom the case has been assigned.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GILBERTO ALBA, on Behalf of Himself and Others Similarly Situated, | § § § | CIVIL ACTION NO: H-02-1503 |
| *Plaintiffs* | § § | |
| v. | § § | COLLECTIVE ACTION |
| MADDEN BOLT CORPORATION, | § § | |
| *Defendant* | § | JURY TRIAL DEMANDED |

## NOTICE OF CONSENT

I, the undersigned, an employee currently or formerly employed by Madden Bolt Corporation hereby consent to be a party plaintiff in the above-captioned lawsuit, which is an action to collect unpaid wages. I have been provided with a copy of the Professional Services Agreement with Bruckner Burch PLLC and agree to be bound by its terms. I hereby designate Gilberto Alba as my agent for the purposes of prosecuting this action, including the selection and compensation of counsel, negotiation of settlement and expenditures.

_____

Full Legal Name (print)

_____

Street Address

_____

City                          State
                              Zip Code

_____

Signature

_____

Date

Switch Client | Preferences | Help | Sign Out

| *My Lexis*™ | Search | Get a Document | *Shepard's*® | More | History |
|---|---|---|---|---|---|
| | | | | | Alerts |

FOCUS™ Terms ☐ Advanced... **Get a Document** ☐ View Tutorial

Service: **Get by LEXSEE**®
Citation: **2006 U.S. DIST. LEXIS 81543**

*2006 U.S. Dist. LEXIS 81543, \**

CORLINE ALLEN, ET AL., Plaintiffs, v. MCWANE, INC., Defendant.

CIVIL ACTION NO. 2:06-CV-158 (TJW)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, MARSHALL DIVISION

2006 U.S. Dist. LEXIS 81543

November 7, 2006, Decided
November 7, 2006, Filed

EXHIBIT
B

**SUBSEQUENT HISTORY:** Decision reached on appeal by Allen v. McWane, 2010 U.S. App. LEXIS 487 (5th Cir., Jan. 8, 2010)

**CORE TERMS:** notice, collective action, similarly situated, declarations, class members, protective, opt-in, certification, overtime, hourly, conditional, donning, doffing, class certification, competent evidence, company-wide, workstations, post-shift, discovery, decertify, putative, walking, lenient, nexus, gear, binds

**COUNSEL:** **[\*1]** For Corline Allen, Lorenzo Aguirre, Theotis Anderson, Gerardo Avalos, Cesar Avila, Rodney Abron, Karey Don Acy, Gilberto Albiter, Manuel Alfaro, Francisco Baeza, Joseph Baker, Jr., Tom Beasley, Oscar Bell, Renaldo Bell, Richard Berry, Raymond Bickerdike, Jimmy W. Black, Selah Black, Gabriel Borunda, Michael Bowie, Donald Bright, Joe Brooks, Willie Brooks, Clifton Broussard, Keith Brown, Donald Bryant, Casiano Bueno, Gregory Buckner, Ronnie Bussell, Carlotta Butler, Marcus Cain, Todd Camp, Arturo Cardenas, Maurillo Cardenas, Elias Carter, Herman Carter, Charles Cato, Johana Chacon, William Chalk, Allan Clark, Johnny Coats, Therman Cobb, Ira Cofer, Charles Coleman, Mark Cook, Kato Cooper, Eduardo Cordova, Gray Crawford, Raymond Cross, Sr., Lewis Cumby, Jerry Daniels, Jimmie Davis, Eliot Daye, Roberto Delgado, John A. Dews, Shirley Dixon, Ruby E. Dotson, Henry Douglas, Thurman Duncan, Cameron Dunlap, Adam Duran, Juan Duran, Robert Earl, Robert G. Edwards, Dedrick Elliott, Sr., Roland Elliott, Warren A. Ellis, Sr., Calvin Ellison, Ivery English, Cortess Evans, Ricky Featherston, Juan J. Flores, Leocadio Flores, Pascual Flores, Deric Folks, Charles L. Fomby, Johnny Fonza, Dexter Foster, **[\*2]** Ruby Frazier, James Fuller, Fidel Galaviz, Miguel Gallegos, Dolores Garcia, Jose Garcia, Manuel Garcia, Clifford Gardner, John A. Gardner, David L. Garrett, Gregorio Garza, Domingo Godines, Jr., Jesus Godines, Felix Gomez, Jose Gomez, Juan A. Gonzales, Juan J. Gonzales, James Clifford Goodwin, Albert Griffin, Patsy Griffin, George Hall, Grover Hall, Eric Hambrick, Amos Harmon, Jr., Wilmer J. Harmon, Willie Harris, Nathaniel Hawkins, Dennis Hawley, Jimmy Ray Head, Payton C. Henderson, Agapito Hernandez, Juan Hernandez, Jeffrey Hitt, Willie Howard, Kelly Humber, Marcus Hurd, Bennie Jackson, John

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 81543    Page 2 of 6

Case 4:11-cv-01235 Document 28-7 Filed in TXSD on 01/17/12 Page 10 of 93

Jacobs, Walter James, Jr., Will Jenkins, Annie Faye Johnson, Aron Johnson, Gertie Johnson, Jerome Johnson, Morris Johnson, Cornelius Jones, Chris Kennedy, Lester Kimble, Roy Lacy, Evelia Lara, Jose Lara, Robert Leadon, Joyce Lee, Ruben Leguizamo, Jerry Lewis, Matthew Lewis, Lonnie Lollar, Jeremias Lopez, Joe Lyles, Timothy Mack, Billy Mackey, Charles R Martin, Jerelene Martin, Larry Martin, Willie A Mayfield, Alton L. McGee, Gary McGee, Charles McKenzie, Freddie McLemore, Spaunder Medford, Cesario Medina, Efren Medina, Garland D. Melton, Lorenzo Mendez, Augustine Meyer, Clifton Miles, Bryan Mims, **[*3]** Jimmie L. Mims, David Minix, David Miranda, Clyde Mitchell, Johnny Mitchell, Gregory Mitchell, Alejandro Reyes Molina, Elbert Moore, Virgilio Morales, Donald Motley, Luis Araiza Munoz, Johnny Neeley, Jesus Olmos, Juan R. Ortega, Refugio Palacio, Maximia Palacios, Jose Perez, William H. Pinke, Willie Pinke, Sabino Prado, John Prater, George Price, Orlando Price, Edna Printer, Robert Puckett, Oscar Quintero, Lilia Ramirez, Ramon Ramos, William E. Reynolds, Tony Rivera, Nicholas Roan, Ronnie Roberts, Robert Robertson, Felipo Rodriguez, Jose L. Rodriguez, Francisco Ruiz, Bobby Runnel, Leopoldo Saenz, Danny Shackleford, Tommy Shackleford, Larry Simmons, Curtis Simpson, James Snow, Jr., Fernando Soriano, Manuel Soriano, Jr., William Sowells, Jr., Ester Stevens, Johnny Stevens, Steve Stone, Earnest Street, Henry Swanson, Celio Tapia, Raymond Tate, Thomas Taylor, Larry Thompson, Vernon Thompson, Donald Tucker, Terry Tucker, Thomas Turner, III, Otis Tyeskie, Carl Underwood, Juan Valdez, Jorge Valdivia, Freddie Walker, Tommy Walker, Alfred Washington, J D Weldon, Eric White, Marcus White, Richard White, Dave Wilkerson, Howard Wilkerson, L.C. Wilkerson, Angus Williams, Burnett Williams, Jr., **[*4]** Hosea Williams, Jessie Williams, Jimmie L. Williams, Sr., Margaret J. Williams, Rodney Williams, Doyle Willis, Mary J. Willis, Morris Willis, Earnest R. Wilson, Roger Wolfe, Willie Woodards, Warner Young, Emiliano Zavala, Randall Anderson, Charles Bolton, Ulanda Bozeman, Tracy Chimney, Vernon Coats, Herman Cobb, Steve Dickerson, Dcodato Dorsey, Charles Hudson, Eddie R Lawton, Jody Lee Mitchell, Bobby O'Neal, Donny Roberts, Charles. Russell, Marcos Sanchez, Ra'Shon Simmons, Gleen Sims, David J Tralar, Charles Vickers, Aurelio Viramontes, Marcus L Ward, Charles Ware, Herman Warren, Gerimane Williams, Samuel Adams, Juan R. Araiza, Heron Baldovinos, Tony Billington, Sterling Brooks, Kelly Bryant, William Buckhalter, Anthony Chimney, Aaron Chism, Margaret L. Cooks, Gregory Cooper, Roderick Crowe, Lonell Cunningham, Pamela Fomby, Jose O. Flores, James Ford, Irineo Garcia, James Gibson, Gerri Howland, Craig Jackson, James E. Jackson, Rayford Jackson, Curlie Johnigan, Charles Johnson, Donnie Clyde Jones, Christopher Lane, Jimmy C. Lee, John H. Lewis, Delfino Gomez Luviano, Charles Matlock, Brian Medlock, Derrick Miller, Reginald Pitts, Benny Reynolds, Tony Joel Rivera, Marcus Roberts, Reginald **[*5]** Roberts, Charles E. Ross, Calvin B Seward, George Seward, William Skipper, Charles Anthony Smith, Hector Smith, Jessie Taylor, Jorge Luis Torres, Stanley Tuco, Jonithan Tucker, Claude Walker, Michael Warren, Ricky Wilson, Robert Lane Abbott, Sr., Jerry Dale Austin, Sheddrick Blake, Jeffrey R. Bolding, Gary Bowers, Jerry Bowers, Kenneth W. Boyce, Jr., Bryant A. Bradford, Earl Wayne Brown, Robert W. Britt, Terry Keith Brown, Anderson Brunt, Glenn Bungert, Traveno Burnett, R.M. Burt, James F. Butterworth, Barry Byers, J.D. Cammeron, III, Donte Carlisle, Steven A. Caruso, Hiram Henry Chatman, Ari C. Chisum, Andrew Coleman, Gerald Cunningham, Cornell Davis, Joel Dillard, Leon Dodd, Anthony Dupree, Jeremy Lamar Felton, Charles H. Finley, Sr., Jason E. Floyd, Bobby L. Freeman, Billy Gaston, Jeffrey Gaston, Jimmy Gilmore, Christopher L. Glober, Earnest Goggins, Larry J. Golden, Cheyenne C. Good, Ebony Gray, Wallace P. Groce, Anthony R. Guy, James D. Hannah, J.W. Hearn, Terry Heath, Russell Henson, Chris Herron, Jerry Hicks, James E. Hubbard, Blake Hurst, Dennis Jackson, Jeremy B. Jackson, Darrius Johnson, William Johnson, Jr., Clayton Lightfoot, Woodrow Lowman, Robert Marchman, Sr., James **[*6]** E. Martin, John Samuel Martin, Larry Joe Mays, Ronnie McCormick, Charles G. McInnish, Mark Miller, Jeffery Milton, Steven Minniefield, Ian Mueller, Euell Stanley Mulkey, Carlous Myers, James M. Neal, Steven Norman, Kevin Pair, Calvin Parker, Menzo Parker, Jr., Frank Parris, Wilbert Price, William Pugh, Bobby Raulerson, Jonathan Rutledge, Christopher Sayles, James C. Scott, Jerry W. Sims, Alan W. Smith, Kirk Douglas Smith, Travis Speigner, Brandon Tanner, Kenneth J. Teague, Jessie Terry, Sr., Jason N. Thornhill, Billy Tillison, Earl Tolbert, Anterio Turner, Dennis Turner, Eric Turner, Toney Turner, Rodrigues Tyus, Kelly Victorino, Eric Shayne Vinson, Chevron Wallace, Darrian Waren, Harold Edward Warren, Harold E. Westbrooks, Bobby Franklin Wilkins, Anthony Williams, R.D. Williams, Henry Zastawnik, Rogelio Aguilar, Lamar Akies, Rafael R. Alvarez, Brian Atkinson, Michael Baker, Jerry Barnes, Gregory Bell, David Body, Johnny Brewster, Allen Buggs, Warren Burns, George Randy Bussey, Warren B. Cameron, Sidney Carmichael, Agustin Castilo, Levi Chatman, Juan Chavero, Alberto Chavez, Everett

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 81543                                    Page 3 of 6

Case 4:11-cv-01235 Document 28-7 Filed in TXSD on 01/17/12 Page 11 of 93

Clayborn, Felix L. Clayborn, Antonio Cornejo, Marshall K. Crook, Tracy Crook, Randy B. Davis, Mario **[*7]** Delgado, Alex Garcia, Edwin Garcia, Joaquin Garcia, Santos Garcia, Curtis M. Gooden, Juan P. Granados, Shad C. Grissom, Jose Luis Guzman, Steve Hall, Luransa Hardy, Benito Hernandez, Ciro Hernandez, Marcelo Hernandez, Roque Hernandez, Alfredo Hinojosa, Toshi Holliday, William Huguley, Anthoney Jackson, Edward Jones, Kenneth La Count, Jose M. Lopez, Mauricio Lopez, Willie Marshall, Shane Martin, Dolores Martinez, Eduardo Martinez, Eloy Martinez, Jorge Martinez, Oscar Martinez, Ruben Martinez, Timothy McCain, William McInnish, Nathan McRath, William Earl McRath, Curtis Miller, Jr., Charlie Mixon, Jose Nava, Anthony Oden, Felipe Pacheco, Eddie C. Palmer, Robert Payne, Edwardo Reyes, Erick D. Reyes, Francisco Reyes, Oscar G. Reyes, Trinidad Reyes, William L. Rudolph, Martin Sanchez, Lloyd Sanders, Rodney C. Simmons, Brian Smith, Charles F. Smith, Ubaldo Solis, Carl S. Strunk, Vernon Tatum, Andres Torres, Juan Torres, Gregory O. Thomas, Henry Turner, Gerardo Villanueva, Genaro Vizcaya, Perry Walker, Antoine Warren, Temmie Wilson, Bruce E. Wombacher, Kelvin Barron, Dale L. Bowser, Vernon Douglas, Roosevelt Fuller, Leon Gossett, Jr., Edwyn Green, Jose M. Lopez, Terry Milligan, Darrell Smith, **[*8]** Jesus Solis, Jeremy D. Thompson, Lester Tucker, Jose A. Vargas, Antuwon Williams, Daniel Abernathy, James A. Bailey, Jerry Brown, Markee Bynum, Harry L. Christian, Brandon Gay, William C. Laughead, Tommy Noah, Jerry Oliver, Tora B. Scott, Jason Shuler, Plaintiffs: Jimmy Michael Negem ✔, Negem Bickham & Worthington, Tyler, TX.; Daniel J Sciano ✔, Tinsman & Sciano PC, San Antonio, TX.; Michael Charles Smith ✔, The Roth Law Firm, Marshall, TX, US.

For All Plaintiffs, Plaintiff: Jimmy Michael Negem ✔, Negem Bickham & Worthington, Tyler, TX.

All Plaintiffs, Plaintiff.

For Leonard Black, Palintiff: Michael Charles Smith ✔, The Roth Law Firm, Marshall, TX, US.

For McWane, Inc., Defendant: Herschel Tracy Crawford ✔, Rosemary Sage Jones ✔, Ramey & Flock, Tyler, TX.; Mitchell G Allen ✔, Wyndall A Ivey ✔, Maynard Cooper & Gale PC, Birmingham, AL.

**JUDGES:** T. JOHN WARD, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** T. JOHN WARD

**OPINION**

**MEMORANDUM ORDER**

**I. Introduction**

Plaintiffs filed a Motion to Facilitate Section 216(b) Collective Action (# 11) A hearing on the motions was held at which time the Court GRANTED the Plaintiffs' request for the Court to facilitate the Notice process to all **[*9]** thirteen (13) of Defendant's facilities. The court issues this order to memorialize its reasons for granting the motion as to all of the facilities.

**II. Factual Background**

Plaintiffs filed this suit to recover unpaid wages, both straight time and overtime, for the period from April 13, 2003, to the present. Plaintiffs contend that Defendant did not compensate employees for work performed pre- and post-shift, time putting on and taking off personal protective gear and equipment, interrupted lunch breaks, and controlled time for walking to and from workstations, in violation of the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207. *See IBP, Inc. v. Alvarez,* 546 U.S. 21, 126 S. Ct. 514, 163 L. Ed. 2d 288 (2005).

### III. Motion for Notice

Plaintiffs' motion is brought pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b). Plaintiffs seek limited discovery and authorization to send Court-approved notices to Defendant's employees. Plaintiffs contend that employees in all of Defendant's facilities are similarly situated in numerous ways because (1) **[*10]** they have or had similar job duties and titles, (2) they have or had the same hourly pay structure, (3) they all work or worked for the same company, and (4) they were all required by the same employer to work off the clock without being paid their regular rate and overtime.

In response, Defendant states that, to date, employees from only 3 of the proposed 13 facilities have filed written consents, and that Plaintiffs have submitted employee declarations from only 4 of the proposed 13 facilities. Additionally, Defendant contends that each facility has different positions and requirements for the use of personal protective equipment unique to their own manufacturing procedures, and that there is no company-wide policy regarding the donning and doffing of personal protective equipment.

Plaintiffs subsequently filed employee declarations from employees of 2 additional facilities bringing the number of employee declarations to 6 out of the proposed 13 facilities.

### IV. Discussion

The FLSA provides that an action may be brought by "one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b) **[*11]** . District courts have discretion to conditionally certify a collective action and to authorize the sending of notice to potential class members so that they may choose to "opt-in" to the suit. *Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 169, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).

Federal courts currently follow two different approaches for determining what "similarly situated" means in a collective action context under § 216(b): (1) the two-stage class certification described in *Lusardi v. Xerox, Corp.,* 118 F.R.D. 351 (D.N.J. 1987), and (2) the "Spurious Class Action" described in *Shushan v. Univ. of Colorado,* 132 F.R.D. 263 (D. Colo. 1990). The Fifth Circuit has discussed the two approaches, but has not adopted a specific approach. *Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1212 (5th Cir. 1995). The *Lusardi* two-step approach is the prevailing test among federal courts, however, and the Court will apply it in this case. *Barnett v. Countrywide Credit Indus.,* 2002 U.S. Dist. LEXIS 9099, 2002 WL 1023161, at *1 (N.D. Tex. 2002); *Neagley v. Atascosa County EMS,* 2005 U.S. Dist. LEXIS 230, 2005 WL 354085, *3 (W.D. Tex. 2005).

Under this approach, certification **[*12]** for collective action is divided into two stages: (1) the notice stage; and (2) the opt-in or merits stage. *Mooney,* 54 F.3d at 1213-14. In the notice stage, the court makes a decision, based on the pleadings and affidavits, on whether notice of the action should be given to putative class members. *Id.* This decision typically results in "conditional certification" of a representative class. *Id.* at 1214.

The plaintiffs bear the burden of presenting preliminary facts showing that a similarly situated group of potential plaintiffs exist. *See D'Anna v. M/A-Com, Inc.,* 903 F. Supp. 889, 893-94 (D.Md. 1995). This preliminary factual showing must be based on competent evidence in order to avoid stirring up unwarranted litigation. *Id.* at 894. Because the court has minimal evidence, however, the court makes the determination using a fairly lenient standard. The standard requires nothing more than substantial allegations that the putative class members were victims of a single decision, policy, or plan. *Mooney,* 54 F.3d at 1214, 1214 n.8 (citing *Sperling v. Hoffman-La Roche, Inc.,* 118 F.R.D 392, 407 (D.N.J 1988)). **[*13]** In addition, the plaintiffs need only show that their positions are similar, not identical. *Riojas v. Seal Produce, Inc.,* 82 F.R.D. 613, 616 (S.D. Tex. 1979). The court should satisfy itself that there are other employees of the defendant who are "similarly situated" with respect to their job requirements and pay provisions. *Dyback v. State of Fla. Dept. of Corrections,* 942 F.2d 1562, 1567-68 (11th Cir.

1991). Furthermore, in assessing the plaintiff's allegations, the court should consider factors such as whether potential plaintiffs were identified, whether affidavits of potential plaintiffs were submitted, and whether evidence of a widespread plan was submitted. *H&R Block Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (internal citations omitted).

Notice is appropriate if the court concludes that there is "some factual nexus which binds the named plaintiffs and potential class members together as victims of a particular alleged [policy or practice]." *Villatoro v. Kim Son Restaurant, L.P.*, 286 F. Supp. 2d 807, 810 (S.D. Tex. 2003) Therefore, a court can foreclose a plaintiff's right to proceed collectively **[*14]** only if the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice. *Burt v. Manville*, 116 F.R.D. 276, 277 (D. Colo. 1987).

The second stage of the *Lusardi* approach, or the opt-in or merits stage, is typically precipitated by the defendant's motion for "decertification" after discovery has largely been completed and the matter is ready for trial. *Mooney*, 54 F.3d at 1214. With more information, the court can now make a factual determination on the similarly situated question, and decide whether to allow the representative action to proceed to trial or to decertify the class and dismiss, without prejudice, the opt-in plaintiffs. *Id.* If the court decertifies the class, the original plaintiffs would proceed to trial on their individual claims. *Id.*

In this case, the court is only at the notice stage. Plaintiffs have shown a sufficient factual nexus which binds the proposed class to a particular policy or practice. Plaintiffs submitted affidavits and declarations of individuals who desire to opt-in, and who are similarly situated because they perform substantially the same tasks. **[*15]** These include the donning and doffing of protective gear, walking to and from workstations, waiting time prior to the beginning of a shift, and performing other pre- and post-shift work. *See Exhibits C-P attached to Plaintiff's Motion to Facilitate Section 216(b) Collective Action; Affidavits in Support of Plaintiff's Motion to Facilitate Section 216(b) Collective Action (Docket # 23, Docket # 25)* The affidavits and declarations come from current employees of the Defendant who work at 6 different facilities in 4 different states. *Id.* Although different facilities may have different rules and procedures, the basic tasks performed by the employees were all similar. *See Id.* In addition, the Plaintiffs allege that the employees were not paid for time spent on these tasks. *Id.* The employees have similar pay structure because they were all paid hourly. *Id.; Plaintiff's Motion to Facilitate Section 216(b) Collective Action ("Plaintiff's Motion")* at 5, 11. Finally, all facilities are owned by the same company. *Id.* at 2-3.

Defendant's primary objection is that Plaintiffs have not submitted proof from all of the facilities. Although the affidavits and declarations do **[*16]** not encompass all of the Defendant's facilities, the Court finds that the Plaintiffs have come forward with competent evidence that similarly situated potential plaintiffs exist. The evidence is sufficient to meet the lenient standard for giving notice to potential class members.

This case is different from *Basco v. Wal-Mart Stores Inc*, 2004 U.S. Dist. LEXIS 12441, 2004 WL 1497709 (E.D. La. 2004). In *Basco*, the plaintiffs sought certification of a class of hourly employees who worked at Wal-Mart or Sam's Club stores. 2004 U.S. Dist. LEXIS 12441, [WL] at *2. The plaintiffs contended that the defendant's payroll control and budgeting system and bonus plan for store managers based on profitability resulted in corporate policy denying overtime to hourly employees. 2004 U.S. Dist. LEXIS 12441, [WL] at *6. The court denied the plaintiffs' motion for conditional class certification because the effects of the policy were "particularized," and not uniformly or systematically implemented at any given store. 2004 U.S. Dist. LEXIS 12441, [WL] at *7. Here, there is sufficient evidence of commonality among employment actions, such as the requirement of donning and doffing of protective hear without compensation, to permit conditional certification. It is significant that employees **[*17]** of 6 of the 13 commonly-owned facilities have filed declarations in this case. For notice purposes, the court finds that Plaintiffs have satisfied their burden to demonstrate that a company-wide policy existed

Therefore, the court grants the Plaintiffs' Motion to Facilitate Section 216(b) Collective Action for

Get a Document - by Citation - 2006 U.S. Dist. LEXIS 81543                    Page 6 of 6

Case 4:11-cv-01235   Document 28-7   Filed in TXSD on 01/17/12   Page 14 of 93

all thirteen (13) of Defendant's facilities. The court has, by separate order, approved a form of notice after considering the parties' submissions.

So **ORDERED** and **SIGNED** this 7<th> day of November, 2006.

T. JOHN WARD

UNITED STATES DISTRICT JUDGE

Service: **Get by LEXSEE®**
Citation: **2006 U.S. DIST. LEXIS 81543**
View: Full
Date/Time: Tuesday, January 17, 2012 - 4:41 PM EST

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

In                         About LexisNexis  | Privacy Policy  | Terms & Conditions  | Contact Us
                           Copyright © 2012 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Case 4:11-cv-01235  Document 28-7   Filed in TXSD on 01/17/12   Page 15 of 93

| *My Lexis*™ | Search | Get a Document | *Shepard's®* | More | History |
|---|---|---|---|---|---|
| | | | | | Alerts |

FOCUS™ Terms                    Advanced...  **Get a Document**        View
                                                                      Tutorial

Service:  **Get by LEXSEE®**
Citation:  **1998 U.S. DIST. LEXIS 21484**

*1998 U.S. Dist. LEXIS 21484, \*; 5 Wage & Hour Cas. 2d (BNA) 127*

DEBORAH BAUM, JACK H. BAUM, ROSE MARIE CAMPBELL, CARLOS RIVERA, and LUCIA
DESAMPER, Plaintiffs, v. SHONEY'S INC., f/k/a TPI, INC., Defendant,

Case No. 98-423-CV-ORL-19B

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, ORLANDO
DIVISION

1998 U.S. Dist. LEXIS 21484; 5 Wage & Hour Cas. 2d (BNA) 127

December 3, 1998, Decided
December 3, 1998, Filed

**DISPOSITION: [\*1]** Plaintiffs' Motion for Expedited Court Supervised Notice (Doc No. 9, filed
June 5, 1998) DENIED.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiffs filed a motion for expedited court supervised notice,
seeking approval of the court to send notice to all "similarly situated" individuals in
accordance with § 16(b) of the Fair Labor Standards Act of 1938 (FLSA), as amended, 29
U.S.C.S. § 201 et seq., in their action brought under the FLSA. Defendant employer opposed
the motion.

**OVERVIEW:** Plaintiffs, sued defendant employer under the Fair Labor Standards Act of 1938
(FLSA), as amended, 29 U.S.C.S. § 201 et seq., action on behalf of themselves and
numerous others similarly situated. Plaintiffs filed a motion for expedited court supervised
notice, seeking approval of the court to send notice to all "similarly situated" individuals in
accordance with § 16(b) of the FLSA. Plaintiffs indicated that the class should have included
all present and former employees of defendant who were paid on an hourly basis or under a
fluctuating pay plan and who were employed by defendant at any time within the three year
period preceding the filing of the complaint. The court denied the motion because plaintiffs
failed to provide evidence, as they were required to do, that aggrieved individuals existed
within the broad class they proposed, and failed to make the required showing that the
potential class members were similarly situated to each other.

**OUTCOME:** Plaintiff's motion for expedited court supervised notice was denied because
plaintiffs failed to provide evidence that aggrieved individuals existed within the broad class
they proposed, and failed to make the required showing that the potential class members
were similarly situated to each other.

**EXHIBIT C**

**CORE TERMS:** similarly situated, notice, class members, restaurant, former employees, discrimination case, fluctuating, authorize, aggrieved, hourly, franchise agreements, non-server

**LEXISNEXIS® HEADNOTES**                                        ⊟**Hide**

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions 🔖

*HN1* ⬇ 29 U.S.C.S. § 216(b) provides that a collective action may be maintained against any employer by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Class Actions > Class Members > General Overview 🔖

Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions > General Overview 🔖

Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview 🔖

*HN2* ⬇ A court has the discretion to authorize notice to potential class members under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.S. § 201 et seq. Before authorizing such notice, the court must determine whether other employees exist who are "similarly situated" with respect to job requirements and pay provisions. In determining whether potential class members are similarly situated, the United States Court of Appeals for the Eleventh Circuit does not require a showing that potential class members were together the victims of a single decision, policy. However, such a showing is probative in determining whether potential class members are similarly situated. More Like This Headnote | *Shepardize:* Restrict By Headnote

Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview 🔖

*HN3* ⬇ Before a court authorizes notice to potential class members under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.S. § 201 et seq., plaintiffs, among other requirements, must also demonstrate that aggrieved individuals exist within the broad class they propose. More Like This Headnote | *Shepardize:* Restrict By Headnote

Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview 🔖

*HN4* ⬇ Plaintiffs may meet the burden of providing evidence to support their allegations by making substantial detailed allegations of class-wide violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.S. § 201 et seq., supported by affidavits. More Like This Headnote | *Shepardize:* Restrict By Headnote

**COUNSEL:** For DEBORAH BAUM, JACK H. BAUM, ROSE MARIE CAMPBELL, CARLOS RIVERA, LUCIA DESAMPER, plaintiffs: H. Clay Parker, IV, Daniel N. Brodersen, Parker, Burke, Landerman, & Parker, P.A., Orlando, FL.

For SHONEY'S INC., defendant: Michael J. Mueller, Joel M. Cohn, T. Cy Walker, Akin, Gump, Strauss, Hauer & Feld, Washington, DC.

For SHONEY'S INC., defendant: Tucker H. Byrd, Gregory W. Herbert, Greenberg, Traurig,

Case 4:11-cv-01235  Document 28-7  Filed in TXSD on 01/17/12  Page 17 of 93

Hoffman, Lipoff, Rosen & Quentel, P.A., Orlando, FL.

**JUDGES:** PATRICIA C. FAWSETT, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** PATRICIA C. FAWSETT

### OPINION

### ORDER

This cause came before the Court on Plaintiffs' Motion for Expedited Court Supervised Notice and Memorandum of Law in Support Thereof (Doc No. 9, filed June 5, 1998) and Defendant's Memorandum in Opposition to Plaintiffs' Motion for Expedited Court Supervised Notice (Doc. No. 28, filed September 4, 1998). Both parties have submitted a number of documents in support of their positions.

Plaintiffs have brought this action against Defendant Shoney's Inc, f/k/a TPI, Inc. [1] under the Fair Labor Standards Act of 1938 ("FLSA"), **[*2]** as amended, 29 U.S.C. § 201, *et seq.*. Plaintiffs have brought this action on behalf of themselves and "numerous other similarly situated TPI employees" pursuant to 29 U.S.C. § 216(b). (Doc. No. 1 at P 20, filed April 13, 1998).

### FOOTNOTES

1 According to the Defendant, the correct entity is TPI Restaurants, Inc. ("TPIR"), not TPI Inc.. Before September 1996, TPIR was a separately owned corporation that operated approximately 175 Shoney's concept restaurants in eleven states under franchise agreements. In September 1996, Shoney's Inc. acquired TPIR including all the Shoney's concept restaurants previously owned and operated by TPIR. (Doc. No. 28).

Plaintiffs allege three distinct claims. First, Plaintiffs allege that hourly employees were not compensated for all of the time they worked. Second, they contend Defendant used the fluctuating workweek method of overtime payment but violated the requirements for this method of payment. [2] Third, Plaintiffs allege Defendant required servers to perform non-server duties but **[*3]** failed to pay the corresponding non-server rate.

### FOOTNOTES

2 *See* 29 C.F.R. § 778.114.

Plaintiffs seek approval of the Court to send a notice to all "similarly situated" individuals in accordance with section 16(b) of the FLSA, 29 U.S.C. § 216(b). Plaintiffs indicate that the class should include "all present and former employees of Shoney's Inc. who were paid on an hourly basis or under a fluctuating pay plan and who were employed at a Shoney's Inc. /TPI, Inc. restaurant at any time within the three year period preceding the filing of the Complaint." (Doc. No. 9 at 4, filed June 5, 1998). After consideration of the motion and Defendant's response, the Court denies the motion.

*HN1*  Section 16(b) of the FLSA provides that a collective action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). *HN2* The Court has the discretion to authorize notice to potential class members under the FLSA. *See* **[*4]** *Dybach v. State of*

Get a Document - by Citation - 5 Wage & Hour Cas. 2d (BNA) 127
Page 4 of 5
Case 4:11-cv-01235 Document 28-7 Filed in TXSD on 01/17/12 Page 18 of 93

*Florida Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991).

Before authorizing such notice, the Court must determine whether other employees exist who are "similarly situated" with respect to job requirements and pay provisions. *See id.* at 1567-68. In determining whether potential class members are similarly situated, the Eleventh Circuit does not require a showing that potential class members were together the victims of a single decision, policy, or plan. *See Grayson*, 79 F.3d 1086 at 1095 (interpreting § 216(b) in an age discrimination case). However, such a showing is probative in determining whether potential class members are similarly situated. *See e.g. Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 406 (D.N.J.), *aff'd in relevant part*, 862 F.2d 439 (3d Cir. 1988), *aff'd*, 493 U.S. 165 (1989); *see Brooks v. Bellsouth Telecomms. Inc.*, 164 F.R.D. 561, 566-67 (N.D. Ala. 1995), *aff'd*, 114 F.3d 1202 (11th Cir. 1997).

*HN3* Before the Court authorizes notice, Plaintiffs must also demonstrate that aggrieved individuals exist within the broad class they propose. *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 888 (11th Cir. 1983). In *Haynes*, **[*5]** the Eleventh Circuit held that notice should not have been authorized where the judge was only presented counsel's unsupported assertions that FLSA violations were widespread. *See id.*

Plaintiffs assert that the allegations in their Complaint are sufficient to demonstrate the existence of other potential class members who are similarly situated. This assertion is a misstatement and misunderstanding of the law. ³ The Eleventh Circuit has clearly indicated that Plaintiffs must provide evidence to support their allegations. *See id. HN4* Plaintiffs may meet this burden by making substantial detailed allegations of class-wide violations of the FLSA supported by affidavits. *See generally Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097-99 (11th Cir. 1996) (finding court authorized notice proper under 29 U.S.C. § 216(b) in an age discrimination case where plaintiffs provided affidavits containing statistics and company executive statements that supported the allegations that the potential class members were "similarly situated").

### FOOTNOTES

3 This argument calls into question whether Plaintiffs and their counsel are suitable representatives for their potential class.

**[*6]** In this case, Plaintiffs propose a class that includes all employees and former employees of Shoney's Inc./TPI, Inc.. This would include employees at approximately 175 Shoney's concept restaurants in eleven states that were under separate franchise agreements. (Doc. 29, filed September 4, 1998). In support of their motion, Plaintiffs have provided five affidavits that are almost identical to each other. (Doc. No. 18, Doc. No. 19, Doc. No. 20, Doc. No. 21, Doc. No. 22). The affidavits are limited to employees who work or have worked at Shoney's restaurants in Orange County, Florida. ⁴ *Id.* Plaintiffs have not provided any evidence that employees in restaurants outside of Orange County are similarly situated to Plaintiffs. Plaintiffs also have not provided evidence, other than general statements within their own affidavits, that FLSA violations have occurred to employees at restaurants outside Orange County. Further, Plaintiffs have not shown that potential class members were together the victims of a single decision, policy, or plan.

### FOOTNOTES

4 Defendants note that the affidavits are also substantially similar to affidavits filed in a different case against Shoney's in Nashville, Tennessee. (Doc. 28, Exh. 3, filed September 4, 1998).

[*7]  Based on the foregoing, the Court denies Plaintiffs' motion. Plaintiffs have failed to provide evidence, as they are required to do, that aggrieved individuals exist within the broad class they propose. *See Haynes*, 696 F.2d at 888. Plaintiffs also have failed to make the required showing that the potential class members are similarly situated to each other. *See Dybach*, 942 F.2d at 1567-68.

## CONCLUSION

Accordingly, Plaintiffs' Motion for Expedited Court Supervised Notice (Doc No. 9, filed June 5, 1998) is **DENIED**.

**DONE AND ORDERED** at Orlando, Florida this, *3rd* day of December, 1998.

PATRICIA C. FAWSETT

UNITED STATES DISTRICT JUDGE

Service:  **Get by LEXSEE®**
Citation:  **1998 U.S. DIST. LEXIS 21484**
View:  Full
Date/Time:  Tuesday, January 17, 2012 - 4:42 PM EST

* Signal Legend:
- Warning: Negative treatment is indicated
- **Q** - Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- **A** - Citing Refs. With Analysis Available
- **I** - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

In    About LexisNexis  | Privacy Policy  | Terms & Conditions  | Contact Us
Copyright © 2012 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Switch Client | Preferences | Help | Sign Out

| **My Lexis**™ | **Search** | **Get a Document** | **Shepard's**® | **More** | **History** |
|---|---|---|---|---|---|
| | | | | | **Alerts** |

FOCUS™ Terms                    Search Within  Original Results (1 - 100)   ▾   🔲   View Tutorial
Advanced...

Source:  **Legal > Federal Legal - U.S. > Find Cases > Federal Courts by Circuit > 5th Circuit – US Court of Appeals, District & Bankruptcy Cases, Combined** ⓘ
Terms:  **chilsom gravitas glass breakage**  (Suggest Terms for My Search)

☑Select for FOCUS™ or Delivery
☐

*2008 U.S. Dist. LEXIS 28254, \**

⬇ View Available Briefs and Other Documents Related to this Case

DAVID CHISOLM, et al., Plaintiffs, vs. **GRAVITAS** RESTAURANT LTD., et al., Defendants.

Civil Action No. H-07-475

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

2008 U.S. Dist. LEXIS 28254

March 25, 2008, Decided

**CORE TERMS:** tip, summary judgment, minimum wage, glass-breakage, restaurant, staff, wait, server's, declaration, pool, liquidated damages, per hour, breakage, glass, lodging, stemware, wine, expensive, deducted, tipped, material fact, genuine, unpaid, matter of law, attorney's fees, burden of proving, equal amount, pertinent part, good faith, written objections

⬆**Available Briefs and Other Documents Related to this Case:**

U.S. District Court Motion(s)
U.S. District Court Pleading(s)
Miscellaneous Expert Witness Filing(s)

**COUNSEL:  [\*1]** For David Chisolm, Plaintiff: Michael Kevin Burke ▾, LEAD ATTORNEY, Richard J Burch ▾, Bruckner Burch PLLC, Houston, TX; Robert R Debes, Jr ▾☑, LEAD ATTORNEY, Debes Law Firm, Houston, TX.

For **Gravitas** Restaurant Ltd., **Gravitas** Management Services LLC, Felix Flores, Defendants: Arthur S Feldman ▾☑, LEAD ATTORNEY, Attorney at Law, Houston, TX; Tracy A Phillips, Stanley Phillips LLP, Houston, TX.

**JUDGES:** Nancy K. Johnson ▾, United States Magistrate Judge.

**OPINION BY:** Nancy K. Johnson ▾



EXHIBIT

D

**OPINION**

**OPINION**

**MEMORANDUM AND RECOMMENDATION**

Presently pending before the court are the following motions: Defendants' Motion for Summary Judgment (Docket Entry No. 38); and Plaintiffs' Motion for Partial Summary Judgment (Docket Entry No. 40). For the reasons explained below, it is **RECOMMENDED** that Plaintiffs' motion be **GRANTED** and that Defendants' motion be **DENIED.**

**I. Case Background**

This is a collective action brought against **Gravitas** Restaurant, Ltd., and **Gravitas** Management Services, LLC, ("**Gravitas**" or "Defendants") for alleged violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. Plaintiffs allege that Defendants have violated the FLSA's minimum wage provision by failing to adhere to the "tip credit" requirements of 29 U.S.C. § 203(m) **[*2]** and, as a result, Plaintiffs are entitled to unpaid minimum wages, liquidated damages, attorney's fees and costs.

The facts are largely undisputed. **Gravitas,** a restaurant, pays its wait staff $ 2.13 per hour and relies on customer tips to make up the difference between the $ 2.13 and the minimum federal wage. ¹ **Gravitas** requires each waiter to contribute a portion of his or her tips to a tip pool which is distributed among other restaurant staff who customarily received tips. ² The wait staff is also required to contribute one dollar per shift to a **glass-breakage** fund because **Gravitas** uses expensive stemware with wine service.

**FOOTNOTES**

1 The federal minimum wage was $ 5.15 an hour from September 1, 1997, to August 25, 2007. 29 U.S.C. § 206(a)(1). Because the parties have made their arguments assuming a minimum wage of $ 5.15 per hour, the court will do the same. The new minimum wage does not affect the court's analysis.

2 According to Defendant, the wait staff was required to tip four per cent of their food sales, and either three or five per cent of their wine sales depending on whether the sommelier was on duty during the shift. Defendant's Motion for Summary Judgment, Docket Entry No. 38, Exhibit **[*3]** A, Declaration of Scott Tycer, P 11. The tip pool is no longer an issue in this suit.

Plaintiffs have moved for summary judgment, seeking related findings as a matter of law that **Gravitas:** (1) pays its servers less than minimum wage; (2) is not entitled to claim a "tip credit" under the FLSA; and (3) does not permit its servers to retain all their tips because servers must pay into the **glass-breakage** fund.

**Gravitas** has moved for summary judgment on the grounds that: (1) its tip pool is compliant with the FLSA and therefore it is entitled to a "tip credit;" (2) the **glass-breakage** fund is a "facility" provided to the employee and thus a proper deduction from employee wages; and (3) even if the **glass-breakage** fund is not a facility, the court should not deny **Gravitas** its "tip credit" because the wait staff actually earns more than the minimum wage.

**II. Summary Judgment Standard**

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Brown v. City of Houston, 337 F.3d 539, 540-41 (5th Cir. 2003). **[*4]** A material

fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment. Celotex Corp., 477 U.S. at 322. In response to a showing of lack of evidence, the party opposing summary judgment must go beyond **[*5]** the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial. Id. at 324.

When considering the evidence, "[ d] oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the **[*6]** nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III. Analysis

In the present case, there is no dispute that Plaintiffs must be paid at least the minimum wage and, because they routinely earn more than thirty dollars in tips each month, they are considered tipped employees under the FSLA. 29 U.S.C. § 203(t). As "tipped employees," Plaintiffs must be paid (1) an amount equal to the cash wage paid to tipped employees on August 20, 1996, which the parties agree is $ 2.13 per hour, [3] and (2) an additional amount of tips received by the employee equal to the difference between $ 2.13 and the minimum wage. 29 U.S.C. § 203(m). In other words, the employer may take credit for an employee's tips to make up the difference between the cash wage of $ 2.13 it pays and the minimum wage it owes its wait staff.

### FOOTNOTES

[3] On August 20, 1996, the minimum wage was $ 4.25 per hour. The applicable tip credit available at that time was no more than one half of the minimum wage. See Small Business Job Protection Act of 1996, Pub. L. 104-188, 110 Stat. 1755, 1928-29 (1996).

This **[*7]** tip credit is not automatic. An employer may only take the tip credit if it: (1) pays a cash wage of at least $ 2.13 per hour; (2) informs its employees of the FLSA's tip credit provisions; (3) permits its employees to retain all their tips; [4] and (4) ensures that the cash

wage plus the tip credit equal at least the minimum wage each week. 29 U.S.C. § 203(m).

**FOOTNOTES**

4 An employer may institute a "tip pool" to distribute tips among employees who customarily and regularly receive tips without violating this provision. 29 U.S.C. § 203(m). Plaintiffs have withdrawn their objection to the **Gravitas** tip pool arrangement. See Unopposed Motion to Withdraw One of Plaintiffs' Claims with Prejudice to Refiling, Docket Entry No. 52, and Order, Docket Entry No. 53.

**Gravitas,** as the employer, bears the burden of proving its entitlement to a tip credit. Barcellona v. Tiffany English Pub, Inc., 597 F.2d 464, 467 (5th Cir. 1979)("On May 1, 1974, the Act was amended to place the burden of proving the amount of tips received on the employer for purposes of allowing the fifty percent tip credit."). Plaintiff has moved for summary judgment, arguing that **Gravitas** has not met its burden of proving compliance with 29 U.S.C. § 203(m), **[*8]** that is, that Plaintiffs received a direct wage of at least $ 2.13 per hour and retained all their tips despite the one-dollar per shift fee assessed by **Gravitas** for **glass breakage**.

In their response to Defendants' Reply to Plaintiff's Response to **Gravitas'** Motion for Summary Judgment, 5 Plaintiffs additionally argue that there is no evidence that **Gravitas** informed them of the provisions of the FLSA's tip credit provisions, a finding that would also negate **Gravitas'** ability to take a tip credit. 6 Countering that salvo, Defendants submitted the declaration of Scott Tycer who averred that each server was informed of the provisions of 29 U.S.C. § 203 (m), that servers would be paid $ 2.13 per hour, keep all tips except for deductions for the tip pool and have one dollar deducted from their pay for **glass breakage**. 7 Plaintiffs have failed to counter this summary judgment evidence. Accordingly, it stands unrebutted that Plaintiffs were notified of the provisions of 29 U.S.C. § 203(m).

**FOOTNOTES**

5 Docket Entry No. 48.

6 Plaintiffs' Reply in Support of Partial Summary Judgment and Sur-reply to **Gravitas'** Motion for Summary Judgment, Docket Entry No. 49, p. 3.

7 Defendants' Sur-Reply to Plaintiff's Response **[*9]** to **Gravitas'** Motion for Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment, Docket Entry No. 50, Affidavit of Scott Tycer.

The court must next address whether the one-dollar deduction for **glass breakage** from Plaintiffs' wages violates the FLSA. Plaintiffs argue that whether the one-dollar **glass-breakage** fee is considered to be deducted from the "cash wage" portion of their pay or the "tip credit" portion of their pay, it nonetheless violates the FLSA. In response, Defendants submit the declaration of Tycer to support their position that the **breakage** fee is only deducted from the cash wages, not tips. There, Tycer states, "This amount [the **breakage** fee] did not come from the amounts deducted for the tip pool, but rather was in addition to the amounts distributed among the employees. In other words, the **glass** charge would apply even if a wait person received no tips during their [sic] shift." 8 In contrast, Plaintiff submits a "Server Tip Out Structure" document that **Gravitas** used to explain how a server must calculate his or her tip pool contribution. 9 That document instructs the servers to deduct the **glass-breakage** fee "from your tips." 10 Plaintiffs also point out **[*10]** that the payroll records of Plaintiff David Chisolm, attached to Defendants' motion for summary judgment, do not show any deduction for **glass breakage** from the cash wages paid, raising the inference that the **glass-breakage** fee

must have been paid out of tips. [11] Although these conflicting interpretations appear to raise a fact issue, it is not a material one. [12] The real issue is whether the **glass-breakage** fee is a facility that may be considered as part of a server's wages under 29 U.S.C. § 203(m). [13]

## FOOTNOTES

[8] Defendants' Motion for Summary Judgment, Docket Entry No. 38, Declaration of Scott Tycer, P 11.

[9] It should be noted that although Defendants initially objected to this document as "unverified hearsay," Defendants' Reply to Plaintiffs' Response to **Gravitas'** Motion for Summary Judgment, Docket Entry No. 48, p. 2, Defendants later argued that this same document was proof that Plaintiffs had notice of the tip pool provisions of the FLSA. See Defendants' Sur-Reply to Plaintiffs' Response to **Gravitas'** Motion for Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment, Docket Entry No. 50, p. 2. The court assumes that Defendants no longer object to the court's consideration of **[*11]** this document.

[10] Plaintiffs' Response to Defendants' Motion for Summary Judgment Docket Entry No. 42, Ex. A, Server Tip Out Structure. If a finder of fact concluded that the **glass-breakage** fee was deducted from tips, it would violate 29 U.S.C. § 203(m)'s requirement that a tipped employee retain all tips except for a qualified tip pooling arrangement.

[11] Defendants' Motion for Summary Judgment, Docket Entry No. 38, Ex. 2, Payroll Records of David Chisolm.

[12] Defendants appear to make the alternative argument that, because Plaintiffs earned more than the minimum wage, the **glass breakage** fee could be paid from tips in excess of the minimum wage. This is incorrect because the FLSA requires that a tipped employee must be permitted to retain all tips and the maximum tip credit is $ 3.02. Chung v. New Silver Palace Restaurant, Inc., 246 F. Supp.2d 220, 228 (S.D.N.Y 2002). This is true "no matter how much the employee may earn in tips." Id. See also Department of Labor Opinion Letter FLSA2006-21, 2006 WL 1910966 (June 9, 2006)("Thus, even if tips actually received exceed the maximum tip credit the employer needs to count toward payment of the minimum wage, these excess tips are not deemed to be **[*12]** wages for purposes of the FLSA.") Therefore, the court only looks at the $ 2.13 paid as cash wages and the first $ 3.02 earned as a tip credit to determine if the FLSA requirements are met.

[13] If a "facility" is considered as part of an employee's wage, an employer may take credit for that benefit as an offset to paying the minimum wage.

Under the FLSA, an employer may count the "reasonable cost . . . to the employer of furnishing [an] employee with board, lodging, or other facilities. . . ." 29 U.S.C. § 203(m). In Shultz v. Hinojosa, 432 F.2d 259, 267 (5th Cir. 1970), the court interpreted "other facilities" to be *in pari materia* with the preceding words "board and lodging." This has been interpreted as requiring that the "facility" be primarily for the benefit of the employee, rather than the employer. Brennan v. Modern Chevrolet Co., 363 F. Supp. 327, 333 (N.D. Tex. 1973), aff'd 491 F.2d 1271 (5th Cir. 1974).

Although not dispositive of the issue, the regulations promulgated by the Department of Labor state that "'other facilities' as used in this section, must be something like board or lodging." 29 C.F.R. § 531.32(a). Examples cited by the regulation as within the meaning of the **[*13]** term were: meals furnished at company restaurants or cafeterias, or by hospitals, hotels or restaurants to their employees, dormitory rooms or other housing furnished for dwelling purposes, general merchandise furnished at company stores, fuel, electricity, and

Search - 100 Results - chilson gravitas glass breakage
Case 4:11-cv-01293 Document 28-7 Filed in TXSD on 01/17/12 Page 25 of 93
Page 6 of 8

transportation under some circumstances.

Here, Defendants cite the declaration of Tycer who asserts that **Gravitas** "furnishes the stemware for use by the wait staff in performing their jobs." [14] He goes on to state that, "stemware is a direct benefit to the wait staff," explaining that because the "premium stemware enhances the [customer's] enjoyment of the wine . . . the customer will purchase a more expensive bottles [sic] of wine, leading to higher sales for the restaurant and higher tips for the wait staff." Defendants concede that the **glass-breakage** fee is not in the nature of board and lodging and is otherwise not consistent with the applicable regulations but nonetheless urge the court to find that it is a "facility" that benefits the employee based on Tycer's opinion.

#### FOOTNOTES

[14] Defendants' Motion for Summary Judgment, Docket Entry No. 38, Declaration of Scott Tycer, pp. 4-5.

Plaintiffs do not contest any portion of Tycer's declaration [*14] with their own sworn declarations, but argue that **glasses**, dishes and utensils are "tools of the trade" for any restaurant and not a "facility" which may be credited against an employee's wages. They further contend that the **glass-breakage** fee impermissibly shifts the restaurant's cost of doing business to the wait staff and that **Gravitas** admits that use of the expensive stemware results in higher wine sales to the restaurant, making any benefit to the wait staff via higher tips speculative and incidental. The court agrees with Plaintiffs.

Although Tycer's declaration is essentially unrebutted in the record, it does not, as a matter of law, raise a fact issue that the **glass-breakage** fee is a facility akin to board or lodging for which **Gravitas** may get credit against its obligation to pay the minimum wage. The Fifth Circuit law requires that the statutory words "other facilities" must be in the nature of board and lodging to qualify as a part of an employee's wages. Shultz, 432 F.2d at 267. Likewise, the regulations provide no support for Defendants' position that a **glass-breakage** fee is for the benefit of employees. [15] Expensive stemware provided by a restaurant for the purpose of [*15] stimulating sales of expensive bottles of wine first and foremost benefits the restaurant in terms of both revenue and cache. It is a choice made by the restaurant owners, not the wait staff, and the restaurant should bear the burden of the costs associated with its choice. The court finds that the **glass-breakage** fee is not a facility furnished for the benefit of its wait staff, was not a proper credit against wages under 29 U.S.C. § 203(m) and its deduction brought Plaintiffs' wages below the minimum wage.

#### FOOTNOTES

[15] For example, 29 C.F.R. § 531.32(c) states, in pertinent part, "It should be noted that under [29 C.F.R.] § 531.3(d)(1), the costs of furnishing "facilities" which are primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages." 29 C.F.R. § 531.3(d)(1) considers that "tools of the trade" and other materials or services incidental to carrying on the employer's business to be primarily for the benefit of the employer, not the employee.

The FLSA provides that an employer who violates its minimum wage provisions be liable in the full amount of the minimum wage and an additional equal amount as liquidated [*16] damages, plus attorney's fees. Singer v. City of Waco, 324 F.3d 813, 822 (5th Cir. 2003); 29 U.S.C. § 216(b). [16] Here, because Defendants have paid only $ 2.13 of the $ 5.15 minimum wage, they owe $ 3.02 per hour for all hours worked by Plaintiffs when the **glass-breakage** fee was imposed and liquidated damages in an equal amount.

**FOOTNOTES**

16 In Alden v. Maine, 527 U.S. 706, 712, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999), the Supreme Court held Section 216(b) unconstitutional insofar as it authorized a state to be sued by a state employee. That holding is not applicable here.

29 U.S.C. § 216(b) states in pertinent part:

> Any employer who violates section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

Defendants argue that if the court finds that the **glass breakage** fee is not a facility under 29 U.S.C. § 203(m), **Gravitas** should only be ordered to repay the **glass-breakage** fee and not the balance of the minimum wage owed because Plaintiffs actually earned more than the minimum wage. The court can decline to impose liquidated damages, or reduce **[\*17]** the amount, if it concludes that **Gravitas** acted in "good faith" and had "reasonable grounds" to believe that its actions complied with the FLSA. 29 U.S.C. § 260. 17 An employer faces "a 'substantial burden' of demonstrating good faith and reasonable belief that its actions did not violate the FLSA." Bernard v. IBP, Inc., of Neb., 154 F.3d 259, 267 (5th Cir. 1998)(quoting Mireles v. Frio Foods, Inc., 899 F.2d 1407, 1415 (5th Cir. 1990)).

**FOOTNOTES**

17 29 U.S.C. § 260 states in pertinent part:

> In any action commenced . . . after May 14, 1947, to recover unpaid minimum wages . . . or liquidated damages under the [FSLA], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

In the present case, **Gravitas** has not offered any evidence supporting its good faith belief that a **glass-breakage** fee could be imposed as an "other facility" under 29 U.S.C. § 203(m), and, in light of **[\*18]** case law interpreting "other facilities" to mean items similar in nature to board and lodging, the court doubts such evidence could be proffered. 18 Additionally, there has been no suggestion that **Gravitas** was relying on advice of counsel or that imposition of such a fee is a common practice in the industry. Absent such evidence, the Plaintiffs are statutorily entitled to the full minimum wage, liquidated damages, plus attorney's fees. Although the penalty **Gravitas** must pay is heavy compared to the loss suffered by Plaintiffs, **Gravitas** made a conscious decision to shift one of its costs of doing business to its servers. **Gravitas** chose this course and now it must pay the statutory penalty.

**FOOTNOTES**

18 If **Gravitas** has such evidence, it may submit it for the court's consideration in a timely-

filed objection to this Memorandum and Recommendation.

## IV. Conclusion

It is therefore **RECOMMENDED** that Defendants' Motion for Summary Judgment be **DENIED** and that Plaintiffs' Motion for Partial Summary Judgment be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have ten days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) **[*19]** and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 25th day of March, 2008.

/s/ Nancy K. Johnson

Nancy K. Johnson

United States Magistrate Judge

> Source:  **Legal > Federal Legal - U.S. > Find Cases > Federal Courts by Circuit > 5th Circuit - US Court of Appeals, District & Bankruptcy Cases, Combined** ⓘ
> Terms:  **chilsom gravitas glass breakage** (Suggest Terms for My Search)
> View:  Full
> Date/Time:  Tuesday, January 17, 2012 - 1:15 PM EST

* Signal Legend:
- ◉ - Warning: Negative treatment is indicated
- 🅠 - Questioned: Validity questioned by citing refs
- ⚠ - Caution: Possible negative treatment
- ◈ - Positive treatment is indicated
- Ⓐ - Citing Refs. With Analysis Available
- ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

In

About LexisNexis  | Privacy Policy  | Terms & Conditions  | Contact Us
Copyright © 2012 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

United States District Court
Southern District of Texas
ENTERED

MAY 1 9 1997

Michael N. Milby
Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

United States District Court
Southern District of Texas
FILED

MAY 1 6 1997

Michael N. Milby, Clerk

IMELDA Y COREAS, LUIS ALONZO   §
GARCIA, ANA DILA GARCIA, JOSE   §
DEMITRIO PUENTE, INOCENCIA   §
PUENTE. MARIA DE LA PAZ MEDINA   §
MIREYA GONZALES, YOLANDA   §
VALLEJO PAULINA RIVERA, AND   §
EZEQUIEL A. HERNANDEZ, ON   §
BEHALF OF THEMSELVES AND ALL   §
OTHER SIMILARLY SITUATED   §
EMPLOYEES,   §
  §
       Plaintiffs,   §
  §
V.   §     CIVIL ACTION NO. L-97-30
  §
C & S RANCH, BRAD SCHWARTZ AND   §
BENNY CHERRY,   §
  §
       Defendants.   §

## MEMORANDUM AND ORDER

Pending is Plaintiffs' Motion for Court Order Authorizing FLSA Action and Notice of FLSA

Collective Action to All Similarly Situated Employees of C & S Ranch. The pending action was filed

with this Court on March 7, 1997.

Plaintiffs in this case claim that Defendants Schwartz, Cherry, and the business partnership of C

& S Ranch failed to pay Plaintiffs certain minimum and/or overtime wages arising from their employment

with C & S Ranch during 1994, 1995 and/or 1996. Plaintiffs bring this action on behalf of themselves

and all other employees similarly situated pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards

Act ("FLSA"). Section 216(b) of the FLSA authorizes a plaintiff seeking relief to bring a "collective

action" on behalf "of himself or themselves and other employees similarly situated." See 29 U.S.C. §

216(b).



EXHIBIT
E

Plaintiffs seek authorization to permit this case to proceed as an opt-in collective action pursuant to section 216(b), which allows similarly situated employees to become party plaintiffs by filing a written consent with the clerk where the complaint is filed. The 5th Circuit has not specifically addressed the meaning of "similarly situated," but  in Mooney v. Aramco Services Co. et al., 54 F.3d 1207 (5th Cir. 1995), the court reviewed two methodologies employed by courts in deciding this question.[1] The first methodology, the "two-stage class certification," was set forth in Lusardi v. Xerox Corporation, 118 F.R.D. 351 (D.N.J. 1987). The first step is the "notice stage" and the second step is the post-discovery stage. Id. "At the notice stage, the district court makes a decision--usually based only on the pleadings and any affidavits which have been submitted--whether notice of the action should be given to potential class members." Mooney, 54 F.3d at 1213-1214. This is a "fairly lenient standard," and typically results in a "conditional certification" of a representative class. Id. at 1214. The second stage is typically precipitated by a motion for "decertification" filed by the defendant after discovery is largely complete. Id. If the additional claimants are found to be similarly situated, the district court allows the representative action to proceed. Id. If, however, the additional claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. Id.

The second methodology, the "spurious class action," was described in Shushan v. University of Colorado, 132 F.R.D. 263 (D.Colo.1990). Shushan stands for the proposition that § 16(b) of the FLSA merely breathes new life into the "spurious" class action procedure previously eliminated from Fed.R.Civ.P. 23. Id. The court in Shushan determined that Congress did not intend to create a completely separate cause of action for the FLSA context, but merely desired to limit the availability of Rule 23 class action relief under the act. Id. Under this approach the "similarly situated" inquiry would

---

[1] Mooney was a litigation under ADEA, but that statute explicitly incorporates § 16(b) of the FLSA. Mooney, 54 F.3d at 1212.

2

be coextensive with Rule 23 class certification and the court would look to "commonality," "typically" and "adequacy of representation" to determine whether a class should be certified. Id.

The 5th Circuit in Mooney ultimately found it unnecessary to decide which approach was appropriate. However, in an earlier case, LaChapelle v. Owens-Illinois, Inc., 513 F.2d 286, 288 (5th Cir. 1975), the court found "a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for FLSA's Rule 16(b)." The LaChapelle court held that "these two types of class actions are mutually exclusive and irreconcilable," because Rule 23 provides for "opt out" class actions and FLSA's 16(b) allows as class members only those who "opt in." Id. at 289. LaChapelle continued that "it is crystal clear that § 16(b) precludes pure Rule 23 class actions in FLSA suits." Id. at 288. Accordingly, this Court concludes that the Lusardi method is more appropriate in this case.

In the present action, the Plaintiffs have made a minimum preliminary showing under Lusardi that there are other "similarly situated" individuals. Plaintiffs have submitted the affidavit of Ms. Imelda Coreas stating that she was employed by C & S Ranch as a minimum hourly wage worker for various weeks in 1993, 1994, 1995 and 1996.[2] Ms. Coreas states that she and other similarly situated employees worked more than 40 hours a week but were not paid overtime wages for those weeks. Furthermore, Ms. Coreas states that it was C & S Ranch's policy and/or practice not to pay the packing shed workers for all the hours they waited at work even though they could not use such waiting time effectively for their own purposes. Ms. Coreas claims that there were between 40 and 50 workers who were similarly subjected to C & S Ranch's wage and hour policies and or practices  between the years of 1993 and

---

[2]Defendants challenge the accuracy of all Ms. Coreas' statements in her affidavit. In Defendants' response to the pending motion, Defendants claim that their records indicate that Ms. Coreas only worked for C & S Ranch for two weeks during the fall 1993 season. Ms. Coreas' testimony is verified by oath, while Defendants' contrary assertion is not. The Court shall therefore accept the Coreas testimony.

3

1996. Because the same workers did not work during each packing season, she concludes that there are probably over 200 similarly situated workers.

In light of the forgoing, Plaintiffs' motion for this case to proceed as a FLSA collective action under 29 U.S.C. § 216(b) is GRANTED. Defendants make no objection to Plaintiffs' proposed Notice of the FLSA collective action attached as Exhibit "B" or Plaintiff's "Consent To Be Party Plaintiff" attached as Exhibit "C" (Dckt. No. 2). Both forms are APPROVED. The Plaintiffs are authorized to deliver said Notice to all similarly situated employees of C & S Ranch, and to publish said Notice in generally circulating English and Spanish language newspapers and other print media in the Laredo, Texas area. C & S Ranch shall provide to Plaintiffs' counsel, within 30 days of the filing of this Order, the complete names and last known mailing addresses of its past and present hourly wage employees who fall into the definition of "similarly situated employees" as set forth in Plaintiffs' motion. Those individuals may opt into this action by filing the "Consent to Be Party Plaintiff" within 120 days from the date of this Memorandum and Order.

DONE in Laredo, Texas, this 16th day of May, 1997.

George P. Kazen
CHIEF UNITED STATES DISTRICT JUDGE

4

Switch Client | Preferences | Help | Sign Out

| My Lexis™ | Search | Get a Document | Shepard's® | More | History |
|-----------|--------|----------------|-----------|------|---------|
|           |        |                |           |      | Alerts  |

FOCUS™ Terms _____ Advanced... **Get a Document** _____ View Tutorial

Service: **Get by LEXSEE®**
Citation: **2000 U.S. DIST. LEXIS 22804**

*2000 U.S. Dist. LEXIS 22804, ***

JOHANNA GARDNER, Individually and on behalf of the similarly situated employees and former employees, Plaintiff vs. ASSOCIATES COMMERCIAL CORPORATION AND ASSOCIATES CORPORATION OF NORTH AMERICA (A Texas Corporation), Defendants

CIVIL ACTION NO. H-00-3889

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

2000 U.S. Dist. LEXIS 22804

December 19, 2000, Decided
December 19, 2000, Filed; December 20, 2000, Entered

**CORE TERMS:** notice, similarly situated, discovery, expedited, opt-in, opt, commercial loan, collective action, class action, appeal dismissed, putative, discovery requests, branch offices, fishing expedition, representative action, sub nom, naturally, overtime, issuance, complain, certify, exact

**COUNSEL: [*1]** For Johanna Gardner, individually and on behalf of other similarly situated employees and former employees, Enrique nmi Vasquez, Andrew E Zelman, Brad L Kerr, Rosemarie Bosca, Janelle Carvalho, Kim A Young, Tracy Turnipseed, Scott T Johnson, Lelio Montagnoli, Plaintiffs: G Scott Fiddler, Attorney at Law, Houston, TX.

Enrique nmi Vasquez, Plaintiff, Pro se, Vancouver, WA.

Andrew E Zelman, Plaintiff, Pro se, Framingham, MA.

Brad L Kerr, Plaintiff, Pro se, Midvale, Ut.

Rosemarie Bosca, Plaintiff, Pro se, Elizabeth, CO.

Janelle Carvalho, Plaintiff, Pro se, San Lorenzo, CA.

Kim A Young, Plaintiff, Pro se, Peoria Heights, IL.

Tracy Turnipseed, Plaintiff, Pro se, Stone Mountain, GA.

Scott T Johnson, Plaintiff, Pro se, Irving, TX.



Get a Document - by Citation - 2000 U.S. Dist. LEXIS 22804

Case 4:11-cv-01235 Document 28-7 Filed in TXSD on 01/17/12 Page 33 of 93

Page 2 of 5

Lelio Montagnoli, Plaintiff, Pro se, Portland, OR.

For Associates Commercial Corporation, Associates Corporation of North America, (A Texas Corporation), Defendants: Ronald E Manthey, Baker & McKenzie LLP, Dallas, TX.

**JUDGES:** MELINDA HARMON, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** MELINDA HARMON

### OPINION

#### *ORDER*

Pending before the Court in the above referenced proposed collective action under section 216 (b) ¹ of the Fair **[*2]** Labor Standards Act ("FSLA"), 29 U.S.C. §§ 201 *et seq.,* seeking recovery of overtime pay for nonexempt commercial loan officers employed by Defendants Associates Commercial Corporation ("ACC") and Associates Corporation of North America ("ACONA") from November 1, 1997 to the present, is Plaintiff Johanna Gardner's opposed expedited motion for notice to potential plaintiffs and limited expedited discovery (instrument # 9).

#### FOOTNOTES

1 In contrast to a class action under Federal Rule of Civil Procedure 23(c), section 216(b) of FLSA provides similarly situated employees with an opt-in, rather than an opt-out procedure. *H&R Block, Ltd. v. Housden,* 186 F.R.D. 399, 399 (E.D. Tex. 1999). Most courts nevertheless employ class action terminology in dealing with such cases. *Mooney v. ARAMCO Services Co.,* 54 F.3d 1207, 1212 (5th Cir. 1995).

Section 216(b), which is also incorporated into the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626(b), provides in relevant part that an individual may maintain an action "against any employer (including a public agency) in Federal or State court of competent jurisdiction... for and in behalf of himself... and other employees similarly situated. No employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

**[*3]** Plaintiff claims that she needs expedited discovery of names and addresses of individuals who worked as commercial loan officers for ACC nationwide during the applicable period so they can decide whether to "opt in" to this suit, because under FSLA, the applicable statute of limitations is two years, or three if the violation is shown to be "willful, and there is no "relating back" or tolling of limitations for opting-in plaintiffs. Thus each passing day diminishes the amount of overtime wages potential plaintiffs can recover, while the claims of others may be barred completely. She relies on *Hoffman La Roche, Inc. v. Sperling,* 493 U.S. 165, 169-70, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989) (affirming district court order requiring employer company to provide names and addresses of discharged employees to facilitate discovery and notice process and authorizing a notice and consent document, with a text and form authorized by the district court, where the district court took no position on the merits of the case, to be sent to those who had not joined the lawsuit to facilitate notice to proper persons and expedite disposition of the suit). Plaintiff states that she expects to provide notice to between **[*4]** thirty and forty people because ACC had approximately thirty branch offices throughout the country at the time and each had at least one commercial loan officer. She suggests that identification of these individuals (including name, last known address and telephone number,

social security number, and date of birth) should not be difficult and that "such plaintiffs will naturally be 'similarly situated' for purposes of Section 216(b)." She attaches a list of twenty-seven such individuals whom she has already identified. Ex. B. She also provides a proposed notice, neutral as to the merits of the case, allowing potential plaintiffs the right to choose their own lawyers, and "an almost exact duplication of the notice approved by the district court in [Johnson v.] American Airlines, Inc." 531 F. Supp. 957, 966 (N.D. Tex. 1982). Specifically she requests Defendants to provide the discovery listed in Exhibit C in five days from entry of a court order granting the motion and authorization for issuance of the proposed notice within ten days to those persons identified in Exhibit B, and subsequently to those identified by Defendants in response to the discovery requests. She further **[*5]** asks that the potential plaintiffs be given forty-five days from the date of the mailing of the notices to opt in to the collective action.

Defendants object to expedited relief because under Local Rule 6D they are entitled to twenty days to respond before the motions is submitted to the Court. [2] They further complain that Plaintiff has failed to meet standards for class notice and her explanation of time pressures is inadequate because her suit does not keep the potential plaintiffs from filing their own wage-and-hour suits at any time. Reduced time also allegedly prejudices Defendants' opportunity to investigate for the full twenty days the factual claims and legal principles raised by Plaintiff's motion. Moreover, Defendants complain of Plaintiff's conclusory statement that she believes other employees holding the same job "will naturally be 'similarly situated' for purposes of Section 216(b)." She presents no evidence, but only "sheer speculation." While conceding that a district court has the discretion to facilitate notice to possible opt-in plaintiffs as long as it remains neutral on the merits and avoids any appearance of judicial endorsement of the Plaintiff's suit, Defendants **[*6]** argue that the court must first "satisfy itself that there are other employees of the [employer] who desire to opt-in and who are 'similarly situated'" in their job requirements and pay provisions. Dybach v. Florida Dep't of Corrections, 942 F.2d 1562, 1567 (11th Cir. 1991). Defendants maintain that Plaintiff's request would merely burden them with the expense of a frivolous fishing expedition.

## FOOTNOTES

[2] Since Defendants have responded within six days of the filing of the motion, this objection lacks merit. If a response is filed before the submission date, the Court may rule on it immediately.

The Fifth Circuit has approved two different procedures for certifying "similarly situated" individuals for a class. Mooney, 54 F.3d at 1213. Under the first, [3] there is a two-step analysis. At the notice stage, the district court decides, usually based on the pleadings and any affidavits that have been submitted, whether notice should be given to potential class plaintiffs. Id. at 1213-14. **[*7]** At this notice stage, since there is little evidence, the district court may order notice based on nothing more than substantial allegations that the putative class is composed of victims of a single discriminatory decision, policy or plan. Id. at 1214 n.8, citing Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. 392, 407 (D.N.J. 1988), aff'd in part and appeal dismissed in part, 862 F.2d 439 (3d Cir. 1988), aff'd and remanded, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989). If the court decides to "conditionally certify" the class, putative plaintiffs are given notice and an opportunity to opt in, and the suit then proceeds as a representative action throughout discovery. Id. at 1214. As the second step, the defendant usually files a motion for decertification after discovery, when the case is nearly ready for trial and when far more information is available to the court for its decision and factual determination of whether the opt-in members are "similarly situated." Id. If they are not, the court decertifies the class and the opt-in plaintiffs are dismissed without prejudice. Id. If they are, the collective action proceeds to trial. **[*8]** Id.

## FOOTNOTES

3 Arising out of *Lusardi v. Xerox Corp.,* 118 F.R.D. 351 (D.N.J. 1987), *mandamus granted in par, appeal dismissed sub nom. Lusardi v. Lechner,* 855 F.2d 1062 (3rd Cir. 1988), *vacated in part, modified in part, and remanded sub nom. Lusardi v. Xerox Corp.,* 122 F.R.D. 463 (D.N.J. 1988), *aff'd in part, appeal dismissed,* 975 F.2d 964 (3d Cir. 1992).

The alternative procedure approved by the Fifth Circuit is similar to the "spurious" class action procedure that was eliminated from Fed.R. Civ. P. 23 and typified by *Shushan v. University of Colorado,* 132 F.R.D. 263 (D. Colo. 1990). *Id.* Although under § 216(b) individuals who do not opt in are not bound by the judgment, the court in such representative actions otherwise applies Rule 23's requirements of numerosity, commonality, typicality, and adequacy of representation to determine if it should certify the class. *Id.*

In weighing **[\*9]** the instant motion, the Court follows the *Lusardi* approach here. The small number of possible plaintiffs, forty or less, whose identity Plaintiff seeks and the fact that Plaintiff has already obtained the names of twenty-seven of them, undermine Defendants' argument that they would be overburdened or prejudiced by the minimal, clearly defined discovery request. By limiting the suit to those who performed the duties of a commercial loan officer at the approximately thirty branch offices since November 1, 1997, Plaintiff demonstrates that she is not seeking a fishing expedition and, without additional discovery from these people, reasonably will reach employees who may be similarly situated to her. Moreover, until those choosing to opt in have done so, a more exact determination of "similarly situated" will remain difficult. Finally, granting the motion would contribute to the efficient development of this litigation and avoid a multiplicity of suits if the putative plaintiffs are similarly situated.

Accordingly, the Court

ORDERS that Plaintiff's expedited motion for notice and for limited expedited discovery is GRANTED. The Court will authorize the discovery and the issuance of **[\*10]** notice by separate order.

**SIGNED** at Houston, Texas, this 19th day of December, 2000.

/s/

MELINDA HARMON

UNITED STATES DISTRICT JUDGE

Service: **Get by LEXSEE®**
Citation: **2000 U.S. DIST. LEXIS 22804**
View: Full
Date/Time: Tuesday, January 17, 2012 - 4:43 PM EST

* Signal Legend:
⬤ - Warning: Negative treatment is indicated
🅠 - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
⊕ - Positive treatment is indicated
🅐 - Citing Refs. With Analysis Available
🅘 - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 22804 Page 5 of 5

Case 4:11-cv-01235 Document 28-7 Filed in TXSD on 01/17/12 Page 36 of 93

In

About LexisNexis | Privacy Policy | Terms & Conditions | Contact Us
Copyright © 2012 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Switch Client | Preferences | Help | Sign Out

| My Lexis℠ | Search | Get a Document | Shepard's® | More | | History |
|---|---|---|---|---|---|---|
| | | | | | | Alerts |

FOCUS™ Terms     Advanced... **Get a Document**     View Tutorial

Service: **Get by LEXSEE®**
Citation: **1998 U.S. DIST. LEXIS 13131**

*1998 U.S. Dist. LEXIS 13131, ***

CRAIG M. HARRISON et al., Plaintiffs, v. ENTERPRISE RENT-A-CAR CO. et al., Defendants.

Case No. 98-233-CIV-T-24(A)

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

1998 U.S. Dist. LEXIS 13131

July 1, 1998, Decided
July 1, 1998, Filed

**DISPOSITION: [*1]** Plaintiffs' Motion to Facilitate Notice (Doc. No. 33, filed March 27, 1998) GRANTED.

### CASE SUMMARY

**PROCEDURAL POSTURE:** The Florida federal court considered plaintiff former management assistants' motion to facilitate notice against defendant employer in plaintiffs' action seeking to recover unpaid overtime compensation.

**OVERVIEW:** Plaintiffs filed a motion to facilitate notice and the court granted the motion. The court held that the fact that subsequent discovery may prove that the original plaintiffs and the opt-in plaintiffs were not similarly situated does not work against the original decision to facilitate notice. The court exercised its discretion in the interest of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action.

**OUTCOME:** The court granted plaintiffs' motion to facilitate notice because it was in the interest of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action.

**CORE TERMS:** similarly situated, notice, discovery, opt-in, customer, declarations, opt-ins, rental, overtime compensation, written consents, unpaid, rental car, liquidated damages, collective actions, class members, appropriate cases, multiplicity, duplicative, avoiding, exempt, bind, arranging, handling

### LEXISNEXIS® HEADNOTES

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits

= Hide


EXHIBIT
G

Civil Procedure > Pleading & Practice > Service of Process > General Overview

*HN1* District courts have discretion, in appropriate cases, to implement 29 U.S.C.S. § 216 (b) by facilitating notice. This prerogative on the part of the district court seems borne out of the policy considerations of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action.  More Like This Headnote

Civil Procedure > Pleading & Practice > Service of Process > General Overview

Evidence > Inferences & Presumptions > General Overview

*HN2* The power to authorize notice must be exercised with discretion and only in appropriate cases. A district court's decision, which is usually based only on the pleadings and any affidavits submitted, hinges upon whether the original plaintiffs and the potential opt-in plaintiffs are similarly situated. The Eleventh Circuit requires a determination that individuals are "similarly situated" with respect to their job requirements and with regards to their pay provisions. It is the plaintiffs' burden to show that they and potential opt-ins are similarly situated. This burden, which is not heavy, may be met by detailed allegations supported by affidavits.  More Like This Headnote

Civil Procedure > Pleading & Practice > Service of Process > General Overview

Evidence > Inferences & Presumptions > General Overview

*HN3* At the notice stage, the burden on plaintiffs to show that they and potential opt-ins are similarly situated is a lenient one.  More Like This Headnote |
*Shepardize:* Restrict By Headnote

Civil Procedure > Pleading & Practice > Service of Process > General Overview

*HN4* The fact that subsequent discovery may prove that the original plaintiffs and the opt-in plaintiffs are not, after all, similarly situated does not work against the original decision to facilitate notice.  More Like This Headnote | *Shepardize:* Restrict By Headnote

**COUNSEL:** For CRAIG M. HARRISON, LIONEL L. FRANCIS, ROBERT J. DOUGLAS, JR., REGINALD N. KEITH, GAYLA KIRWAN, VICKY L. MOURER, CARLA A. RISSELL, ROBERT LUTHER, plaintiffs: Thomas A. Warren, Law Office of Thomas Warren, Tallahassee, FL.

For CRAIG M. HARRISON, LIONEL L. FRANCIS, ROBERT J. DOUGLAS, JR., REGINALD N. KEITH, GAYLA KIRWAN, VICKY L. MOURER, CARLA A. RISSELL, ROBERT LUTHER, plaintiffs: David Borgen, Morris J. Baller, Aaron Kaufmann, Debra A. Smith, Saperstein, Goldstein, Demchak & Baller, Oakland, CA.

For CRAIG M. HARRISON, LIONEL L. FRANCIS, ROBERT J. DOUGLAS, JR., REGINALD N. KEITH, GAYLA KIRWAN, VICKY L. MOURER, CARLA A. RISSELL, ROBERT LUTHER, plaintiffs: Sam J. Smith, Karen M. Doering, Burr & Smith, LLP, Tampa, FL.

For ENTERPRISE RENT-A-CAR COMPANY, THE CRAWFORD GROUP, INC., ENTERPRISE LEASING, ENTERPRISE LEASING COMPANY OF ORLANDO, ENTERPRISE LEASING COMPANY - SOUTH CENTRAL, INC., ENTERPRISE LEASING COMPANY OF GEORGIA, ENTERPRISE LEASING COMPANY SOUTHEAST, ENTERPRISE RENT-A-CAR OF TENNESSEE, defendants: Edwin John Turanchik, Peter W. Zinober, Scott T. Silverman, Zinober & McCrea, **[*2]** P.A., Tampa, FL USA.

For ENTERPRISE RENT-A-CAR COMPANY, THE CRAWFORD GROUP, INC., ENTERPRISE LEASING,

ENTERPRISE LEASING COMPANY OF ORLANDO, ENTERPRISE LEASING COMPANY - SOUTH CENTRAL, INC., ENTERPRISE LEASING COMPANY OF GEORGIA, ENTERPRISE LEASING COMPANY SOUTHEAST, ENTERPRISE RENT-A-CAR OF TENNESSEE, defendants: Wayne A. Schrader, William J. Kilberg, Eugene Scalia, Gibson, Dunn & Crutcher LLP, Washington, DC.

For ENTERPRISE RENT-A-CAR COMPANY, THE CRAWFORD GROUP, INC., ENTERPRISE LEASING, ENTERPRISE LEASING COMPANY OF ORLANDO, ENTERPRISE LEASING COMPANY - SOUTH CENTRAL, INC., ENTERPRISE LEASING COMPANY OF GEORGIA, ENTERPRISE LEASING COMPANY SOUTHEAST, ENTERPRISE RENT-A-CAR OF TENNESSEE, defendants: Geoffrey M. Gilbert, Thomas E. Berry, John B. Renick, McMahon, Berger, Hanna, Linihan Cody & McCarthy, St. Louis, MO.

For DORE ELMER, NICOLE BISHOP, ALISA DILORENZO, JILL STARK, movants: Thomas A. Warren, Law Office of Thomas Warren, Tallahassee, FL.

For DORE ELMER, NICOLE BISHOP, ALISA DILORENZO, JILL STARK, movants: David Borgen, Saperstein, Goldstein, Demchak & Baller, Oakland, CA.

For DORE ELMER, NICOLE BISHOP, ALISA DILORENZO, JILL STARK, movants: Sam J. Smith, **[*3]** Burr & Smith, LLP, Tampa, FL.

**JUDGES:** SUSAN C. BUCKLEW, United States District Judge.

**OPINION BY:** SUSAN C. BUCKLEW

**OPINION**

**_ORDER_**

This cause comes before the Court for consideration of Plaintiffs' Motion to Facilitate Notice (Doc. No. 33, filed March 27, 1998). Defendants responded in opposition on April 10, 1998 (Doc. No. 42).

Defendants, Enterprise Rent-A-Car and various wholly owned corporate subsidiaries, maintain "branches" for the purpose of renting cars to the public. The eight original Plaintiffs, former "Management Assistants" for Enterprise Rent-A-Car, seek to recover unpaid overtime compensation (together with liquidated damages and attorney's fees) from the Enterprise Defendants under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b) [1]. Plaintiffs also seek to represent "similarly situated" Management Assistants currently or formerly employed by the Enterprise Defendants. To this end, fifty-eight "opt-in" Plaintiffs have filed written consents to participate in this lawsuit. At present, then, there are eight original plaintiffs and fifty-eight opt-in plaintiffs, residing in thirteen difference states (Alabama, California, Colorado, Florida, Georgia, Illinois, Indiana, **[*4]** Maryland, Minnesota, Missouri, New York, Virginia, and West Virginia). (Doc. No. 37, Ex. H.) The state most frequently represented is Florida (with thirty-five plaintiffs and opt-ins). _Id._ Suggesting that there are great numbers of potential opt-ins whose identities and addresses are unknown to them, Plaintiffs move this Court, pursuant to section 216(b), to facilitate notice to this diaspora.

**FOOTNOTES**

[1] "Any employer who violates the provisions of [the FLSA] ... shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages...." 29 U.S.C. § 216(b). FLSA contains its own provision for the maintenance of collective actions. In relevant part, it allows such actions "[to] be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and

other employees similarly situated." *Id.* Unlike class actions certified pursuant to Rule 23 of the Federal Rules of Civil Procedure, a collective FLSA action under section 216(b) does not bind individuals who have not consented to join it. *See, e.g., Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 421 (M.D. Ala. 1991) ("Under § 216(b) … a person is not considered a member of the 'collective action' and will not be bound by or benefit from the court's judgment unless the person has filed a written consent with the court and thereby affirmatively 'opted in' to the suit.").

**[\*5]** It has been noted that nothing in § 216(b) itself confers the power to facilitate notice. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 176, 107 L. Ed. 2d 480, 110 S. Ct. 482 (1989) (Scalia, J., dissenting). Despite this absence of statutory basis, the Supreme Court has held that "*HN1* district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) … by facilitating notice." *Id.* at 169. *Accord Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991) (holding that district court has the power, "under appropriate circumstances," "to give such notice to other potential members of the plaintiff class to 'opt-in' if they so desire…."). This prerogative on the part of the district court seems borne out of the policy considerations of "avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Hoffmann-La Roche*, 493 U.S. at 172.

Nonetheless, "*HN2* the power to authorize notice must be exercised with discretion and only in appropriate cases." *Haynes v. Singer Co.*, 696 F.2d 884, 886 (11th Cir. 1983). The district court's decision, which is usually based only on the pleadings **[\*6]** and any affidavits submitted, *see Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995), hinges upon whether the original plaintiffs and the potential opt-in plaintiffs are "similarly situated." *See Dybach*, 942 F.2d at 1567. Although "neither the FLSA nor its implementing regulations define the term 'similarly situated,'" *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997), this Court and this Circuit have arrived at a rough calculus: "The Eleventh Circuit requires a determination that individuals 'are "similarly situated" with respect to their job requirements and with regards to their pay provisions.'" *Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 947 (M.D. Fla. 1994) (quoting *Dybach*, 942 F.2d at 1567).

It is, of course, the Plaintiffs' burden to show that they and potential opt-ins are similarly situated. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir.), *cert. denied sub. nom. Helton v. Kmart Corp.*, 519 U.S. 982, 136 L. Ed. 2d 332, 117 S. Ct. 435 (1996). This burden, "which is not heavy," may be met by detailed allegations supported by affidavits. *Id.* at 1097. *Accord Abrams v. General Elec. Co.*, 1996 U.S. Dist. LEXIS 16869, No. 95-CV-1734(FJS), 1996 **[\*7]** WL 663889, at \*2 (N.D.N.Y. Nov. 4, 1996) (holding that plaintiffs must come forward with "some identifiable factual nexus which binds the named plaintiffs and potential class members together.").

The Court thus turns to the signed declarations put forward by the Plaintiffs. According to these declarations, Management Assistants begin their careers with Enterprise as Management Trainees. Enterprise considers Management Trainees "non-exempt" employees and pays them overtime pay. [2] Their duties consist of: writing car "rental tickets"; picking up rental car customers; making reservations to meet with rental car customers; selling customer options and explaining rental policies; handling telephone and walk-in rental customers; arranging for billing and length of car rentals; handling cash deposits; taking credit information and obtaining approvals; verifying customers' return dates; checking in rental cars when returned; settling customer complaints; making limited sales calls; and arranging for and assisting with fleet maintenance. [3]

## FOOTNOTES

[2] (Abraham Decl. P 3; Anderson Decl. P 3; Bishop Decl. P 3; Boyd Decl. P 3; Brown Decl. P 3; Browning Decl. P 3; Cuthbertson Decl. P 3; Dailey Decl. P 3; Daniels Decl. P 3; Dilorenzo Decl. P 3; Elmer Decl. P 3; Garces Decl. P 3; Golson Decl. P 3; Graham Decl. P 3; Groper

Decl. P 3; Hildebrand Decl. P 3; Hughes Decl. P 3; Huszcza Decl. P 3; Imai Decl. P 3; Isaacson Decl. P 3; Jackson Decl. P 3; James Decl. P 3; Kelley Decl. P 3; Keto Decl. P 3; Kijac Decl. P 3; Kubala Decl. P 3; LaFrentz Decl. P 3; Low Decl. P 3; Morrison Decl. P 3; Neifert Decl. P 3; Paddock Decl. P 3; Patin Decl. P 3; Parisi Decl. P 3; Repass Decl. P 3; Richard Decl. P 3; Ridlon Decl. P 3; Rowland Decl. P 3; Saad Decl. P 3; Salmon Decl. P 3; Sandelin Decl. P 3; Schwanter Decl. P 3; Siegal Decl. P 3; Stark Decl. P 3; Stead Decl. P 3; Strong Decl. P 3; Taylor Decl. P 3; Tillery Decl. P 3; Tracey Decl. P 3; Ubinas Decl. P 3; Walker Decl. P 3; Ware Decl. P 3; Wilson Decl. P 3.) **[*8]**

3 (Harrison Decl. P 4; Francis Decl. P 4; Douglas Decl. P 4; Keith Decl. P 4; Kirwin Decl. P 4; Mourer Decl. P 4; Rissell Decl. P 4; Luther Decl. P 5; Fried Decl. P 4; Abraham Decl. P 4; Anderson Decl. P 4; Bise Decl. P 4; Bishop Decl. P 4; Boyd Decl. P 3; Brown Decl. P 4; Browning Decl. P 4; Cuthbertson Decl. P 4; Dailey Decl. P 4; Daniels Decl. P 4; Dilorenzo Decl. P 4; Elmer Decl. P 4; Garces Decl. P 4; Golson Decl. P 4; Graham Decl. P 4; Groper Decl. P 4; Hildebrand Decl. P 4; Hughes Decl. P 4; Huszcza Decl. P 4; Imai Decl. P 4; Isaacson Decl. P 4; Jackson Decl. P 4; James Decl. P 4; Kelley Decl. P 4; Keto Decl. P 4; Kijac Decl. P 4; Kubala Decl. P 4; LaFrentz Decl. P 4; Low Decl. P 4; Morrison Decl. P 4; Neifert Decl. P 4; Paddock Decl. P 4; Patin Decl. P 4; Parisi Decl. P 4; Repass Decl. P 4; Richard Decl. P 4; Ridlon Decl. P 4; Rowland Decl. P 4; Saad Decl. P 4; Salmon Decl. P 4; Sandelin Decl. P 4; Schwanter Decl. P 4; Siegal Decl. P 4; Stark Decl. P 4; Stead Decl. P 4; Strong Decl. P 4; Taylor Decl. P 4; Tillery Decl. P 4; Tracey Decl. P 4; Ubinas Decl. P 4; Walker Decl. P 4; Ware Decl. P 4; Wilson Decl. P 4.)

**[*9]** According to the Plaintiffs' declarations, Management Assistants, who do not receive overtime compensation, perform essentially the same tasks. 4 Management Assistants have limited marketing functions, consisting largely of plying claims adjusters and body shops with donuts and bagels, then returning to report to the Branch Manager. 5 A Management Assistant may "compromise" a contract (that is, allow a customer one or two days worth of free rental), but that discretion is circumscribed and its exercise reviewed by the Branch Manager. 6 Assistant Managers do not hire employees, fire employees, or conduct interviews. 7 According to the declarations, Assistant Managers work in excess of fifty 8, fifty-five 9, and sixty 10 hours per week.

**FOOTNOTES**

4 (Harrison Decl. P 7; Francis Decl. P 7; Douglas Decl. P 7; Keith Decl. P 7; Kirwin Decl. P 8; Maurer Dep. PP 7, 8; Rissell Decl. PP 7, 8; Luther Decl. PP 8, 9, 10; Anderson Supp. Decl. PP 3, 4, 7; Hildebrand Supp. Decl. PP 3, 4, 7; Hughes Supp. Decl. PP 3, 4, 7; Huszcza Supp. Decl. PP 3, 4, 7; Kijac Supp. Decl. PP 3, 4, 7; Kowal Supp. Decl. PP 3, 4, 7; Keto Supp. Decl. PP 3, 4, 7; Tillery Supp. Decl. PP 3, 4, 7; Groper Supp. Decl. PP 3, 4, 7; Siegal Supp. Decl. PP 3, 4, 7; Bise Supp. Decl. PP 3, 4, 7; Fried Decl. P 7; Abraham Decl. P 7; Anderson Decl. P 7; Bishop Decl. P 7; Boyd Decl. P 7; Brown Decl. P 7; Cuthbertson Decl. P 7; Dailey Decl. P 7; Daniels Decl. P 7; Dilorenzo Decl. P 7; Elmer Decl. P 7; Garces Decl. P 7; Golson Decl. P 7; Graham Decl. P 7; Imai Decl. P 7; Isaacson Decl. P 7; Jackson Decl. P 7; James Decl. P 7; Kelley Decl. P 7; Kubala Decl. P 7; LaFrentz Decl. P 7; Low Decl. P 7; Morrison Decl. P 7; Neifert Decl. P 7; Paddock Decl. P 7; Patin Decl. P 7; Parisi Decl. P 7; Repass Decl. P 7; Richard Decl. P 7; Ridlon Decl. P 7; Rowland Decl. P 7; Saad Decl. P 7; Salmon Decl. P 7; Sandelin Decl. P 7; Schwanter Decl. P 7; Siegal Decl. P 7; Stark Decl. P 7; Stead Decl. P 7; Strong Decl. P 7; Taylor Decl. P 7; Tillery Decl. P 7; Tracey Decl. P 7; Ubinas Decl. P 7; Walker Decl. P 7; Ware Decl. P 7; Wilson Decl. P 7.) **[*10]**

5 (Harrison Decl. P 8; Francis Decl. P 8; Douglas Decl. P 8; Keith Decl. P 8; Kirwin Decl. P 9; Maurer Dep. P 9; Rissell Decl. P 9; Luther Decl. P 11; Fried Decl. P 4.)

6 (Harrison Decl. P 9; Francis Decl. P 9; Douglas Decl. P 9; Keith Decl. P 9; Kirwin Decl. P 12; Maurer Dep. P 11; Rissell Decl. P 12; Luther Decl. P 13; Anderson Supp. Decl. P 6;

Hildebrand Supp. Decl. P 6; Hughes Supp. Decl. P 6; Huszcza Supp. Decl. P 6; Kijac Supp. Decl. P 6; Kowal Supp. Decl. P 6; Keto Supp. Decl. P 6; Tillery Supp. Decl. P 6; Groper Supp. Decl. P 6; Siegal Supp. Decl. P 6; Bise Supp. Decl. P 6.)

7 (Harrison Decl. P 8; Francis Decl. P 8; Douglas Decl. P 8; Keith Decl. P 8; Kirwin Decl. P 11; Maurer Dep. P 10; Rissell Decl. P 11; Luther Decl. P 12; Fried Decl. P 8; Abraham Decl. P 8; Anderson Decl. P 8; Bise Decl. P 8; Bishop Decl. P 8; Boyd Decl. P 8; Brown Decl. P 8; Browning Decl. P 8; Cuthbertson Decl. P 8; Dailey Decl. P 8; Daniels Decl. P 8; Dilorenzo Decl. P 8; Elmer Decl. P 8; Garces Decl. P 8; Golson Decl. P 8; Graham Decl. P 8; Groper Decl. P 8; Hildebrand Decl. P 8; Hughes Decl. P 8; Huszcza Decl. P 8; Imai Decl. P 8; Isaacson Decl. P 8; Jackson Decl. P 8; James Decl. P 8; Kelley Decl. P 8; Keto Decl. P 8; Kijac Decl. P 8; Kubala Decl. P 8; LaFrentz Decl. P 8; Low Decl. P 8; Morrison Decl. P 8; Neifert Decl. P 8; Paddock Decl. P 8; Patin Decl. P 8; Parisi Decl. P 8; Repass Decl. P 8; Richard Decl. P 8; Ridlon Decl. P 8; Rowland Decl. P 8; Saad Decl. P 8; Salmon Decl. P 8; Sandelin Decl. P 8; Schwanter Decl. P 8; Siegal Decl. P 8; Stark Decl. P 8; Stead Decl. P 8; Strong Decl. P 8; Taylor Decl. P 8; Tillery Decl. P 8; Tracey Decl. P 8; Ubinas Decl. P 8; Walker Decl. P 8; Ware Decl. P 8; Wilson Decl. P 8.) **[*11]**

8 (Brown Decl. P 6; Browning Decl. P 6; Cuthbertson Decl. P 6; Dailey Decl. P 6; Dilorenzo Decl. P 6; Garces Decl. P 6; Groper Decl. P 6; Huszcza Decl. P 6; Isaacson Decl. P 6; Jackson Decl. P 6; Kelley Decl. P 6; Kubala Decl. P 6; LaFrentz Decl. P 6; Low Decl. P 6; Morrison Decl. P 6; Neifert Decl. P 6; Paddock Decl. P 6; Parisi Decl. P 6; Ridlon Decl. P 6; Saad Decl. P 6; Stark Decl. P 6; Taylor Decl. P 6; Tillery Decl. P 6; Ubinas Decl. P 6.)

9 (Anderson Decl. P 6; Bise Decl. P 4; Bishop Decl. P 6; Boyd Decl. P 6; Daniels Decl. P 6; Elmer Decl. P 6; Golson Decl. P 6; Graham Decl. P 6; James Decl. P 6; Repass Decl. P 6; Rowland Decl. P 6; Schwanter Decl. P 6; Siegal Decl. P 6; Stead Decl. P 6; Taylor Decl. P 6; Tracey Decl. P 6; Walker Decl. P 6.)

10 (Hildebrand Decl. P 6; Hughes Decl. P 6; Imai Decl. P 6; Keto Decl. P 6; Kijac Decl. P 6; Patin Decl. P 6; Richard Decl. P 6; Salmon Decl. P 6; Sandelin Decl. P 6; Strong Decl. P 6; Wilson Decl. P 8.)

The Plaintiffs' declarations suggest that Management Assistants for Enterprise perform the same kinds of tasks, under the same kinds **[*12]** of restrictions, and under the same pay provisions. They thus supply an adequate basis from which to conclude, for preliminary purposes, that members of a potential class of Management Assistants would be "similarly situated" with respect to their job requirements and with regards to their pay provisions. See Dybach, 942 F.2d at 1567; see also Garner, 802 F. Supp. at 422 (holding that evidence of forty similarly situated potential plaintiffs was sufficient); cf. Haynes, 696 F.2d at 888-89 (holding that, due to utter dearth of evidence that potential plaintiffs were similarly situated, district court correctly declined to exercise discretion to facilitate notice).

It is Defendants' position that the range of duties performed by Management Assistants is too wide and too varied for the members of such a class to be "similarly situated." It would seem, though, that Defendants demand too much of the standard, at least at this stage. **HN3** At the notice stage, the burden on plaintiffs to show that they and potential opt-ins are similarly situated is a "lenient" one. Mooney, 54 F.3d at 1213-14. Accord Hoffman, 982 F. Supp. at 261 ("The burden on the plaintiffs is not a stringent **[*13]** one, and the Court need only reach a preliminary determination that potential plaintiffs are 'similarly situated.'"). Plaintiffs need only show a similarity of duties and pay provisions, not an identity thereof. See Grayson, 79 F.3d at 1096. Accord Tucker, 872 F. Supp. at 947 ("To be similarly situated courts have held positions need not be identical, but similar.").

Defendants also argue that the Management Assistants' duties include managerial, or administrative ones that exempt the position from FLSA's purview. Discovery may prove this to

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 13131    Page 7 of 8

Case 2:03-cv-02495 Document 29-1   Filed in TXSD on 01/17/12   Page 43 of 93

be the case. Indeed, discovery may prove that Plaintiffs and the potential opt-ins are not similarly situated after all, in which case Defendants may move to "decertify" the class of Management Assistants, and the Court may dismiss the opt-in plaintiff's without prejudice. *See Mooney*, 54 F.3d at 1213-14. Nonetheless, *HN4* the fact that subsequent discovery may prove that the original plaintiffs and the opt-in plaintiffs are not, after all, "similarly situated" does not work against the original decision to facilitate notice. *See Schwed v. General Elec. Co.*, 159 F.R.D. 373, 375 (N.D.N.Y. 1995) ("Even where later discovery proves the **[*14]** putative class members to be dissimilarly situated, notice ... prior to full discovery is appropriate as it may further the remedial purpose of the [FLSA]."); *Krueger v. New York Tel. Co.*, 1993 U.S. Dist. LEXIS 9988, 1993 WL 276058 at *2 (S.D.N.Y. July 21, 1993) ("Even if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case."). Likewise, the possibly exempt status of the Management Assistants is more properly raised at summary judgment than at the notice stage.

As it stands, then, this action will proceed as a representative one through the discovery stage. *See Mooney*, 54 F.3d at 1213-14. In order to further the judicial goal of avoiding a multiplicity of duplicative suits and effecting the expeditious resolution of this action, *see Hoffmann-La Roche*, 493 U.S. at 172; *Hipp v. Liberty Nat'l Life Ins. Co.*, 164 F.R.D. 574, 576 (M.D. Fla. 1996), this Court will therefore grant Plaintiffs' motion to facilitate notice.

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Plaintiffs' Motion to Facilitate **[*15]** Notice (Doc. No. 33, filed March 27, 1998) is GRANTED;

(2) Defendants shall furnish to Counsel for Plaintiffs all discovery necessary to identify and locate the proposed class of Management Assistants within twenty (20) days of this order;

(3) Plaintiffs' proposed, revised notice (Doc. No. 52, Ex. B) is sufficient and may be sent to similarly situated potential plaintiffs;

(4) There is to be no other communication between Plaintiffs or their Counsel and these individuals;

(5) Parties who choose to opt-in as Plaintiffs must file written consent with this Court within 120 days of this order.

**DONE AND ORDERED** at Tampa, Florida, this *1st* day of July, 1998.

SUSAN C. BUCKLEW

United States District Judge

Service: **Get by LEXSEE®**
Citation: **1998 U.S. DIST. LEXIS 13131**
View: Full
Date/Time: Tuesday, January 17, 2012 - 4:43 PM EST

* Signal Legend:
⊚ - Warning: Negative treatment is indicated
Ⓠ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
⊕ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
Ⓣ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

In

About LexisNexis   | Privacy Policy   | Terms & Conditions   | Contact Us
Copyright ©  2012 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 12406    Page 1 of 5

Case 4:11-cv-00236-Document 28-7 (CCH) P34, TXSD on 01/17/12    Page 45 of 93

Switch Client | Preferences | Help | Sign Out

| **My Lexis**™ | **Search** | **Get a Document** | **Shepard's**® | **More** | **History** |
|---|---|---|---|---|---|
| | | | | | **Alerts** |

**FOCUS**™ Terms _____  ⬚  Advanced...  **Get a Document**  ⬚  View Tutorial

Service: **Get by LEXSEE®**
Citation: **2000 U.S. DIST. LEXIS 12406**

*2000 U.S. Dist. LEXIS 12406, *; 141 Lab. Cas. (CCH) P34,119;*
*6 Wage & Hour Cas. 2d (BNA) 922*

RONALD HERRERA, on Behalf of Himself and All Other Plaintiffs Similarly Situated Known and Unknown, Plaintiffs, v. UNIFIED MANAGEMENT CORP., and REEBIE MOVING & STORAGE, Defendants.

Case No. 99 C 5004

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2000 U.S. Dist. LEXIS 12406; 141 Lab. Cas. (CCH) P34,119; 6 Wage & Hour Cas. 2d (BNA) 922

August 17, 2000, Decided
August 18, 2000, Docketed

**DISPOSITION: [*1]** Motion to begin Notice to Members of Plaintiff Class granted as amended in Herrera's June 23, 2000 filing. Unified dismissed.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff filed a motion to begin notice to the representative plaintiff class under § 16(b) of the Fair Labor Standard's Act, 29 U.S.C.S. § 216(b).

**OVERVIEW:** Plaintiff brought an action pursuant to the Fair Labor Standard's Act (FLSA), claiming that he and other similarly situated employees were not properly compensated for overtime work. He filed a motion to begin notice to the representative plaintiff class under § 16(b) of the FLSA, 29 U.S.C.S. § 216(b). The parties disagreed as to the standard the court should employ in determining whether notice should be sent. The court found, however, that even under the more stringent standard advocated by the defendant, the potential action was proper. Moreover the small size of the class did not prevent the action from being certified. Finally, objections as to the wording of the notice were properly addressed by the new proposed notice.

**OUTCOME:** The court granted the motion, finding that plaintiff's potential representative action was large enough to count as a "class" for class action purposes and the wording and content of the proposed notice was proper.

**CORE TERMS:** notice, join, representative action, class members, numerosity, lawsuit, similarly situated, time period, prevailing, overtime, databank, claimants

**EXHIBIT**
H

**LEXISNEXIS® HEADNOTES**                                      ⊟ **Hide**

Civil Procedure > Class Actions > Prerequisites > Numerosity 🔳

*HN1* ⤊ Courts hold that between 30 and 40 members is on the low end, but sufficient for class purposes. More Like This Headnote

Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview 🔳

*HN2* ⤊ 29 U.S.C.S. § 216(b) specifically directs that prevailing plaintiffs should be awarded attorneys' fees and costs; it is silent as to prevailing defendants. More Like This Headnote

**COUNSEL:** For RONALD HERRERA, plaintiff: John William Billhorn, John W. Billhorn, P.C., Chicago, IL.

For UNIFIED MGT CORP, REEBIE MOVING & STORAGE, defendants: Alan I. Greene, Joan Myers Eagle, Schwartz & Freeman, Chicago, IL.

**JUDGES:** Harry D. Leinenweber, Judge, United States District Court.

**OPINION BY:** Harry D. Leinenweber

**OPINION**

**MEMORANDUM OPINION AND ORDER INTRODUCTION**

Before the court is plaintiff Ronald Herrera's motion to begin notice to the representative plaintiff class under § 16(b) of the Fair Labor Standard's Act. 29 U.S.C. § 216(b). Herrera brings this action pursuant to the FLSA, claiming that he and other similarly situated employees were not properly compensated for overtime work.

The court addresses defendant Reebie Storage & Moving Co.'s objections in turn. In response to Reebie's objections, Herrera submitted an amended proposed notice, and Reebie has replied to Herrera's response.

**BACKGROUND**

According to the Complaint, Herrera was employed by Reebie as a laborer and warehouser. Similarly, the unnamed class **[*2]** plaintiffs are either present or past hourly or salary employees of Reebie who were denied overtime compensation.

**DISCUSSION**

Reebie argues that Unified Management Corp. ⤍should be dismissed from this action. Plaintiff agrees and has deleted references to Unified from its amended Notice. Therefore, Unified is dismissed.

The parties disagree as to the standard that this court should employ in determining whether notice should be sent. On the one hand, Reebie argues that the court should treat this motion as a motion for class certification under Federal Rule of Civil Procedure 23 and utilize the numerosity, commonality, typicality and adequacy test. *See Garcia v. Elite Labor Service*, 1996

U.S. Dist. LEXIS 14405, No. 95 C 2341, 1996 WL 559958, *2 (N.D. Ill. Sept. 30, 1996). The rationale is that Congress did not intend to create a separate structure for FLSA actions. *See Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1212-1216 (5th Cir. 1995).

On the other hand, Herrera argues that the § 16(b) notice process involves two steps. Initially, notice is sent to potential class members. Then, after discovery has taken place, the court determines whether the class should be restricted **[*3]** based on the "similarly situated" requirement of the FLSA. *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).

The logic of the second approach is that, in contrast to class actions, members of the FLSA representative action "opt in;" therefore, the stricter Rule 23 test is irrelevant and unnecessary because, at this stage, the potential class is uncertain and self selective. *See Woods v. New York Life Ins. Co.*, 686 F.2d 578, 579 (7th Cir. 1982).

Resolution of this debate is unnecessary, however, because even under the more stringent Rule 23 test, Herrera's potential § 16(b) representative action passes muster. After Herrera's Response, Reebie's sole remaining objection is that the potential representative action is not numerous; there are only about thirty potential members. The issue is whether the potential class is "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). However, **HN1** courts have held that between thirty and forty members is on the low end but sufficient for class purposes. *See Swanson v. American Consumer Indus., Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969)(forty members were sufficient **[*4]** for numerosity), *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D.Ill. 1986)(approximately twenty-nine members sufficient for numerosity).

Next, Reebie has filed several objections to the wording and content of Herrera's proposed Notice. The amended Notice addresses defendant's objections and sufficiently modifies the notice in the following ways:

> (1) The introductory paragraph and "Compensation Issues To Be Resolved" sections have been limited to only databank employees;

> (2) A 45-day cutoff has been added to the "How To File The 'Notice and Consent' If You Choose To Join."

The "Your Right to Join This Lawsuit" section of Herrera's amended Notice appeals to employees who have worked at Reebie's Databank division "within three years," in order to satisfy the statute of limitations. *See* 29 U.S.C. § 255(a). Reebie argues that the time period should be to two years because the issue of willfulness, which gives rise to the three-year period, remains unadjudicated.

The court finds that the Notice should reference three years, and, if necessary, the class can later be restricted. It is more efficient to later restrict the class **[*5]** then to later propose, revise through a series of briefs, and send out another notice. *See King v. ITT Continental Baking Co.*, 1986 U.S. Dist. LEXIS 29321, No. 84 C 3410, 1986 WL 2628 (N.D. Ill. Feb. 13, 1996) (notice to FLSA § 16(b) class referenced three years); *see also Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 449-50 (N.D. Ill. 1982). Reebie also complains that the three-year reference is unclear; however, Reebie does not specify why. Therefore, the proposed amendment stands.

Herrera includes a section in the amended Notice entitled "Previous 'Settlements' or 'Agreements' With Defendant Reebie," inviting those who already signed Reebie's Releases to join this lawsuit. Reebie also objects to Herrera's proposed addition with regards to the three-year time period. Based on the above reasoning, the Corrective Notice and Invalidation also stands.

Get a Document - by Citation - 2000 U.S. Dist. LEXIS 12406    Page 4 of 5

Case 4:11-cv-02265 Document 28-7 Filed in TXSD on 01/17/12  Page 48 of 93

In the amended Notice, the Consent Forms are to be addressed to Herrera's Counsel's Office, in order to prevent overburdening the court and because Herrera's counsel has had consents returned to his office in other FLSA cases. Reebie seeks to have the Consent Forms returned to the Clerk's Office, expressing concern that Herrera's **[*6]** counsel could manipulate the dates of consent.

In *Woods*, the Seventh Circuit stated that there is "no good reason for apparent judicial sponsorship of the notice." *Woods* at 581. For example, in *King*, citing *Woods*, the court apparently changed the Consent Form return address from the Clerk to a P.O. Box that plaintiff's counsel was to access. *King* at *4, *7. Accordingly, the return address on the "How To File 'Notice of Consent' If You Choose To Join This Suit" stands.

Reebie suggests two additions to the "Your Option of Legal Representation If You Decide To Join This Lawsuit" section. Reebie argues that potential claimants should be informed that if the court denies them back wages that it could also assess costs and expenses against them. Also, the defendant argues that the claimants should be informed that if they hire an attorney, they will be responsible for paying that attorney.

In *King*, the court refused to warn potential participants that they may be liable for the defendants' costs because [HN2]§ 216(b) specifically directs that prevailing plaintiffs should be awarded attorneys' fees and costs; it is silent as to prevailing defendants. The Court finds **[*7]** that inclusion of such a statement would unreasonably chill participation in this action by potential class members." *King* at *4. The *King* court also reasoned that "Potential class members interested in retaining the services of plaintiffs' counsel will undoubtedly inquire on their own." *Id.* Therefore, the language is adequate in the amended Notice.

## CONCLUSION

Accordingly, for the reasons stated herein, the motion to begin Notice to Members of Plaintiff Class is granted as amended in Herrera's June 23, 2000 filing. Unified is dismissed.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge

United States District Court

Date: 8/17/2000

   Service: **Get by LEXSEE®**
  Citation: **2000 U.S. DIST. LEXIS 12406**
    View: Full
Date/Time: Tuesday, January 17, 2012 - 4:44 PM EST

* Signal Legend:
⬤ -  Warning: Negative treatment is indicated
Ⓠ -  Questioned: Validity questioned by citing refs
⚠ -  Caution: Possible negative treatment
⊕ -  Positive treatment is indicated
Ⓐ -  Citing Refs. With Analysis Available
Ⓘ -  Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

In

About LexisNexis   | Privacy Policy   | Terms & Conditions   | Contact Us
Copyright ©  2012 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Westlaw.

Not Reported in F.Supp., 1993 WL 276058 (S.D.N.Y.)
(Cite as: 1993 WL 276058 (S.D.N.Y.))

**H**
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Evelyn KRUEGER, Francis J. Lupardo, Carlyle D.
Forde, Walter Grabowski, Nicholas T. Bruck, and
Albert J. Dwyer on behalf of themselves and all
others similarly situated, Plaintiffs,
v.
NEW YORK TELEPHONE COMPANY and
Nynex Corporation, Defendants.
Bernice CARROLL, Betsy J. Bell and William F.
Perkins, individually and on behalf of all other per-
sons similarly situated, Plaintiffs,
v.
NEW YORK TELEPHONE COMPANY, a Com-
pany of the Nynex Corporation, Defendant.
Nos. 93 CIV. 0178 (LMM), 93 CIV. 0179 (LMM).

July 21, 1993.

*MEMORANDUM AND ORDER*

McKENNA, District Judge.

*1 Now before the Court are the similar motions of
plaintiffs in these related actions for an order pursu-
ant to 29 U.S.C. § 216(b) (1988) directing defend-
ants to furnish the named plaintiffs and their coun-
sel with the names and last known residence ad-
dresses of all potential class members, authorizing
notice to such individuals and proscribing the no-
tice's form.[FN1]

The actions, filed almost simultaneously, both in-
volve claims arising under the Age Discrimination
in Employment Act, as amended, 29 U.S.C. § 621-
634 (1988) ("the ADEA") and the New York Hu-
man Rights Law, Executive Law § 290 *et. seq.*
(McKinney's 1993) ("the HRL"). In addition, the
*Krueger* action includes a claim to remedy defend-
ants' alleged interference with the attainment of
plaintiffs' rights to pension benefits pursuant to the
Employee Retirement Income Security Act of 1974

("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.*
[FN2] Plaintiffs claim that defendant New York
Telephone Company ("NYT") unlawfully dis-
charged or otherwise discriminated against them
and others similarly situated in the implementation
of the NYNEX Force Management Plan ("FMP").

1.

Notification to others similarly situated who have
not yet joined either action is, in this Court's view,
an appropriate course of action to take at this junc-
ture in the litigation. *See Hoffmann-La Roche, Inc.
v. Sperling*, 493 U.S. 165, 170 (1989). The ADEA
incorporates the enforcement provisions from the
Fair Labor Standards Act; specifically, Section
216(b) provides as follows:

An action to recover the liability prescribed ... may
be maintained against any employer (including a
public agency) in any Federal or State Court of
competent jurisdiction by any one or more employ-
ees for and in behalf of himself or themselves and
other employees similarly situated. No employee
shall be a party plaintiff to any such action unless
he gives his consent in writing to become such a
party and such consent is filed in the court in which
such action is brought.

29 U.S.C. § 216(b).

The Supreme Court's decision in *Hoffmann* clearly
authorizes and, in fact, advocates that the district
court exercise its discretion early in the litigation to
permit discovery of the names and addresses of dis-
charged employees to ensure that such potential
plaintiffs are promptly and accurately notified. The
Supreme Court noted the underlying interests in the
trial court's discretionary involvement in facilitating
notice to potential plaintiffs:

A collective action allows age discrimination
plaintiffs the advantage of lower individual costs to
vindicate rights by the pooling of resources. The ju-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.


EXHIBIT

Not Reported in F.Supp., 1993 WL 276058 (S.D.N.Y.)
(Cite as: 1993 WL 276058 (S.D.N.Y.))

dicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.

*Hoffmann*, 493 U.S. at 170.

Defendants argument that Justice Kennedy's concurrence in *Hazen Paper Co. v. Biggins*, 113 S.Ct. 1701, 1710 (1993) (Kennedy, J., concurring), "casts significant doubt on whether a plaintiff may proceed, as plaintiffs attempt to do here, under a disparate impact theory of liability in an action under the ADEA," (Defs.' Mem. in Opp., at 3), is premature both as to this action and in general, given that the Supreme Court in *Hazen* specifically declined to decide whether a disparate impact theory of liability is available under the ADEA, *id.* at 1706, and that the Second Circuit Court of Appeals has clearly ruled that disparate impact doctrine is applicable to ADEA cases in this circuit. *Maresco v. Evans Chemetics*, 964 F.2d 106, 115 (2d Cir.1992); *Lowe v. Commack Union Free School Dist.*, 886 F.2d 1364, 1369 (2d Cir.1989), *cert. denied*, 494 U.S. 1026 (1990).

*2 Plaintiffs' allegations of disparate impact are sufficient at this stage and do not undermine plaintiffs' argument that it is appropriate to notify those "similarly situated." Plaintiffs have identified two ranking criteria that could support a disparate impact analysis under the ADEA which were employed in all of the banding entities into which plaintiffs and those similarly situated were divided. Moreover, alleged statements from certain NYT employees may also support plaintiffs' claims. Defendants' FMP, however diffuse its implementation, appears nevertheless to have been a single plan contemplating reduction of defendants' staff within a tightly proscribed period, i.e., December 1992.

Defendants contest plaintiffs' motion by seeking to contest the merits of plaintiffs' claims more vigorously than is necessary at this stage. Specifically, defendants seek to cast doubt on whether a definable group of "similarly situated" plaintiffs can ex-

ist here. It is beyond contention that a definable group of "similarly situated" former and present employees does exist; the Court need not evaluate the merits of plaintiffs' claims in order to determine whether a "similarly situated" group exists. Plaintiffs need only set forth "substantial allegations that the putative class members were together victims of a single decision, policy or plan infected by discrimination." *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J.1988). In this Court's view, the "similarly situated" burden has been met here; even if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out *not* to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case. At the very least, plaintiffs' detailed allegations and supporting affidavits "successfully engage [defendants'] affidavits to the contrary" for purposes of the present motion. *Id.* at 406. Further, as the court said in *Frank v. Capital Cities Communications, Inc.*, 88 F.R.D. 674 (S.D.N.Y.1981):

[T]he experiences of other employees may well be probative of the existence *vel non* of a discriminatory policy, thereby affecting the merits of the plaintiffs' own claims; and the notice machinery contemplated by the ADEA, by reaching out to potential plaintiffs, may further the statute's remedial purpose.

*Id.* at 676.

The Court thus decides that defendants must provide plaintiffs with the names and last-known residences of those putative plaintiffs who have not yet joined either the *Carroll* or the *Krueger* actions. [FN3] During oral argument, all parties were in apparent agreement that approximately eighty individuals had not yet opted in to either action, but might be eligible to do so. [FN4] These approximately eighty individuals and any others falling within the group of persons similarly situated will be notified under the guidelines set out by the Court below.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1993 WL 276058 (S.D.N.Y.)
(Cite as: 1993 WL 276058 (S.D.N.Y.))

2.

\*3 In accordance with *Hoffmann,* the Court turns now to the form and content of the notice it has ordered which is to be approved by the Court prior to mailing in order that present and after-the-fact disputes between counsel as to form and manner of consent may be eliminated. *Hoffmann,* 493 U.S. at 170. *One* notice is to be mailed to possible plaintiffs describing both actions. The notice shall include the following information: (1) a brief identification of each action (including class definitions arrived at as set forth in footnote 4, *supra* ); (2) any fees or advances a plaintiff would be obligated to pay at any stage of the litigation; (3) that the *Carroll* action is limited to plaintiffs living in the New York City metropolitan area; (4) the number of individuals who have submitted signed consent forms in each action as of the date of the mailing; (5) that both actions include claims under the HRL; (6) that only the *Krueger* action includes an ERISA claim; (7) that the Court has expressed no opinion as to the merits of the ADEA, HRL or ERISA claims; (8) that the individual is free to join either action (subject to the geographic limitations of *Carroll* ), no action, or to pursue an individual claim should he or she wish to do so; and (9) that if the individual signs the consent form for either action that he or she will be bound by the result.

For the foregoing reasons, the *Krueger* plaintiffs motion is granted and the *Carroll* plaintiffs motion is granted in part and denied in part. Defendants are ordered to release the names and addresses described above within 15 days of the Court's approval of a class definition (*see,* footnote 4, *supra* ). Defendants' counsel will draft a notice of the form and content described above (including an opt in form). Defendants' counsel will submit the proposed notice to plaintiffs' counsel within 10 days of the Court's approval of a class definition; plaintiffs' counsel will submit the proposed notice with their respective comments to the Court within 7 days of receipt of the proposed notice drafted by defendants. The Court will then determine and approve the

final form and content of the notice.

SO ORDERED.

FN1. The motions filed in the two actions are substantially similar except that in *Carroll* plaintiffs also request class certification pursuant to Fed.R.Civ.P. 23 and joint notice with *Krueger* to all parties who have previously opted in to either case (as distinct from notice only to those "similarly situated" who have not opted in to either action). The *Carroll* plaintiffs have since declined to press that part of their motion relating to class certification. Insofar as the motion in *Carroll* relating to form of notice differs from that in *Krueger,* the Court's disposition of the common aspects of the motions will, in effect, determine all issues raised as part of both motions.

FN2. Fed.R.Civ.P. 23, which generally governs class actions in federal court, is not applicable to plaintiffs' ADEA claims. As discussed *infra,* ADEA actions require parties to opt in whereas a pendent state law claim, such as the HRL claim, must be certified under Rule 23 which requires that a class member is a party unless he or she affirmatively "opts out" of the suit. At some future date, the Court may be called upon to decide whether to certify classes for the HRL and/or the ERISA claims pursuant to Fed.R.Civ.P. 23. Plaintiffs apparently concede that if an HRL class is certified, it should be limited to those employees who join the ADEA collective action. (Pls.' Mem. in Support *(Krueger),* at 2 n. 2.) *See Robinson v. Sizes Unlimited, Inc.,* 685 F.Supp. 442, 445-46 (D.N.J.1988) (determining that appropriate course of action where pendent jurisdiction over state law claims is asserted in ADEA collective action is to limit the class certified for the state law claim to ADEA class members who could then choose to opt out of the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1993 WL 276058 (S.D.N.Y.)
(Cite as: 1993 WL 276058 (S.D.N.Y.))

state law based class action). The Court
need not decide at this point whether it will
also limit the ERISA class action to those
individuals who opted into the ADEA ac-
tion; clearly, the issues of pendent jurisdic-
tion relevant to the HRL claims are not
present in relation to the ERISA action.

FN3. The Court stresses that no notice is to
be sent to those parties who have already
signed consents to be included in either ac-
tion.

FN4. Accordingly, the Court assumes that
the parties can agree as to an appropriate
procedure for defendants to release to
plaintiffs the names and last known resid-
ences of those individuals aged 40 or over,
employed as managers or in a managerial
capacity, who were involuntarily termin-
ated, discharged, demoted, reduced in pay,
forced to retire, furloughed or laid off from
employment by NYT as part of the FMP in
December 1992.

Since counsel for plaintiffs in both
*Krueger* and *Carroll* apparently agreed
at oral argument that (geographical lim-
itations and allegations relating to
ERISA apart) their class definitions are
coterminous in substance, such counsel
are to confer within 10 days of the date
of this Order and attempt to agree to a
precise class definition. That failing,
such counsel will, within 15 days of the
date of this Order, submit their compet-
ing definitions and supporting justifica-
tions to the Court. Any definition must
be approved by the Court, even if arrived
at by agreement between plaintiffs' re-
spective counsel.

S.D.N.Y.,1993.
Krueger v. New York Telephone Co.
Not Reported in F.Supp., 1993 WL 276058
(S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

UNITED STATES DISTRICT COURT      SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| VICENTE MARCHAN, *et al.*, | § |
| | § |
| Plaintiffs, | § |
| | § |
| *versus* | § |
| | § |
| | § |
| TAQMEX, INCORPORATED, *et al.*, | § |
| | § |
| Defendants. | § |

CIVIL ACTION H-02-4167

United States Courts
Southern District of Texas
ENTERED

DEC 17 2002

Michael N. Milby, Clerk of Court

## Order

By December 20, 2002, these will be done:

1.   Taqmex will give Marchan the payroll history for the employees of both stores
     from July 1, 1999, to October 30, 2002.

2.   Taqmex will give Marchan an organizational chart for both stores, including titles
     and pay rates for each position.

3.   Vicente Marchan and Jose Luis Marchan will disclose to Taqmex their sources of
     income and other jobs they have had, including the phone number of other
     employers and the names of coworkers.

A pretrial conference is set for:
                    January 3, 2003
                    9:00 a.m.
             Room 11122, Eleventh Floor
             United States Court House
                 515 Rusk Avenue
               Houston, Texas 77002.

Signed December __16__, 2002, at Houston, Texas.

_____
            Lynn N. Hughes
     United States District Judge


EXHIBIT

Switch Client | Preferences | Help | Sign Out

| **My Lexis**™ | Search | **Get a Document** | *Shepard's*® | More | **History** |
|---|---|---|---|---|---|
| | | | | | **Alerts** |

**FOCUS**™ Terms     Advanced... **Get a Document**     View Tutorial

Service: **Get by LEXSEE®**
Citation: **1999 U.S. DIST. LEXIS 18386**

*1999 U.S. Dist. LEXIS 18386, \**

GARY MERTZ, DEBORAH TURNER, WESLEY SIMMONS, Plaintiffs, v. TREETOP ENTERPRISES, INC., Defendant.

CASE NO. CV 96-B-1208-S

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION

1999 U.S. Dist. LEXIS 18386

March 2, 1999, Decided
March 3, 1999, Filed, Entered

**DISPOSITION:  [\*1]** Plaintiffs' Motion to Proceed as a Collective Action Under 29 U.S.C. § 216(b) and plaintiffs' Motion to Reconsider Denial of Plaintiffs' Motion to Amend Complaint DENIED. All claims of the opt-in plaintiffs DISMISSED WITHOUT PREJUDICE.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiffs brought a motion to proceed as a collective action under 29 U.S.C.S. § 216(b), and a motion to reconsider the denial of the motion to amend complaint in an action on behalf of themselves and others similarly situated, pursuant to § 16(b) of the Fair Labor Standards Act, 29 U.S.C.S. § 216(b).

**OVERVIEW:** Plaintiffs brought a motion to proceed as a collective action under 29 U.S.C.S. § 216(b), and a motion to reconsider the denial of the motion to amend complaint in an action on behalf of themselves and others similarly situated, pursuant to § 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b). The Fair Labor Standards Act established two prerequisites for participation in a private representative suit: the filing of a consent to become a party and a finding that the putative plaintiffs were similarly situated to the initial plaintiffs. Where it was clear that the claims of the proposed opt-in plaintiffs would present disparate factual and employment settings, certification should have been denied. The court concluded that the plaintiffs had failed to demonstrate that they were similarly situated to the putative opt-in plaintiffs and had failed to demonstrate any practice or pattern of class wide violation of the Fair Labor Standards Act by the defendant. Plaintiffs had the burden of demonstrating a reasonable basis for crediting their assertions that similarly situated individuals existed in the broad class they proposed.

**OUTCOME:** Plaintiffs' motions, to proceed as a collective action and to consider denial of their motion to amend complaint, were denied where plaintiffs had the burden of

**EXHIBIT**

**K**

demonstrating a reasonable basis for their assertions that similarly situated individuals existed in the class they proposed. All claims of the opt-in plaintiffs were dismissed.

**CORE TERMS:** opt-in, putative, manager, similarly situated, restaurant, hourly, collective action, employment practices, notice, interrogatories, certification, operational, assigned, representative suit, periods relevant, reasonable basis, contemporaneously, demonstrating, supervisors, discovery, commerce, certify, individual unit, individually responsible, failed to demonstrate, organizational, pre-existing, supervisory, franchisee, non-exempt

**LEXISNEXIS® HEADNOTES**    ⊟ **Hide**

Civil Procedure > Class Actions > Prerequisites > General Overview 🔗

Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview 🔗

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions 🔗

*HN1* ⬦ 29 U.S.C.S. § 216(b) provides the procedures for representative or class actions. It permits representative actions only where additional individuals are similarly situated. The Fair Labor Standards Act, 29 U.S.C.S. § 216(b), establishes two prerequisites for participation in a private representative suit: (1) The filing of a consent to become a party and (2) a finding that the putative plaintiffs are similarly situated to the initial plaintiff(s). Neither statutory requirement can be judicially waived. Trial courts have applied this two stage analysis in § 216(b) cases to determine whether additional persons wishing to participate are in fact similarly situated. The initial consideration for the court is whether a court approved notice should be sent to potential plaintiffs. At that stage the plaintiff has only to show a colorable basis for a representative suit. Courts have described this initial burden as not a difficult one to establish. More Like This Headnote | *Shepardize:* Restrict By Headnote

Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview 🔗

Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview 🔗

*HN2* ⬦ At the certification stage the trial court must evaluate the claims of the putative plaintiffs, consider contradictory evidence, and make appropriate findings of fact as to whether any opt-in plaintiffs are similarly situated. This two stage analysis has been adopted in the Brooks decision. The court in Brooks held that the second step in the § 216(b) representative process usually occurs after all persons have filed consents and discovery concerning the various allegations of potential class members have been taken. The court will then determine whether the case should proceed as a collective action. More Like This Headnote

Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview 🔗

*HN3* ⬦ Where it is clear that the claims of the proposed opt-in plaintiffs would present disparate factual and employment settings, certification should be denied. More Like This Headnote

Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview 🔗

*HN4* ⬦ The plaintiffs have the burden of demonstrating a reasonable basis for crediting their assertions that similarly situated individuals exist in the broad class that they

Get a Document - by Citation - 1999 U.S. Dist. LEXIS 18386    Page 3 of 6

Case 2:03-cv-02645-JHH  Document 23  Filed 01/17/12  Page 57 of 93 SD on 01/17/12  Page 57 of 93

propose. Plaintiffs must satisfy the standards set forth in Grayson decision by demonstrating a reasonable basis to support assertions of class wide violations. If the plaintiffs are not similarly situated, the trial court does not certify the class and the opt-in plaintiffs are dismissed without prejudice.  More Like This Headnote

**COUNSEL:** For GARY MERTZ, DEBORAH TURNER, WESLEY SIMMONS, plaintiffs: W Lewis Garrison, Jr, Kathryn H Sumrall, GARRISON & SUMRALL PC, Birmingham, AL.

For GARY MERTZ, DEBORAH TURNER, WESLEY SIMMONS, plaintiffs: Charles S Zimmerman, Barry G Reed, Robert R Hopper, Hart Robinovitch, ZIMMERMAN REED PLLP, Minneapolis, MN.

For TREE TOP ENTERPRISES, INC., defendant: Paul A Liles, Richard F Ogle, SCHOEL OGLE BENTON & CENTENO, Birmingham, AL.

For TREE TOP ENTERPRISES, INC., defendant: C Eric Stevens, TRABUE STURDIVANT & DEWITT, Hugh C Howser, Jr, Kara E Shea, MILLER MARTIN & TRABUE, Nashville, TN.

**JUDGES:** SHARON LOVELACE BLACKBURN, United States District Judge.

**OPINION BY:** SHARON LOVELACE BLACKBURN

**OPINION**

**MEMORANDUM OPINION**

This matter is before the court on the Motion of the plaintiffs to proceed as a collective action under 29 U.S.C. § 216(b) and the plaintiffs' Motion to Reconsider the denial of the Motion **[*2]** to Amend the Complaint. Upon consideration of the Memoranda in support of and in opposition to the Motion, the argument of counsel and the relevant law, the court is of the opinion that both Motions are due to be denied.

Findings of Fact

1. This is an action brought by three plaintiffs; Gary Mertz, Deborah Turner and Wesley Simmons against Treetop, on behalf of themselves and others similarly situated pursuant to § 16(b) of the Fair Labor Standards Act ("FLSA") (29 U.S.C. § 216(b)).

2. The named representative plaintiffs reside in the greater Birmingham, Alabama area, and each of them formerly were employed as hourly employees of the defendant Treetop.

3. Treetop is a Tennessee corporation engaged in business as a franchisee of Waffle House, Inc. ﹂ As a franchisee, Treetop has the right to own and operate Waffle House ﹍ restaurants in a portion of the states of Kentucky, Alabama, Mississippi, and Tennessee.

4. Treetop, for all periods relevant to this action, is an employer within the meaning of 29 U.S.C. § 203(d). Treetop is an enterprise engaged in commerce, or in the production of goods for commerce, within the meaning of 29 U.S.C. § 203 **[*3]** (r) and § 203(s)(1) and otherwise subject to the applicable provisions of the Act for the statutory period relevant hereto.

5. The representative plaintiffs, while employed by Treetop, served in the non-exempt employment position of either grill operator (cook) and/or server (waitress) during their entire period of employment. The representative plaintiffs were hourly employees.

6. The representative plaintiffs allege that while employed by the defendant they received no

compensation for work performed, were improperly paid, and/or were not paid for overtime compensation to which they were entitled.

7. By Order of the court entered December 18, 1996, a procedure for giving notice to potential opt-in plaintiffs was authorized and on or about January 21, 1997, counsel for the plaintiffs mailed out approximately 19,000 court approved notices and consents to present and past employees of the defendant Treetop.

8. 872 individuals returned consents which were filed with the court. On April 23, 1997, the putative opt-in plaintiffs were ordered to respond to a series of interrogatories submitted by the defendant on or before June 23, 1997. On June 27, 1997, the court entered an Order striking **[*4]** the consents of those putative opt-ins plaintiffs who did not respond to the interrogatories, which reduced the number of opt-ins to 549. The June 27, 1997, Order further granted plaintiffs until July 28, 1997, to clarify the responses to the interrogatories they had submitted. On July 28, 1997, the court entered an Order further reducing the number of putative opt-in plaintiffs to 535, based on the responses to the interrogatories filed.

9. The putative opt-in plaintiffs remaining in the case were employed as hourly, non-exempt, non-management employees as either grill operators (cooks) and/or sales persons (waitresses) in the restaurant units owned and operated by Treetop in Alabama, Mississippi, and Tennessee. At the time of the filing of the lawsuit, Treetop operated approximately 90 such Waffle House restaurants throughout Alabama, Mississippi, and Tennessee.

10. Treetop is divided into three operational areas and subdivided into several operational divisions in those areas which are in turn subdivided into numerous multi-unit districts. The organizational structure of Treetop changes from time to time, for instance, new units are added or pre-existing units are re-assigned **[*5]** to different districts or divisions. When these changes occur, new districts or divisions may be created and pre-existing districts or divisions may be eliminated. Treetop has gone through several such organizational structural changes during the last several years.

11. One unit manager is assigned to each restaurant unit in each district. This individual unit manager, under Treetop's Policy and Procedures, is responsible for hiring, training, disciplining, and firing of employees, as well as setting the work schedules for the hourly employees. The unit manager is responsible for answering employee questions concerning Treetop's pay policies and resolving payroll related problems for hourly employees. The individual unit manager assigned to each unit is charged with the responsibility in that unit of insuring that payroll and record keeping are in compliance with the FLSA. Although Treetop has enacted uniform pay policies applicable to all hourly employees, each unit manager is afforded a certain amount of discretion in administering these policies within his or her area of responsibility.

12. The representative plaintiffs and the putative opt-in plaintiffs were supervised by numerous **[*6]** different unit managers during their employment with Treetop throughout the states of Alabama, Mississippi, and Tennessee in the various restaurant units where they were employed.

13. Treetop, for the relevant period in question, had a large turnover in its management personnel, particularly at the level of unit manager.

14. Plaintiffs allege the violations of the FLSA by Treetop were implemented by the unit manager at the restaurant unit where the hourly employees were employed. Plaintiffs allege the supervisors to whom a unit manager reports were aware of these alleged illegal employment practices and did not prohibit such practices. Treetop has denied the existence of any illegal employment practices and further has denied that any of its supervisory management personnel had knowledge of, participated in, or condoned any illegal employment practices.

15. Plaintiffs submitted no evidence in support of their allegation of supervisory management's

knowledge of any illegal employment practices or of any practice or pattern of illegal employment practices within Treetop.

Conclusions of Law

1. *HN1* 29 U.S.C. § 216(b) provides the procedures for representative **[\*7]** or class actions. It permits representative actions only where additional individuals are "similarly situated." The FLSA establishes two prerequisites for participation in a private representative suit: (1) The filing of a consent to become a party and (2) a finding that the putative plaintiffs are "similarly situated" to the initial plaintiff(s). Neither statutory requirement can be judicially waived. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989); *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 265-266 (D. Minn.1991). After *Hoffmann-La Roche*, district courts have applied this two stage analysis in § 216(b) cases to determine whether additional persons wishing to participate are in fact "similarly situated." The initial consideration for the court is whether a court approved notice should be sent to potential plaintiffs. At that stage the plaintiff has only to show a colorable basis for a representative suit. Courts have described this initial burden as "not a difficult one to establish." *Bayles v. American Medical Response of Colorado*, 950 F. Supp. 1053, 1066 (D. Col. 1996).

2. The second stage of the analysis **[\*8]** follows completion of the notice phase. This is sometimes referred to as a "certification" hearing. *HN2* At the certification stage the district court must evaluate the claims of the putative plaintiffs, consider contradictory evidence, and make appropriate findings of fact as to whether any "opt-in" plaintiffs are similarly situated. *Severtson v. Phillips Beverage Co.*, 141 F.R.D. 276, 279 (D. Minn 1992); *see Hoffmann-La Roche*, 493 U.S. at 173. This two stage analysis has been adopted by this court in the case of *Brooks v. BellSouth Telecommunications, Inc.*, 164 F.R.D. 561, 566 (N.D. Ala. 1995). This court in *Brooks* held that the second step in the § 216(b) representative process usually occurs after all persons have filed consents and discovery concerning the various allegations of potential class members have been taken. *Id.* at 566. The court will then determine whether the case should proceed as a collective action. *Id.* In *Brooks*, this court refused to certify an ADEA collective action where discovery revealed the putative class was comprised of individuals in nine states, located under separate departments, **[\*9]** with different supervisors of the defendant employer. *Id.* at 569. The court held *HN3* where it is clear that the claims of the proposed opt-in plaintiffs would present disparate factual and employment settings, certification should be denied. *Id.*

3. The factual circumstances of the putative opt-in plaintiffs in this case is similar to the opt-in plaintiffs in *Brooks* and in the other cases cited therein. In this case, the named plaintiffs who reside in the greater Birmingham area, seek to represent individuals who worked in a multi-state geographical area, in different operational divisions of the defendant, in separate restaurant facilities, at different times, reporting directly to and under the direct supervision of numerous different unit managers assigned to each restaurant unit, who were each individually responsible for the implementation of appropriate management policies, practices, and procedures and were individually responsible to insure each hourly employee was compensated in accordance with the FLSA.

4. *HN4* The plaintiffs have the burden of demonstrating a reasonable basis for crediting their assertions that similarly situated individuals exist in the **[\*10]** broad class that they propose. *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983). Plaintiffs must satisfy the standards set forth in *Grayson v. K Mart*, 79 F.3d 1086 (11th Cir. 1996) by demonstrating a reasonable basis to support assertions of class wide violations. If the plaintiffs are not similarly situated, the district court does not certify the class and the opt-in plaintiffs are dismissed without prejudice. *Mooney v. Aramco Services Co.*, 54 F.3d 1207 (5th Cir. 1995).

5. The plaintiffs have failed to demonstrate that they are similarly situated to the putative opt-in plaintiffs and further have failed to demonstrate any practice or pattern of class wide

violation of the FLSA by the defendant.

6. Plaintiffs' Motion to Reconsider the denial of plaintiffs' Motion to Amend the Complaint and Motion to Proceed as a Collective Action are due to be denied. The claims of the opt-in plaintiffs are due to be dismissed without prejudice.

An Order consistent with this Opinion will be entered contemporaneously herewith.

**DONE** this 2nd day of March, 1999.

**SHARON LOVELACE BLACKBURN**

United States District Judge

   **[*11] ORDER**

In accordance with the Memorandum Opinion entered contemporaneously herewith, it is hereby **ORDERED** that plaintiffs' Motion to Proceed as a Collective Action Under 29 U.S.C. § 216(b) and plaintiffs' Motion to Reconsider Denial of Plaintiffs' Motion to Amend Complaint are hereby **DENIED**. All claims of the opt-in plaintiffs are **DISMISSED WITHOUT PREJUDICE.**

**DONE** this 2nd day of March, 1999.

**SHARON LOVELACE BLACKBURN**

United States District Judge

Service: **Get by LEXSEE®**
Citation: **1999 U.S. DIST. LEXIS 18386**
View: Full
Date/Time: Tuesday, January 17, 2012 - 4:45 PM EST

* Signal Legend:
- Warning: Negative treatment is indicated
Ⓠ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
✦ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
Ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

In                About LexisNexis  | Privacy Policy  | Terms & Conditions  | Contact Us
                  Copyright © 2012 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Switch Client | Preferences | Help | Sign Out

| My Lexis™ | Search | Get a Document | Shepard's® | More | | History |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | | Alerts |

FOCUS™ Terms     Search Within Original Results (1 - 10) ▼    View Tutorial
Advanced...

Source: **Legal > / . . . / > 5th Circuit - US Court of Appeals, District & Bankruptcy Cases, Combined** ⓘ

Terms: **name(roussell and brinker)** (Suggest Terms for My Search)

✔Select for FOCUS™ or Delivery
☐

*2011 U.S. App. LEXIS 19027, \*; 161 Lab. Cas. (CCH) P35,945; 18 Wage & Hour Cas. 2d (BNA) 304*

JENNIFER **ROUSSELL**, Plaintiff - Appellee v. **BRINKER** INTERNATIONAL, INCORPORATED, Defendant - Appellant

No. 09-20561 c/w No. 10-20614

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

2011 U.S. App. LEXIS 19027; 161 Lab. Cas. (CCH) P35,945; 18 Wage & Hour Cas. 2d (BNA) 304

September 14, 2011, Filed



**NOTICE:** PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**SUBSEQUENT HISTORY:** As Revised, September 15, 2011.

**PRIOR HISTORY:** [\*1]
Appeal from the United States District Court for the Southern District of Texas. USDC No. 4:05-CV-3733.
Roussell v. Brinker Int'l, iNC., 2010 U.S. Dist. LEXIS 36577 (S.D. Tex., Jan. 13, 2010)

**DISPOSITION:** AFFIRMED.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff waiters and waitresses at defendant restaurant chain sued their employer, claiming they were forced to share tips with ineligible employees in violation of the Fair Labor Standards Act (FLSA). Fifty-five plaintiffs succeeded at trial. Their employer challenged the collective action, the United States District Court for the Southern District of Texas's rulings, the jury's findings, and the award of attorney's fees.

**OVERVIEW:** Plaintiffs alleged that they did not retain all of their tips because they were forced to pool their tips with employees who did not customarily and regularly receive tips contrary to 29 U.S.C.S. § 203(m) which allowed pooling of tips among employees who received tips. The allegedly tip-ineligible employees at the heart of the case were known as "expediters" or "Quality Assurance" workers (QAs). The chain's arguments for decertification were persuasive enough to remove approximately 3,500 plaintiffs from the class. They were

unpersuasive as to the final 55, though, because evidence from each showed that they were similarly situated as they all were subjected to some form of managerial coercion in tipping QAs. There also was evidence that the QAs were similarly situated. A jury hearing evidence on 25 of 55 plaintiffs (45 percent) was sufficiently informed. The chain's argument on appeal was that the district court erred by preventing evidence of non-coercion from going to the jury. But the record revealed that it had repeatedly sought to present this evidence outside the presence of the jury. The district court did not err by finding a pattern of managerial coercion.

**OUTCOME:** The judgment was affirmed.

**CORE TERMS:** tip, server, coercion, restaurant, customer, pool, occupation, manager's, citations omitted, mandatory, non-testifying, customarily, interaction, coerced, similarly situated, abuse of discretion, quotation marks, regularly, tipping, testifying, matter of law, collective action, attorney's fees, de novo, deposition, opt-in, tipped, dishwashers, non-coercion, tip-sharing

### LEXISNEXIS® HEADNOTES                                                    ≡ **Hide**

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions 📑

*HN1* ⬇ See 29 U.S.C.S. § 216(b).

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions 📑

*HN2* ⬇ Prospective claimants must opt-in under the Fair Labor Standards Act (FLSA), fundamentally distinguishing FLSA collective suits from Fed. R. Civ. P. 23 class actions in which a prospective plaintiff must opt-out. FLSA collective actions bind only the opt-in plaintiffs. More Like This Headnote | *Shepardize:* Restrict By Headnote

Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Minimum Wage 📑

Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Regular Rate 📑

*HN3* ⬇ The Fair Labor Standards Act permits employers to pay a sub-minimum wage to employees who customarily and regularly receive tips. 29 U.S.C.S. § 203(m). Employers may not avail themselves of the sub-minimum wage unless all tips received by a tipped employee have been retained by the employee, except that § 203(m) shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips. § 203(m). More Like This Headnote

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions 📑

*HN4* ⬇ If one zooms in close enough on anything, differences will abound; but plaintiffs' claims need to be considered at a higher level of abstraction. There is need for care in evaluating distinctions among employees, but those distinctions must make a difference relevant to the legal issues presented. More Like This Headnote

Civil Procedure > Appeals > Standards of Review > General Overview 📑

Civil Procedure > Appeals > Standards of Review > Harmless & Invited Errors > Prejudicial Errors 📑

*HN5* ⬇ A circuit court of appeals' review of a trial plan is deferential because the trial judge is in a much better position than an appellate court to formulate an appropriate methodology for a trial. Any arguable error is presumed harmless until shown to be

prejudicial.  More Like This Headnote

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

*HN6* A circuit court of appeals reviews evidentiary rulings for abuse of discretion.  More Like This Headnote

Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review

Civil Procedure > Appeals > Standards of Review > De Novo Review

*HN7* A circuit court of appeals reviews a district court's findings of fact for clear error, and conclusions of law and mixed questions of law and fact de novo.  More Like This Headnote

Civil Procedure > Trials > Judgment as Matter of Law > Judgments Notwithstanding Verdicts

Civil Procedure > Appeals > Standards of Review > De Novo Review

*HN8* A motion for judgment as a matter of law in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict. The motion should be granted only when the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict. A circuit court of appeals reviews the denial of the motion de novo, considering all the evidence and drawing reasonable inferences in the light most favorable to the verdict.  More Like This Headnote

Civil Procedure > Appeals > Standards of Review > De Novo Review

*HN9* A circuit court of appeals reviews a district court's legal rulings de novo.  More Like This Headnote

Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview

*HN10* Courts construe the Fair Labor Standards Act liberally in favor of employees.  More Like This Headnote

Civil Procedure > Trials > Jury Trials > Jury Deliberations

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

*HN11* A circuit court of appeals reviews a district court's answering of a jury question for abuse of discretion, granting the court wide latitude in framing an answer.  More Like This Headnote

Civil Procedure > Summary Judgment > Appellate Review > Standards of Review

*HN12* Summary judgment rulings are reviewed de novo, applying the same standard as the district court.  More Like This Headnote

Civil Procedure > Summary Judgment > Standards > Appropriateness

*HN13* Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The facts and evidence must be taken in the light most favorable to the non-

movant.  More Like This Headnote

Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview

*HN14* See 29 C.F.R. § 531.56(e).

Civil Procedure > Summary Judgment > Appellate Review > Standards of Review

Civil Procedure > Summary Judgment > Standards > Appropriateness

*HN15* Summary judgment or a directed verdict is mandated where the facts and the law
will reasonably support only one conclusion. Review of such a mixed question is
plenary. A circuit court of appeals will review this issue de
novo.  More Like This Headnote

Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview

*HN16* Even when nontip-producing duties are related to a tipped occupation, if they are
performed for an entire shift, the employee is not engaged in a tipped occupation
and is not subject to the tip credit for that shift.  More Like This Headnote

Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > General Overview

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review

*HN17* A district court's determination of attorneys' fees is reviewed for abuse of discretion,
and the findings of fact supporting the award are reviewed for clear error. A district
court abuses its discretion when it bases its decision on an erroneous legal
conclusion or on a clearly erroneous finding of fact.  More Like This Headnote

Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Reasonable Fees

*HN18* While rulings on fee awards should not consume more paper than did the cases
from which they arose, the district court's findings and reasons must be complete
enough to assume a review which can determine whether the court has used proper
factual criteria in exercising its discretion to fix just compensation. The essential
goal in shifting fees (to either party) is to do rough justice, not to achieve auditing
perfection, and therefore substantial deference is owed the district court's overall
sense of a suit. Applying the usual method, the district court first calculates the
lodestar by multiplying the reasonable hourly rate by the number of hours
reasonably expended. It then evaluates whether the lodestar should be adjusted
based on the Johnson factors, the most important of which is the degree of success
obtained.  More Like This Headnote

Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Statutory Awards

Labor & Employment Law > Wage & Hour Laws > Remedies > Costs & Attorney Fees

*HN19* Reasonable attorney's fees and costs are authorized by the Fair Labor Standards
Act. 29 U.S.C.S. § 216(b).  More Like This Headnote

**JUDGES:** Before SMITH ▾, SOUTHWICK ▾, and GRAVES, Circuit Judges.

**OPINION**

## OPINION

PER CURIAM: *

## FOOTNOTES

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Waiters and waitresses at Chili's Restaurants sued their employer, claiming they were forced to share tips with ineligible employees. Fifty-five plaintiffs succeeded at trial. Their employer challenges the collective action, the district court's rulings, the jury's findings, and the award of attorney's fees. We AFFIRM.

FACTUAL AND PROCEDURAL HISTORY

This is a collective action brought by waiters and waitresses (together, "servers") of Chili's Restaurants against their employer, Brinker International ┙Payroll Company, L.P. The servers alleged that Brinker violated the Fair Labor Standards Act ("FLSA") when its managers coerced servers to pay a portion of their tips to employees who were not entitled to tips.

One provision of the FLSA provides for collective actions:

> *HN1*⚡An action to recover the liability prescribed in [this section]  **[*2]** may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). As the last sentence just quoted provides, *HN2*⚡prospective claimants must opt-in under the FLSA, fundamentally distinguishing these suits from Rule 23 class actions in which a prospective plaintiff must opt-out. *Sandoz v. Cingular Wireless LLC,* 553 F.3d 913, 916 (5th Cir. 2008). Collective actions bind only the opt-in plaintiffs. *Id.*

*HN3*⚡The FLSA permits employers to pay a sub-minimum wage to employees who "customarily and regularly receive tips." 29 U.S.C. § 203(m). Employers may not avail themselves of the sub-minimum wage unless "all tips received by [a tipped] employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." *Id.*  **[*3]** The plaintiffs alleged that they did not retain all of their tips because they were forced to pool their tips with employees who did not customarily and regularly receive tips.

The allegedly tip-ineligible employees at the heart of this case are known as "expediters" or "Quality Assurance" workers ("QAs"). According to Brinker's corporate documents and job descriptions, QAs at Chili's inspect completed food orders from the kitchen, garnish plates, and delegate to servers and bussers the delivery of food to customers. A central question is whether QAs "customarily and regularly" receive tips or are otherwise entitled to share in a tip pool.

Brinker's policy is that servers may voluntarily tip QAs. A company memo acknowledges that "QA positions (with little to no customer interaction), dishwashers, cooks, and janitors" were "occupations that would invalidate a tip pool." The issue was instead whether Chili's managers

had a common practice of coercing tip-sharing.

Early in the litigation, the parties agreed to send an opt-in notice to all Chili's servers nationwide. Approximately 3,556 servers opted-in as plaintiffs. During discovery, the parties deposed more than 50 plaintiffs and nearly **[*4]** 100 other persons, such as the deposed plaintiffs' managers and coworkers. After discovery, and in a series of orders, the district court decertified the 3,556-person class, finding the question of coercion too individualized to be tried in one action. It retained 55 plaintiffs who had been deposed, though, concluding that their evidence showed they were similarly situated.

The plaintiffs proposed to call 14 plaintiffs to testify as representatives of the 55-person class. Before trial, Brinker conceded that these 14 plaintiffs had been coerced by their managers into tipping QAs. The jury trial was thus limited to Brinker's affirmative defense, whether QAs were otherwise entitled to share in a mandatory tip pool. The parties stipulated to damages.

The jury answered two interrogatories. It found the 14 plaintiffs to be representative. It also found that Brinker had not proven "that QAs/Expos work in positions or an occupation that customarily and regularly receive tips." The court accepted these findings, denied Brinker's post-trial motions, and awarded attorney's fees. Brinker timely appealed.

DISCUSSION

*I. Decertification*

Brinker argues that the district court should have decertified the **[*5]** 55-person collective action. It claims there was no common evidence — no "single, uniform, nationwide policy or practice of coerced tip-sharing" — because each coercive act was carried out by a "rogue manager" at a different restaurant. A similar argument is made as to Brinker's affirmative defense, which turns on a QA's individualized job duties and the amount of time spent performing those duties. Brinker asserts the dominance of individual situations means the collective trial was error. [1] The court also erred, Brinker argues, in going to trial without approving any of the plaintiffs' proposed trial plans.

**FOOTNOTES**

**1** Brinker claims under this heading that the admission of a company memorandum interpreting the FLSA, as well as a QA job description, was erroneous and prejudicial. To the extent Brinker can advance an argument for review through footnotes, we reject it because the admission of these documents was within the district court's discretion.

Like several other circuits, this court has never set a legal standard for collective-action certification. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003); **[*6]** *see Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259-60 & n.38 (11th Cir. 2008) (collecting cases). We have declined to choose between two standards, one involving a multi-factor "similarly situated" test, and the other akin to the standard for Rule 23 class actions. *Mooney*, 54 F.3d at 1213-14 & n.7. The district court in this case applied the "similarly situated" analysis. It considered: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *See id.* at 1213 n.7. Brinker challenges only the court's application of this standard. We review for abuse of discretion. *Id.* at 1212.

Brinker's arguments for decertification were persuasive enough to remove approximately 3,500 plaintiffs from the class. They are unpersuasive as to the final 55, though, because evidence from each showed that they were similarly situated. All were subjected to some form of

managerial coercion in tipping QAs. Their managers had directed them to tip QAs, collected tips for QAs, suggested tipping QAs, threatened to discipline them for not **[*7]** tipping QAs, or trained them to tip QAs, among other actions. Although there was no corporate policy mandating tip-sharing, the district court found the deposition testimony indicative of a pattern. This conclusion was not an abuse of discretion.

There also was evidence that the QAs were similarly situated. The parties agreed that QAs consistently performed certain functions, and that there was one company-wide job description. Several plaintiffs and some of Brinker's witnesses agreed that "QAs never leave the pass-through area or interact with customers only rarely." Corporate memoranda and documents also painted a picture of QAs as monolithic. Brinker "exaggerates the factual differences among employees on various shifts and in different departments. *HN4* If one zooms in close enough on anything, differences will abound; . . . [b]ut plaintiffs' claims need to be considered at a higher level of abstraction." *Frank v. Gold'n Plump Poultry, Inc.,* No. 04-CV-1018, 2007 U.S. Dist. LEXIS 71179, 2007 WL 2780504, at *4 (D. Minn. 2007). There is need for care in evaluating distinctions among employees, but those distinctions must make a difference relevant to the legal issues presented.

We would give Brinker's arguments more **[*8]** credence if this case had proceeded on a truly representative basis. Instead, all 55 plaintiffs presented individualized evidence through testimony to the jury or deposition excerpts to the court. The plaintiffs claim Brinker was allowed to call witnesses to rebut the evidence as to all 55 plaintiffs, ensuring that the plaintiffs could not bury bad facts with the non-testifying plaintiffs. They further assert that after both sides presented their cases, the jury had heard evidence about 25 of the 55 plaintiffs, or 45 percent, and the court considered evidence on the remainder.

In any event, 55 separate trials would not have been justifiable under our FLSA caselaw. Section 216(b) collective actions are intended "to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." *Sandoz,* 553 F.3d at 919 (quoting *Prickett v. DeKalb Cnty,* 349 F.3d 1294, 1297 (11th Cir. 2003)).

This suit validly proceeded as a collective action.

*II. Representative Testimony*

Brinker argues that the court erred by allowing the plaintiffs to hand-pick 14 "perfect plaintiffs" to testify, as opposed to a random sample. It contends **[*9]** that these 14 plaintiffs were unrepresentative and could not be imputed to the 41 non-testifying plaintiffs.

The district court had to develop a plan for this complex case. *HN5* Our review of the plan itself is deferential because "the trial judge is in a much better position than an appellate court to formulate an appropriate methodology for a trial." *In re Chevron U.S.A., Inc.,* 109 F.3d 1016, 1018 (5th Cir. 1997). Any arguable "error is presumed harmless until shown to be prejudicial." *McClain v. Lufkin Indus., Inc.,* 519 F.3d 264, 282 (5th Cir. 2008) (citations omitted).

Before trial, Brinker requested representative testimony. The essence of its argument now is that the 14 testifying plaintiffs presented an unrepresentative slice of the evidence. But Brinker does not explain how the non-testifying plaintiffs would have been different, even though it deposed them and witnesses from all of their restaurants.

The plaintiffs assert that the jury heard evidence regarding a total of 25 plaintiffs. Evidence was presented to the court via deposition excerpts on the remaining 30. Thus, there was no *In re Chevron* problem of having a few handpicked "perfect plaintiffs" speculate as to several thousand **[*10]** unknown persons. A jury hearing evidence on 25 of 55 plaintiffs (45 percent) was sufficiently informed.

Brinker also does not state what the district court should have done. Within a few sentences in its appellate brief, Brinker endorses "random selection using competent scientific or statistical analysis," then argues that statistical sampling would not have been appropriate here because each server's experience was different. We note that Brinker originally opposed statistical sampling.

There was no reversible error as to this issue.

*III. Evidence on Coercion*

Brinker argues that its due process rights were violated when it was prevented from presenting evidence to the jury that the non-testifying plaintiffs were not coerced to share tips. Although Brinker conceded that the 14 testifying plaintiffs had been coerced, it never conceded that the 41 non-testifying plaintiffs had been coerced. Brinker cites its proffer of evidence on non-coercion, and specifically the deposition of Ted Davis, a non-testifying plaintiff who stated that his managers had never told him or encouraged him to tip QAs.

**HN6** This court reviews evidentiary rulings for abuse of discretion. *Lyondell Chem. Co. v. Occidental Chem. Corp.,* 608 F.3d 284, 295 (5th Cir. 2010); **[*11]** *see Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.,* 597 F.3d 729, 740 (5th Cir. 2010) (same for district court's enforcement of a pretrial order).

Before trial, Brinker conceded that the 14 testifying plaintiffs were "coerced" under the district court's definition. It "concede[d] for purposes of trial that the fourteen opt-in plaintiffs designated to testify at trial were not 'free from any coercion whatsoever.'" Brinker acknowledged that the "principal issue remaining for trial" would be its "QA eligibility defense."

Brinker did not concede that the other 41 plaintiffs had been coerced. The meaning of its reservation is unclear. By that point, the court had already ruled that the trial would proceed by representative proof. If the 14 representative plaintiffs did not need to present evidence of coercion at trial, it is not clear how the remaining 41 plaintiffs would get such evidence before the finder of fact.

A week later, Brinker filed a motion *in limine* seeking the following:

> Defendant requests that the Court enter an Order to exclude and bar named-plaintiff Jennifer Roussell and all opt-in plaintiffs who are participating in this trial, as well as their counsel and all witnesses called **[*12]** on their behalf, from making any mention of, or conducting any interrogation regarding, or otherwise bringing before the jury, directly or indirectly, through documentary or testimonial evidence or otherwise, matters concerning Defendant coercing or forcing those Plaintiffs to share tips with QAs or involuntarily to "tip out" QAs, as that issue would no longer be part of this case.

The language is vague on whether the emotion applied to non-testifying plaintiffs. It sought to bar plaintiffs' counsel from presenting coercion evidence as to the 14 testifying plaintiffs but not the remaining 41. That result would defeat the purpose of proceeding on a representative basis. The motion claimed there was "one issue remaining to be tried — whether Defendant's QAs were eligible to participate in tip pools." The motion was granted.

Immediately after seating the jury, the court and the parties agreed that Brinker could make an offer of proof outside the presence of the jury regarding the non-testifying plaintiffs' non-coercion. The purpose was apparently to allow the court to decide whether the 14 plaintiffs were representative of all 55 plaintiffs. During trial, though, the court called for another **[*13]** discussion, finding misapprehension between the parties; both were objecting to each

other's attempted presentation of coercion evidence. Brinker once again confirmed that "the only issue for the jury was going to be the QA issue."

Brinker's argument on appeal is that the court erred by preventing evidence of non-coercion from going to the jury. But the record reveals that Brinker repeatedly sought to present this evidence outside the presence of the jury. Brinker cannot now claim this was error.

*IV. Brinker's Concession*

Brinker argues that the court erred in extrapolating its concession to the 41 non-testifying plaintiffs. "There was no evidentiary basis to support a class-wide coercion finding, as the testifying opt-ins admitted that they had no knowledge of tip-sharing outside of their own restaurants." It asserts that the district court ruled on coercion as a matter of law, when it should have been a factual matter for the jury. Brinker contends that the court's ruling relieved the plaintiffs from proving "both individual causation and class-wide liability."

*HN7* This court reviews "the district court's findings of fact for clear error, and conclusions of law and mixed questions of law **[*14]** and fact de novo." *French v. Allstate Indem. Co.,* 637 F.3d 571, 577 (5th Cir. 2011).

The district court was in an unenviable position. Brinker did not want to try the case with all 55 plaintiffs, but objected to using representative testimony. Brinker conceded coercion of the 14 testifying plaintiffs, but that left no avenue for the 41 non-testifying plaintiffs to prove coercion through live testimony. The finding was reasonably left to the trial court.

The court's resolution of this dilemma contains both factual and legal determinations. As a factual matter, it found Brinker's proffer of non-coercion "insufficiently persuasive" to warrant reversing its previous ruling that all 55 plaintiffs were similarly situated. As a legal matter, it found Brinker's arguments for decertification unconvincing and kept the case as a collective action. It also upheld the jury's factual findings that the 14 testifying plaintiffs were representative and that QAs were ineligible to join a mandatory tip pool.

The court did not err. As we have described, evidence from all 55 plaintiffs was presented through their depositions, and controverting evidence from other witnesses (coworkers or managers) at their **[*15]** respective restaurants was also presented. The district court sifted through the depositions and affirmed its previous decision that there was a pattern of managerial coercion at Chili's.

Brinker's argument that the court made a factual finding "as a matter of law" is illusory. The record reveals that Brinker asked the court to rule as a matter of law. Brinker cannot complain of an error, if any, that it invited.

*V. QA Tip Eligibility*

Brinker claims the district court erred when it denied Brinker's motions for judgment as a matter of law and a new trial on the issue of QA tip eligibility. It argues that its witnesses provided uncontested evidence that some QAs "performed customer service duties sufficient to meet or exceed any reasonable legal requirement to allow them to participate in mandatory tip pools." This is a sufficiency-of-the-evidence challenge to the jury's finding that QAs were not eligible to participate in mandatory tip pools.

*HN8* "A motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Allstate Ins. Co. v. Receivable Fin. Co.,* 501 F.3d 398, 405 (5th Cir. 2007) (quotation **[*16]** marks and citation omitted). The motion should be granted "only when the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict." *Id.* (quotation marks and citation omitted). This court reviews the denial of the motion *de novo*, considering all the evidence and

drawing reasonable inferences in the light most favorable to the verdict. *Id.*

We are unconvinced that Brinker has met the high standard required of sufficiency challenges. The jury could have concluded that the witnesses Brinker cites in its brief were outliers or unbelievable. Accepting Brinker's recitation of the testimony, even if some QAs interacted with customers, they still might not "customarily and regularly" receive tips. 29 U.S.C. § 203(m). We find evidence jurors could accept to support that QAs could not participate in a mandatory tip pool.

Brinker had the burden to prove it operated a legal tip pool, but failed to convince the jury of QAs' eligibility. Viewing the evidence in the light most favorable to the verdict, Brinker's insufficiency argument fails.

*VI. The District Court's Legal Interpretations*

A. Defining "coercion" and "voluntary."

Brinker argues that **[*17]** the district court's definition of "coercion" was overly broad. It asserts that the court allowed servers to prove coercion by showing any managerial suggestion, recommendation, facilitation, or implied remark, which it says permitted them to avoid causation. Brinker seeks an objective definition, specifically, whether a reasonable server could show that a manager "dissuaded him, by force or threat, from believing that tipping out a QA was voluntary." The plaintiffs reframe the dispute as one about the word "voluntary," and claim the court correctly defined "voluntary" as "free from any coercion whatever and outside of any formalized arrangement or as a condition of employment."

*HN9* We review a district court's legal rulings *de novo. French,* 637 F.3d at 577. The FLSA does not define either "coercion" or "voluntary." The district court relied upon the Department of Labor's "Field Operations Handbook:"

> [I]t does not appear that the Congress, even in requiring as a general principle that tipped employees retain all their tips, intended to prevent tipped employees from deciding, free from any coercion whatever and outside of any formalized arrangement or as a condition of employment, what to **[*18]** do with their tips, including sharing them with whichever co-workers they please.

Department of Labor Field Operations Handbook § 30d04(c) (Dec. 9, 1988), *available at* http://www.dol.gov/whd/FOH/FOH_Ch30.pdf.

The court found the Handbook persuasive and held that servers may share tips as long as their choice is "free from any coercion whatever and outside any formalized arrangement or as a condition of employment." It agreed with Brinker that this was an objective inquiry as in Title VII; only a manager's actions that "might well" affect the server were actionable. *See Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 69, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).

As for specific examples of coercive actions — where the server "might well" be influenced to pay tips involuntarily — the court looked to Brinker's internal memos. Brinker's "General Guidelines for Tip Pooling" state that "[a] practice is voluntary when the employee has full control over his/her tips without any recommendations, suggestions, requirements, or implications by management or trainers." The document used similar terms to describe when tip-pooling would be deemed "mandatory."

*HN10* "[W]e construe the FLSA liberally in favor of employees . . . ." *Allen v. McWane, Inc.,* 593 F.3d 449, 452 (5th Cir. 2010) **[*19]** (quotation marks and citation omitted). Applying that construction to the FLSA, the district court did not err in relying upon the Handbook language. In

this case in particular, it is relevant that the court adopted Brinker's own definitions for when a manager's actions would make tipping "mandatory" and not "voluntary."

B. Direct customer interaction.

Brinker next argues that the court erred by finding "the extent of [an employee's] direct customer interaction" relevant to whether she can share in tips. It contends that "employees who perform important customer service functions are eligible to share tips regardless of whether they have direct customer interaction or not." We review *de novo* this legal question. *French*, 637 F.3d at 577.

The FLSA does not specify which employees may share in a tip pool; it merely authorizes tip-pooling "among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m). Customarily, front-of-the-house staff like servers and bartenders receive tips. Back-of-the-house staff like cooks and dishwashers do not, and thus cannot participate in a mandatory tip pool.

Direct customer interaction is relevant because it is one of the factors distinguishing **[*20]** these two categories of workers. "One can distinguish hosts from restaurant employees like dishwashers, cooks, or off-hour employees like an overnight janitor who do not directly relate with customers at all." *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 550 (6th Cir. 1999) (holding that salad preparers were not tip-eligible) (citation omitted).

We conclude that the district court reasonably found direct customer interaction "highly relevant" to tip-eligibility. It neither made direct interaction a prerequsite — as claimed by *amici* — nor did it reject Brinker's suggestion that the performance of "important customer service functions" also is relevant to tip-eligibility. Brinker has not advanced a compelling reason why direct customer interaction should not be considered.

*VII. Answering a Jury Question*

Brinker contends that the district court erroneously responded to a jury question. **HN11** We review the district court's answering of a jury question for abuse of discretion, granting the court "wide latitude" in framing an answer. *United States v. Skelton,* 514 F.3d 433, 446 (5th Cir. 2008).

Before trial, the court found industry practice could "provide some evidence of the restaurant industry's **[*21]** conclusion as to whether [QAs'] job duties are more like servers, busboys, or service bartenders or instead are more like cooks, dishwashers, and laundry room attendants." The district court permitted testimony about similar positions at other restaurants. Plaintiff Roussell testified, over Brinker's objection, that QAs at Applebee's "did essentially the same things" as QAs at Chili's. Other plaintiffs testified similarly.

After retiring to deliberate, the jury asked the court whether "the 'occupation' that regular[ly] and customarily receives tips [is] specific to Chili's (Brinker) or this or similar positions in other restaurants?" After a conference with the attorneys, the court gave an answer that included this:

> The occupation/positions of QA/Expo is not necessarily unique to Chili's (Brinker). However, as you consider whether there was competent evidence and/or testimony presented in this case that relates to QA/Expo-type occupation/positions at other restaurants, you should factor into your consideration whether the QA/Expo-type occupation/positions in those other restaurants is similar or dissimilar — to the extent the evidence or testimony allows you to make that determination **[*22]** — to the QA/Expo occupation/positions at Chili's (Brinker). . . .

The court's careful answer was not an abuse of discretion. Jurors were told to evaluate the

evidence themselves. There was evidence the position of QA was common in the restaurant industry, even if there were differences in the tasks performed by QAs at other restaurants. The jury could consider Brinker's impeachment of each witness who testified about other restaurants, and determine how important those differences were. This is not reversible error.

*VIII. The 'Related Duties' Defense*

Brinker asserts that the court erred by rejecting its "related duties" defense during summary judgment. Brinker claimed that when a server occasionally worked an entire shift as a QA, the employee is a "server" for tipping purposes and may share in a mandatory tip pool. There was evidence that servers performed the work of a QA during the course of their server duties, and therefore, Brinker argues, "the duties of the two positions were sufficiently related such that a Server who took a turn working a shift as a QA could be deemed to remain in the occupation of Server." It asserts that this was a factual issue for the jury.

*HN12* Summary judgment **[*23]** rulings are reviewed "*de novo*, applying the same standard as the district court." *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010). *HN13* "Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The facts and evidence must be taken in the light most favorable to the non-movant." *Id.* (citation omitted).

Federal regulations shed light on this issue:

> *HN14* (e) Dual jobs. In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. . . . He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses.

29 C.F.R. § 531.56(e). We give the regulation deference. *See Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 877, 879-81 (8th Cir. 2011) (granting both the regulation and the Department of Labor's interpretations in its Field Operations Handbook deference, and holding **[*24]** the interpretations reasonable).

A Department of Labor Opinion Letter states that a dual-job employee may continue to receive tips when he performs tasks incidental to his usual job, but may not receive tips "where there is a clear dividing line between the types of duties [performed in the two jobs] . . . ." U.S. Dep't of Labor, Wage & Hour Div., Op. Ltr. WH-502, 1980 DOLWH LEXIS 1, 1980 WL 141336 (Mar. 28, 1980).

Undisputed facts show that the servers clocked in as QAs for an entire shift, under the QA job code, performed QA duties only, and were paid the full minimum wage. These shifts were not assigned to all servers. We agree that there was a clear dividing line between these jobs.

The question remains whether the court's determination that there is a "clear dividing line" between the two jobs was a legal conclusion or a factual determination inappropriate for summary judgment. The question initially appears to be a factual one. On the other hand, answering the question requires applying facts to a standard expressed in an Opinion Letter.

The issue likely is better considered as a mixed question of law and fact. As we held in a Jones Act case, though, *HN15* "summary judgment or a directed verdict is mandated **[*25]** where the facts and the law will reasonably support only one conclusion. Our review of such a mixed question is plenary." *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 373 (5th Cir. 2001)

(quotation marks and citations omitted). We will review this issue *de novo. Williams v. Phillips Petrol. Co.*, 23 F.3d 930, 934 (5th Cir. 1994).

The undisputed facts fit cleanly into the Department of Labor guidance. A server working a QA shift, making QA pay, and performing QA duties, is not spending "part of her time" on QA work — she is a QA for that shift. We agree that *HN16*⚓ "even when the nontip-producing duties are related to a tipped occupation, if they are performed for an entire shift, the employee is not engaged in a tipped occupation and is not subject to the tip credit for that shift." *Fast*, 638 F.3d at 880. It follows that servers working an occasional QA shift are, just like QAs, ineligible to participate in mandatory tip pools during those shifts. Had this issue gone to the jury, "the facts and the law will reasonably support only one conclusion." *Roberts*, 266 F.3d at 373. Brinker's inability to present this to the jury was harmless. *See* Fed. R. Civ. P. 61.

*IX. Attorney's Fees*

Brinker argues **[*26]** that the award for attorney's fees was excessive. It contends that the district court failed to compare what the plaintiffs sought in their complaint with what they obtained at trial. Brinker asserts that the plaintiffs' fees should be substantially reduced because they lost on certification and recovered a fraction of the money they thought the case was worth. Brinker does not challenge the award for costs or expenses.

*HN17*⚓ "A district court's determination of attorneys' fees is reviewed for abuse of discretion, and the findings of fact supporting the award are reviewed for clear error." *McClain*, 519 F.3d at 284. "A district court abuses its discretion when it bases its decision on an erroneous legal conclusion or on a clearly erroneous finding of fact." *Jeter v. Astrue*, 622 F.3d 371, 376 (5th Cir. 2010) (quotation marks and citations omitted).

*HN18*⚓ While rulings on fee awards should not "consume more paper than did the cases from which they arose[,] . . . the district court's findings and reasons must be complete enough to assume a review which can determine whether the court has used proper factual criteria in exercising its discretion to fix just compensation." *In re : High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 228-29 (5th Cir. 2008) **[*27]** (quotation marks and citations omitted). "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection," and therefore "substantial deference" is owed the district court's "overall sense of a suit." *Fox v. Vice*, 131 S. Ct. 2205, 2216, 180 L. Ed. 2d 45 (2011).

Applying our usual method, the district court first calculates the "lodestar" by multiplying the reasonable hourly rate by the number of hours reasonably expended. *McClain*, 519 F.3d at 284. It then evaluates whether the lodestar should be adjusted based on the *Johnson* factors, the most important of which is the degree of success obtained. *Abner v. Kansas City So. Ry. Co.*, 541 F.3d 372, 376-77 (5th Cir. 2008) (citing *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974)). The only *Johnson* factor relevant to this appeal is "[t]he amount involved and the results obtained." *Johnson*, 488 F.2d at 718.

*HN19*⚓ Reasonable attorney's fees and costs are authorized by the FLSA. 29 U.S.C. § 216(b). The parties argued the fee dispute in two stages. The first resolved the fees and costs incurred through a portion of the post-trial motions; the second resolved everything afterward. Brinker preserved its **[*28]** objections by filing notices of appeal after each award was entered.

During the first round, the plaintiffs sought $ 1.81 million in attorney's fees. Brinker challenged whether the claimed hours were reasonable and necessary given the success obtained. A hearing was held. In a detailed, 28-page opinion, the court sifted through the competing evidence on each part of the request, found that "both parties have taken rather extreme positions on" the degree of success factor, and reduced the plaintiffs' bill in two ways.

The court first reduced by 209.2 hours the time recoverable for document review, then broke out that reduction by occupation. On the degree of success factor, although the large class was

ultimately decertified, the court said it "was a very close call," "was not apparent from the onset of the litigation," and happened "incrementally, over the course of three separate orders, and after much discussion and briefing by the parties." Therefore substantial hours were justified, as well as entangled with the work done on the 55 plaintiffs that went to trial. Given that the plaintiffs' success was "not that which was originally sought," the court reduced the lodestar amount by **[*29]** another 20 percent beyond the plaintiffs' reductions and the court's specific reduction. The award during this round was approximately $ 1.43 million.

During the second round of adjudication, the court awarded $ 90,000 for fees incurred after trial — much of which was spent arguing over fees.

The court took into account the plaintiffs' lack of success before trial. It considered that the plaintiffs lost on class certification and reduced their fees accordingly. Second, the amount sought in a plaintiff's complaint is relevant to the degree of success obtained, but is ultimately only one of several factors to consider, in the district court's "measured exercise of discretion." *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992).

It is important for the district court to explain its fee award with clarity, "carefully considering the successful and unsuccessful portions of the case as well as the reasonable and unreasonable fees claimed by Plaintiffs." *Abner*, 541 F.3d at 384 (quotation marks and citation omitted). The district court's thorough analysis in the present case was sufficient. Its order displayed a detailed understanding of the successful and unsuccessful portions of this case, drawn from **[*30]** years of managing it first-hand. The district court also noted that Brinker never offered to settle the case; thus, the plaintiffs could not have reduced their costs to a level more appropriate with the results achieved.

The award was not an abuse of discretion.

AFFIRMED.

> **Source:**   **Legal > / . . . / > 5th Circuit - US Court of Appeals, District & Bankruptcy Cases, Combined  i**
>
> **Terms:**   **name(roussell and brinker)**  (Suggest Terms for My Search)
> **View:**  Full
> **Date/Time:** Tuesday, January 17, 2012 - 2:48 PM EST

* Signal Legend:
- Warning: Negative treatment is indicated
- **Q** - Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- **A** - Citing Refs. With Analysis Available
- **i** - Citation Information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

In                        About LexisNexis  | Privacy Policy  | Terms & Conditions  | Contact Us
                          Copyright ©  2012 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FEB 18 1999

MICHAEL N. ~~~

ROBERT SCHWARTZ AND IDA BASHA §
Individually and on Behalf of §
all Others Similarly Situated §
§
    Plaintiff, §
§
v. § CIVIL ACTION NO. H-98-1574
§
MCI TELECOMMUNICATIONS §
CORPORATION §
§
    Defendant. §
§

## MEMORANDUM AND ORDER

Pending is Plaintiff's Amended Opposed Motion for Class Certification Under the Fair Labor Standards Act (Document No. 14). The Court has reviewed the motion, response, replies, and applicable law, and has heard and considered the oral arguments of counsel.

Plaintiff Schwartz seeks conditional class certification under Fair Labor Standards Act ("FLSA") § 16(b), 29 U.S.C. § 216(b), on behalf of himself and others similarly situated who he claims have been improperly classified by MCI as "engineers," which thereby exempts them from being paid overtime. Under § 16(b), a person may maintain an action on "behalf of himself and other employees *similarly situated*. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b) (emphasis added).

27



EXHIBIT
M

Schwartz moves to certify a class in which he would represent employees holding three separate and distinct positions — Order Coordination, Provisioning, and Translation — at MCI's facilities in Sugarland, Texas, Richardson, Texas, and an unidentified site in the State of Virginia,[1] who Plaintiff alleges have been inappropriately classified as "engineers" and are exempt from being paid overtime.   Schwartz himself works only in the Provisioning division at MCI's Sugarland, Texas, facility.   In his First Amended Complaint, Schwartz alleges that those employed in the three divisions do not have engineering degrees.   First Am. Compl. ¶ 9. "Moreover, their responsibilities are not professional and do not encompass engineering type duties, but are administrative and clerical in nature."   Id.   In his affidavit, Schwartz also describes the particular job responsibilities of employees in each of the three divisions.   (Schwartz Aff. at 2, Pl.'s Reply Mot. Class Certification, Ex. A.)   Finally, Schwartz states that the decision to classify employees in the three divisions is made at a corporate level in a central location at MCI's headquarters in Washington, D.C.   (Id. at 1.)

MCI objects to portions of Schwartz's affidavit, for the reasons that the statements are conclusory and the affidavit fails to set forth facts personally known to Plaintiff that will support his conclusions.   Hence, MCI argues, the statements are mere speculation.   MCI's objection is well taken with respect to

---

[1]   At oral argument MCI's counsel stated that MCI had a facility in Frederick, Maryland, which presumably Plaintiff intended by his references to Virginia.

2

Case 4:11-cv-01235   Document 27   Filed in TXSD on 02/17/99   Page 3 of 6

Plaintiff's assertions as to the similarity of his position with that of MCI employees at any other location except Sugarland because there is no showing that Plaintiff has any first-hand knowledge of the operations at other locations and, as observed above, does not even know the specific location of each facility. MCI's objection is also sustained with respect to Plaintiff's assertion that employees in all three divisions work in excess of 40-hour work weeks and are not compensated with anything except for straight salary.  Plaintiff has demonstrated no factual basis to support this conclusion with respect to positions at any facility other than Sugarland.  MCI's objection is also sustained with respect to Plaintiff's "estimate that less than one percent of all of the people employed by MCI nationwide, doing the aforementioned positions in its local and long distance departments have engineering degrees," because there is no factual basis demonstrated for Plaintiff to formulate opinions upon the educational attainments of MCI's employees nationwide.

MCI contends that the Complaint and affidavit are insufficient to justify conditionally certifying a class that could potentially exceed 500 individuals in three states who work in three different departments.  MCI's primary contention is that Schwartz, who works in the Provisioning Department in Sugarland, Texas, is not "similarly situated" to individuals who work in the Order Coordination and Translations divisions and those who work at other facilities.

3

The Fifth Circuit has not adopted or endorsed a particular methodology for class certification in a case such as this. *See* Mooney v. Aramco Serv., Inc., 54 F.3d 1207, 1216 (5th Cir. 1995). The Fifth Circuit has, however, recognized without criticism the practice of this Court to employ a two-stage class certification procedure. Id. at 1213-14, 1216.  In the first, or "notice," stage, the court initially determines whether the proposed class members are similarly situated.   *See* id. at 1213.  At this stage, the

> district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard,[8] and typically results in "conditional certification" of a representative class. . . .
>
> > [8]At the notice stage, "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. at 407.

Id. at 1214; *see also*, Dybach v. Florida Dep't of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991) (stating that the district court must consider whether potential plaintiffs are similarly situated "with respect to their job requirements and with regard to their pay provisions" before allowing notice to be sent).

A second determination is made after discovery has been substantially completed, at which time the defendant typically files a motion for decertification.  *See* Mooney, 54 F.3d at 1214. At the post-discovery stage, courts have generally considered three factors to determine whether a plaintiff is "similarly situated":

4

Case 4:96-cv-01574  Document 77  Filed in TXSD on 02/17/09  Page 5 of 9

(1) disparate factual and employment settings among class members, (2) multiple defenses that may be available to the defendant based on each plaintiff's individual circumstances, and (3) fairness and procedural considerations in allowing the case to proceed as a class action. *See, e.g.,* <u>Thiessen v. General Elec. Capital Corp.,</u> 996 F. Supp. 1071, 1081 (D. Kan. 1998); <u>Bayles v. American Med. Response of Colo., Inc.,</u> 950 F. Supp. 1053, 1066 (D. Colo. 1996); <u>Brooks v. Bellsouth Telecomm., Inc.,</u> 164 F.R.D. 561, 568 (N.D. Ala. 1995), *aff'd,* 114 F.3d 1202 (11th Cir. 1997); <u>Lasardi v. Xerox Corp.,</u> 118 F.R.D. 351, 359 (D.N.J. 1987).

In his affidavit, Schwartz describes the responsibilities of those who are employed in the Provisioning division in Sugarland where he works. Based on the evidence, those employees who work in the Provisioning division have similar job responsibilities, and Schwartz would be similarly situated to potential plaintiffs who work in that division.  Applying the lenient standard recognized in <u>Mooney</u>, the Court finds that Schwartz's allegations justify conditional class certification for those who work in the Provisioning division at MCI's Sugarland, Texas facility.

In limiting the scope of the conditional class to those who are employed in MCI's Provisioning division in Sugarland, the Court observes that the responsibilities and duties performed by others employed as Order Coordinators and Translators are different.  This is evidenced by Schwartz's affidavit itself.  To determine whether MCI has properly classified employees in each division as "engineers" requires an analysis of the different job functions

performed in each division. *See, e.g.*, <u>Donovan v. United Video,</u> <u>Inc.</u>, 725 F.2d 577 (10th Cir. 1984); <u>Leslie v. Ingalls</u> <u>Shipbuilding, Inc.</u>, 899 F. Supp. 1578 (S.D. Miss. 1995). Determining whether employees who work in the Provisioning division should be classified as "engineers" necessarily entails consideration of different facts than one must consider in determining whether employees in the Translation or Order Coordination divisions should be so classified because different tasks are performed in each division. MCI may therefore have different defenses for each divisional group of employees based on their job functions. *See, e.g.*, <u>Warren v. Reserve Fund, Inc.</u>, 728 F.2d 741, 747 (5th Cir. 1984) (stating that a defense applicable to only one defendant justified denial of class certification under Rule 23(a) for lack of typicality). Since Schwartz is not and has not been employed in MCI's Order Coordination or Translation divisions, he cannot maintain a class action on behalf of those employees. *See, e.g.*, <u>Belcher v. Shoney's, Inc.</u>, 927 F. Sup. 249, 252 (M.D. Tenn. 1996) (holding that a class would not include those employees who worked at other restaurant chains also owned by the defendant when none of the named plaintiffs had been employed at those chains). Thus, the conditional class will be limited at this time to those employees employed in MCI's Provisioning division at Sugarland.

Schwartz, as observed above, moves for the conditional class to include also MCI employees in Richardson, Texas, and at the alleged location in the State of Virginia, presumably, Frederick,

Maryland.  Not only is Schwartz not conversant with where each of MCI's other facilities is located, he has presented no facts whatever with respect to any purported violations of the Fair Labor Standards Act by MCI at any of its other locations.  The recent decision in Harper v. Lovett's Buffet, Inc., 1999 WL 39142 (M.D. Ala.), is instructive and was argued by the parties to the Court. In Harper, Chief Judge Albritton conditionally certified a class of hourly wage employees who worked at defendant's Dothan restaurant, where plaintiffs themselves worked, but declined conditionally to certify inclusion of employees who worked at other restaurants also owned by the defendant.  In so holding, the court observed:

> Plaintiffs have not made a showing that any hourly wage employee at any of Defendant's restaurants, other than at the restaurant in Dothan where the named, individual Plaintiffs and the individuals who have filed Notices of Consent to be a Party Plaintiff worked, was subjected to employment practices which potentially violated the FLSA.

Id. at *4.  Likewise, in the instant case, Schwartz has not made any showing that any of the persons employed in MCI's Provisioning divisions in Richardson, Texas, or in Frederick, Maryland, has been misclassified, as Schwartz contends is the case with himself, in order to avoid paying to those employees overtime wages to which they are entitled under the law.

In his affidavit Schwartz states that a MCI human resources generalist in Sugarland told Schwartz that "the classification of employees in these three departments is made at the corporate level and he had no part of the decision at the local level."  From this Schwartz assumes that the same classifications must have been directed by corporate headquarters for facilities other than

Sugarland.  There is no proof of such, however, and, more importantly, no proof has been received that any of MCI's employees in Richardson, Texas and Frederick, Maryland are misclassified as exempt employees or that they have been required to work overtime without being compensated in accordance with law.  Moreover, there is no *complaint* from any employees who work at the other facilities that their rights have been violated as Schwartz contends his have been in Sugarland.  The purpose of a class action is to facilitate the litigation of numerous persons similarly situated who are actually aggrieved and have a complaint.  The submissions on this motion simply fail to provide a basis to certify conditionally a class as broad as that sought by Schwartz.

    For the foregoing reasons, it is

    ORDERED that Plaintiff's Amended Opposed Motion for Class Certification under the Fair Labor Standards Act (Document No. 14) is GRANTED in part, and a class is conditionally certified that will be composed of those persons who are employed in MCI's Provisioning division at its Sugarland, Texas, facility; and Plaintiff's Motion otherwise to certify a class composed of MCI employees who work at other MCI facilities, and in divisions other than the Provisioning division at Sugarland, is DENIED.

    Plaintiffs have presented a proposed form of Notice to prospective class members, which must be revised to conform to the terms of this Memorandum and Order.  After this has been done and after Defendant has had opportunity to review the revision, Plaintiffs shall file the revised form of Notice for the Court's

8

approval, along with advice as to whether Defendant has approved the content of such Notice as to form.

The Clerk will notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 17TH day of February, 1999.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

9

Switch Client | Preferences | Help | Sign Out

| *My Lexis*™ | Search | Get a Document | *Shepard's*® | More | History |
|---|---|---|---|---|---|
| | | | | | Alerts |

FOCUS™ Terms ⬚ Advanced... **Get a Document** ⬚ View Tutorial

Service: **Get by LEXSEE®**
Citation: **2001 U.S. DIST. LEXIS 10678**

*2001 U.S. Dist. LEXIS 10678, \*; 6 Wage & Hour Cas. 2d (BNA) 1881*

LIXIN ZHAO, n behalf of herself and all others similarly situated, Plaintiffs, v. BENIHANA, INC., Defendant.

01 Civ. 1297 (KMW)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2001 U.S. Dist. LEXIS 10678; 6 Wage & Hour Cas. 2d (BNA) 1881

May 7, 2001, Decided
July 5, 2001, Filed

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff former server filed suit against defendant employer and claimed that a tip credit policy was unlawful. At this stage of the proceedings, the server sought to send class notice to the other servers at the location where she worked.

**OVERVIEW:** The court determined that it needed only to reach a preliminary determination that potential plaintiffs were similarly situated; the inquiry was less stringent than the ultimate determination that the class was properly constituted, and the court found that the server met this light standard. The server and the potential plaintiffs were alleged victims of a common policy or plan, and she sufficiently alleged that this common policy or plan violated the Fair Labor Standards Act when she alleged that a portion of her tips were given to ineligible employees. Because class notice was appropriate on the unlawful tipping pool portion of the server's claims, and because it was relatively easy to determine whether any servers who opted into the class were informed of the tip credit, the court allowed notice of the claim to proceed. A final copy of the notice was to be reviewed by the court before it was disseminated.

**OUTCOME:** The court granted the server's motion to allow notice of the claim.

**CORE TERMS:** tip, notice, server, envelope, retaliation, sentence, restaurant, opinion letter, morning, pool, talking, tipped, class members, similarly situated, threshold, opposition papers, supplemental, retaliate, warning, kitchen, helpers, Fair Labor Standards Act, reply papers, customarily, authorize, regularly, pooling, tipping, poster, modest

EXHIBIT
N

**LEXISNEXIS® HEADNOTES**                          ⊟**Hide**

Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions

*HN1* ↓ A court has discretion to authorize the sending of notice to potential class members in a collective action brought pursuant to § 216(b) of the Fair Labor Standards Act.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview

*HN2* ↓ The Fair Labor Standards Act provides that employers may take a tip credit against the wages of a "tipped employee" by paying them a slightly lower hourly wage, provided that such employee has been informed by the employer of the provisions of the law and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips. 29 U.S.C.S. § 203(m).  More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Class Actions > Judicial Discretion

Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview

*HN3* ↓ The threshold issue in deciding whether to authorize class notice in a Fair Labor Standards Act action is whether plaintiff has demonstrated that potential class members are "similarly situated." 29 U.S.C.S. § 216(b). To meet this threshold, a plaintiff must make a modest factual showing sufficient to demonstrate that she and potential plaintiffs together were victims of a common policy or plan that violated the law. The court need only reach a preliminary determination that potential plaintiffs are similarly situated; the inquiry is less stringent than the ultimate determination that the class is properly constituted.  More Like This Headnote | *Shepardize:* Restrict By Headnote

**COUNSEL:** **[\*1]** For LIXIN ZHAO, plaintiff: Karl J. Stoecker, New York, NY.

For BENIHANA, INC., defendant: Richard Schaeffer, J. Cody Fitzsimmons, Dornbush, Mensch, Mandelstam & Schaeffer, L.L.P., New York, NY.

**JUDGES:** Before: HON. KIMBA M. WOOD, District Judge.

**OPINION BY:** KIMBA M. WOOD

**OPINION**

THE COURT: Good morning.

MR. SCHAEFFER: Good morning, your Honor.

MR. FITZSIMMONS: Good morning, your Honor.

MR. STOECKER: Good morning your Honor.

THE COURT: I am prepared to rule, shortly, on plaintiff's motion for expedited notice. If counsel would like to be heard with respect to anything new that you haven't already submitted, I am prepared to hear you on that.

Mr. Stoecker.

MR. STOECKER: Well, your Honor, beyond what I said in the papers, I would just point out that they cite three cases at the conclusion of their brief in which the court denied to send out notice. The first case is a District of Minnesota case in which the evidence before the court was limited -- it wasn't even evidence, it was the allegations of the complaint. There was nothing beyond the complaint before the court in that case, and it was an age discrimination case in which the plaintiff wanted to send notice to anyone over 40 years old **[*2]** who was ever terminated by the company. And the court said no.

And the other two cases that they cite in the footnote are pre-*Hoffmann-La Roche* cases in which the court debated whether it was even appropriate to send out notice before the Supreme Court had resolved that issue.

So that's the only authority that they have cited which indicates that notice, on the facts of those cases, was inappropriate.

THE COURT: Who would like to speak for defendant?

MR. FITZSIMMONS: Cody Fitzsimmons, your Honor.

There were a few points that were raised by the plaintiff in her reply papers that are therefore not addressed in our opposition papers I would just like to address briefly this morning.

One of the points is the claim that side tips were "often," I think is the word that was used in the plaintiff's reply affidavit, received by the chefs.

Your Honor, side tips, or these additional tips that are referenced by the plaintiff, are not received at all by the majority of chefs. The few chefs that do receive side tips because of the extraordinary skill they have in entertaining and serving the customers are received on very rare occasions, like once or twice a week, your Honor, and are **[*3]** just that, they are side tips that are in addition to the tips that are left on the table that are given in recognition of the show that some of these chefs have the skill to put on. And this was not addressed in our opposition papers because it was just raised for the first time, and I was able to receive from Mr. Suwanrut, who was a chef who was --

THE COURT: How do you spell that?

MR. FITZSIMMONS: S-U-W-A-N-R-U-T, and he is a chef at the restaurant for the past approximately ten years. And I have a supplemental affidavit, if your Honor would be inclined to accept that, which I just received Friday evening and, therefore, I have not yet served it on opposing counsel.

THE COURT: What does it say?

MR. FITZSIMMONS: The supplemental affidavit says just that, essentially -- it is two pages long and it says that the side tips are not received by a majority of the chefs, that the few chefs who are skilled enough to receive side tips on very few occasions receive them, once or twice a week on average.

THE COURT: Is there any objection to my receiving this at this point?

MR. STOECKER: No, your Honor. I don't think it is relevant to the issues before the Court.

THE COURT: Feel free **[*4]** to submit it to me.

MR. FITZSIMMONS: Thank you, your Honor.

(Pause)

THE COURT: I will take a moment to review the supplemental affidavit of Pornput Suwanrut dated May 4.

(Pause)

All right, I have read it. Thank you.

MR. FITZSIMMONS: Thank you, your Honor.

I just have a few additional points, if I may.

In her reply papers, the plaintiff cites to the case of *Bonham v. The Copper Cellar*, 476 F. Supp. 98, which is an Eastern District of Tennessee case from 1979, and the plaintiff cites to that case for the proposition that a poster cannot suffice to satisfy the notice requirement of the tip credit under the Fair Labor Standards Act.

Your Honor, there is a much more recent case, which is *Davis v. B & S, Inc.*, and I will provide you with the cite of that case, your Honor. It is 38 F. Supp. 2d 707, and the relevant page is 719. And in that case the district court pointed out dicta in other cases as well that the notice requirement can be met by prominently displaying a poster. And that case is about 20 years more recent than the *Bonham* case.

The only other point I would like to make, your Honor, is that the plaintiff makes the point that voluntariness with respect to the tip **[*5]** practices at the restaurant is not a relevant issue. Essentially, the plaintiff is making the point that if tips are distributed to noncustomarily-tipped employees, whether or not that's voluntarily done or involuntarily done, that that invalidates the entire tip arrangement. Your Honor, that is just simply not correct. And the plaintiff cites in support of that proposition to a Department of Labor opinion letter that's dated November 4, 1997.

Let me just say right up front, I'm not suggesting that the plaintiff intended to mislead the Court in any way. I am assuming that this was just an error because there was very short order for the plaintiff to respond to our opposition papers and I recognize that. But in that opinion letter, it actually stands for the exact opposite proposition.

The opinion letter states, and I quote: "An employer will lose the benefit of the exception from the tip retention requirement if tipped employees are required to share their tips with" -- and then it goes on to list allegedly noncustomarily --

THE COURT: Just one moment.

MR. FITZSIMMONS: Sure, your Honor.

(Pause)

THE COURT: How many paragraphs into it are you?

MR. FITZSIMMONS: I believe it is **[*6]** on the second page and it is in the second paragraph --

THE COURT: Oh, it is the last sentence of the first full paragraph on page 2?

MR. FITZSIMMONS: Yes, the one that begins "On the other hand."

THE COURT: OK.

MR. FITZSIMMONS: So that is one portion of it, your Honor.

THE COURT: Let me just reread it.

MR. FITZSIMMONS: Sure.

(Pause)

THE COURT: Go ahead. I am still trying to follow the point that you think this makes that helps you.

MR. FITZSIMMONS: OK. Further down, it states a sentence that begins with "Furthermore," which is in the next paragraph. It is about three quarters of the way down. That one says: "Furthermore, where a tipped employee as a condition of his or her employment is required to share tips with other employees, e.g., dishwashers, who do not meet the definition of a tipped employee, the tip pool is invalid."

And the only point I was making there is that this opinion letter I believe stands for the proposition that it is only where these contributions to these allegedly noncustomarily-tipped employees, it is only where those contributions are required by the employer that they may be considered unlawful. If they are wholly voluntary, certainly they are **[*7]** not unlawful. An employee can share his or her tips with anyone that they like on a voluntary basis, and that is the only reason why I raise that, your Honor.

THE COURT: All right. One of the many things I found interesting in this opinion letter is that the Department of Labor had before it there claims by the employer that the employer "will not exercise control over the tips that the waiters/waitresses," etc., but will advise them that tip pooling is permissible and "that the employer recommends certain percentages."

So the facts are not quite on all fours with our case, but they are also not that far away from our case.

All right, anything further here?

MR. FITZSIMMONS: No. Thank you, your Honor.

Decision

THE COURT: All right, I am going to go ahead and rule.

In ruling, I rely on the parties' briefing, the affidavits of Ms. Zhao and Mr. Yuhara, and the copy of the disciplinary warning given to Ms. Zhao by Mr. Yuhara on July 13, 1997. I have determined that expedited notice is appropriate to the other servers at the West 56th Street location for the reasons I am about to explain.

It is well settled that *HN1* the Court has discretion to authorize the sending of notice to potential **[*8]** class members in a collective action brought pursuant to Section 216(b) of the Fair Labor Standards Act. *See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 107 L. Ed. 2d 480, 110 S. Ct. 482 (1989); *Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335, 336 (1978).

*HN2* The FLSA provides that employers may take a tip credit against the wages of a "tipped employee" by paying them a slightly lower hourly wage, provided that:

"such employee has been informed by the employer of the provisions of [the law] and ... all tips

received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. Section 203(m).

It is undisputed that Benihana took a tip credit against its servers at the West 56th Street location. Plaintiff, a former server, claims that the tip credit was unlawful because (1) servers were not informed of the applicable provisions of law; and (2) tip sharing was overseen and enforced by management and tips were shared with employees who do not "customarily and regularly" **[*9]** receive tips (kitchen helpers). At this stage of the proceedings, plaintiff seeks to send class notice to the other servers at the West 56th Street location.

*HN3* The threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiff has demonstrated that potential class members are "similarly situated." *See* 29 U.S.C. Section 216(b). To meet this threshold, plaintiff must make a "modest factual showing sufficient to demonstrate that she and potential plaintiffs together were victims of a common policy or plan that violated the law." *See Jackson v. New York Telephone Company*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995); *see also Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 307 (S.D.N.Y. 1998) (collecting cases). The Court need only reach a preliminary determination that potential plaintiffs are similarly situated; the inquiry is "less stringent than the ultimate determination that the class is properly constituted." *See Jackson*, 163 F.R.D. at 431. I find that plaintiff meets this light standard.

I first examine whether plaintiff and the potential plaintiffs were alleged victims **[*10]** of a "common policy or plan," and I find that they were. Plaintiff has offered a copy of a warning notice for "disorderly conduct," signed by Mr. Yuhara, the manager of the restaurant, admonishing plaintiff for taking to the restroom before going to the cashier's booth, and telling her she must take tips straight to the cashier's booth, stating that tips "belong not only to her but to other employees as well."

Have I correctly read the word "her"? I was assuming that very faint word is H-E-R.

MR. FITZSIMMONS: I believe you have, your Honor.

THE COURT: This statement suggests that management oversaw and helped enforce the tip policy in place at the West 56th Street location. The Court finds further evidence of a restaurant-wide tip policy in the affidavit of Mr. Yuhara, who described "tip handling practices engaged in by the employees of the Restaurant" in terms that make it clear that the employees at the West 56th Street location followed a standard and rigid tipping policy. (Yuhara Affidavit Paragraphs 6 to 11.) This evidence meets the threshold for a "modest factual showing" that the servers at West 56th Street were similarly situated in terms of the tip policy. I reiterate here **[*11]** that I have not determined that class certification is appropriate, only that class notice should proceed. *See Realite*, 7 F. Supp. 2d at 309.

I next consider whether plaintiff has alleged that this common policy or plan violates the law. I need not evaluate the merits of plaintiff's claims; like the defendants in *Krueger v. New York Telephone Co.*, 1993 U.S. Dist. LEXIS 9988, 1993 WL 276058 (S.D.N.Y. July 21, 1993), defendant here "seeks to contest the merits of plaintiff's claims more vigorously than is necessary at this stage." As in *Krueger*, plaintiff's allegations and supporting affidavits "successfully engage defendant's affidavits to the contrary" for purposes of the present motion." *Id. (citing Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988).

Plaintiff alleges that a portion of her tips were given to ineligible employees in violation of the tip credit provisions of the FLSA. According to plaintiff, she was required to place the tips she received in a locked box that was opened only in the presence of a chef and that the chef took about 50 percent of these tips and proceeded to share a portion of these tips with the kitchen helpers, **[*12]** that is, a portion of the chef's portion of the tips.

I find that plaintiff has provided sufficient evidence of a mandatory tip pool that included ineligible employees. Mr. Yuhara concedes that he disciplined plaintiff -- at the behest of a chef -- for what he characterized as violating the tip agreement between the servers and the chefs (Yuhara Affidavit Paragraph 25; and Disciplinary Warning); Mr. Yuhara's active involvement in policing the tip policy suggests that management either instituted or adopted the tip sharing agreement as a matter of restaurant policy and that the tip pool was therefore not voluntary. This is sufficient evidence to "engage" defendant's alternative explanations and supporting affidavits -- which argue, indeed, that the chefs voluntarily gave some of their tips to the kitchen helpers -- and to warrant class notice.

I agree with defendant that plaintiff has provided scant evidence that the servers as a group were not informed of the necessary FLSA law; plaintiff relies solely on her "best knowledge" to allege that members of the potential class failed to receive proper notice of the tip credit. Nevertheless, I note that one of the policy reasons underlying [*13] early class notice is that "the experiences of other employees may well be probative of the existence vel non" of an unlawful practice, "thereby affecting the merits of the plaintiff's own claims." *Frank v. Capital Cities Communications, Inc.*, 88 F.R.D. 674, 676 (S.D.N.Y. 1981). Because class notice is appropriate on the unlawful tipping pool portion of plaintiff's claims, and because it will be relatively easy to determine whether any servers who opt into the class were informed of the tip credit, it seems most expeditious to allow notice of this claim to proceed at this stage.

For these reasons, I conclude that notice to other potential class members is appropriate.

I am now ready to discuss the form of the class notice. Have you conferred on this and reached a consensus?

MR. FITZSIMMONS: We have not, your Honor.

THE COURT: All right. Let me urge you to do that and I will come back down as soon as you are ready.

MR. FITZSIMMONS: Thank you, your Honor.

MR. STOECKER: Thank you, your Honor.

(Recess)

THE COURT: Please have a seat, counsel. Have you had a chance to confer?

MR. STOECKER: Yes, we have, your Honor.

THE COURT: All right, who would like to report?

 [*14] MR. STOECKER: I would be pleased to report.

There are two issues that we haven't been able to reach agreement on. One is a sort of mundane issue as to whether we should have a return envelope with the address of the court for people to place the consent form into.

Initially, we had them mailing the consents back to my office. We changed that to the "Clerk of the Court" to remove any ambiguity as to when notices were mailed back to me and to --

THE COURT: Why would there be ambiguity if they are postmarked?

MR. STOECKER: Well, I don't think there would be, but technically the statute of limitations is cut off when the notice is filed with the court. So, as the defendant's counsel correctly pointed out, that places my office in the middle, exposes me to getting them back and down to the

court immediately. So it probably is better. And in *Schwed* they went to the court, as well.

THE COURT: OK.

MR. STOECKER: I guess our only question is how do we address the envelopes such that they get properly processed by the Clerk's office.

THE COURT: We are talking about how many envelopes?

MR. STOECKER: I don't know how many people we are talking about exactly.

MR. FITZSIMMONS: Your **[*15]** Honor, I think we are talking about 10 to 12 to serve, or something along those lines.

THE COURT: So you are wondering how to address them?

MR. STOECKER: Yes.

THE COURT: The Clerk of the Court, then in re this case, I suppose.

MR. STOECKER: OK.

THE COURT: With the docket number.

MR. STOECKER: OK. Right on the envelope itself?

THE COURT: On the envelope, that should have the docket number and then on the sheet of paper, I suppose.

MR. STOECKER: OK. And there is a dispute as to whether we even include envelopes with the mailing. I believe they should be included.

THE COURT: Any precedent?

MR. STOECKER: I don't know of any one way or the other, your Honor.

MR. FITZSIMMONS: Your Honor, my only response to that is that in the *Schwed* case, there is no indication that there was a self-addressed or, excuse me, an addressed envelope included in the packet, it was just the consent form and the notice of pendency of action form.

THE COURT: If I have no precedent to guide me and we are talking about 10 to 12 people, I would include return envelopes.

MR. STOECKER: Yes, your Honor.

The only other issue, your Honor, is with respect to the language in the notice regarding retaliation **[*16]** --

THE COURT: All right, what page is this?

MR. STOECKER: On page 4 and 5 of the proposed notice.

THE COURT: OK.

MR. STOECKER: We have agreed, I think, that we should leave in the first two sentences of the first paragraph, and then after the words "You should know that employers are not permitted to retaliate against you," we have inserted the additional words "in any fashion if you decide to

join this action," and then strike out the remainder of that paragraph.

THE COURT: This is what plaintiff proposes?

MR. STOECKER: No, this is what we have agreed upon.

THE COURT: Agreed. OK. So you have agreed in the second sentence of that paragraph, you are going to add the words "in any fashion" after the word "you" in line 4.

MR. STOECKER: That is correct.

THE COURT: The first word "you," and then you are going to strike the remainder of that paragraph?

MR. STOECKER: Right, after the conclusion of that sentence.

THE COURT: All right. And what about the next paragraph?

MR. STOECKER: That's where the dispute centers, your Honor. Based upon my conversations with the plaintiff, I think there is a generalized fear among the employees that there will be retaliation if they join the [*17] suit. The plaintiff I believe is in her 30s and she was one of the youngest employees there. So her feeling is that many of them think that they will not be able to get another job if they lose this job; so they are very concerned about any kind of retaliation.

I don't want them to know that they have a right without a means of effectuating it. So I simply say if you think there is a problem, contact my office, rather than having them worry about, you know, well, who do I see, where do I go if I'm retaliated against, do I have to pay an attorney. If they have a problem, they can call my office. That's why I wanted to have the language in the last paragraph in there. That's what the defendant's counsel objects to.

THE COURT: May I hear defense counsel?

MR. FITZSIMMONS: Thank you, your Honor.

I don't exactly know what the basis is for the plaintiff's counsel's claim that they have a fear of retaliation. But I do know that even given that, the very first two sentences address that head on. They say those of you currently employed by Benihana may naturally be concerned whether you will be able to, you know, continue in your jobs, and it says that you should know that employers are [*18] not permitted to retaliate against you in any fashion.

I don't know how it could be any clearer than that, your Honor, and to say anything further would really be along the lines of soliciting retaliation claims against the company if you go on to say if you feel you have been retaliated against, you should contact and then have a lawyer's name and office there. That is too suggestive and does amount to solicitation of retaliation claims.

THE COURT: There is another possible approach, which is if you believe that Benihana has discriminated against you for purposes of participating in this lawsuit, you should promptly contact the court. You could leave it there if you are worried about solicitation.

MR. FITZSIMMONS: If your Honor is inclined to do that, that would be fine. I would just note that in the *Schwed* case it simply points out that an employer is not permitted to retaliate and it doesn't say anything further.

THE COURT: All right. I take Mr. Stoecker's point on this issue, and so I will substitute the word "court" for "The Law Offices of Karl J. Stoecker," and I'm going to give them a number to call at

court here, Mr. Paul Robilotti. Court: Courtroom Deputy Paul Robilotti, **[*19]** and then at 212-805-0125.

All right, any other issues on the notice?

(Pause)

MR. FITZSIMMONS: Nothing that I don't think we can resolve amongst ourselves, your Honor.

THE COURT: OK. Just so it is clear, since you are putting it in final form, what I have done is strike "The Law Offices of Karl J. Stoecker," and I have replaced that with Court: Courtroom Deputy Paul Robilotti at 212-805-0125.

Now, I will need to see a final copy of this before it is disseminated, but I will approve it as soon as you send it to me.

MR. STOECKER: OK.

THE COURT: OK. Thank you very much.

MR. STOECKER: Thank you.

MR. FITZSIMMONS: Thank you, your Honor.

MR. SCHAEFFER: Thank you, your Honor.

Service: **Get by LEXSEE®**
Citation: **2001 U.S. DIST. LEXIS 10678**
View: Full
Date/Time: Tuesday, January 17, 2012 - 4:45 PM EST

* Signal Legend:
- Warning: Negative treatment is indicated
Q - Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
A - Citing Refs. With Analysis Available
- Citation information available
* Click on any Shepard's signal to Shepardize® that case.

In

About LexisNexis  | Privacy Policy  | Terms & Conditions  | Contact Us
Copyright © 2012 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.